UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| ENRIQUE ROBERTO "HENRY" CUELLAR, and IMELDA RIOS CUELLAR, | : Criminal No. 4:24-cr-224 |
| Defendants. | : |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR
CONTINUANCE AND AMENDED SCHEDULING ORDER**

**I.     Introduction**

In this case charged a year ago, defendants Enrique "Henry" Cuellar and Imelda Cuellar seek to postpone all pretrial dates and the September 22, 2025 trial date. However, neither of their proffered grounds — the volume of discovery and their counsel's security clearance applications — constitute good cause to delay a trial nearly five months away. First, the defendants substantially inflate the volume of discovery, most of which they have had for months and much of which came from either the defendants' own electronic devices and accounts or from a long-running separate investigation not involving the defendants that the government has produced out of an abundance of caution. Second, because the Court granted the government's motion under § 4 of the Classified Information Procedures Act (CIPA), there is no classified discovery in this case for which defense counsel would need security clearances to review. Moreover, the security clearance applications of two of Rep. Cuellar's counsel were recently approved. The nearly five months remaining until trial is more than sufficient time for them to talk with Rep. Cuellar about any potentially relevant classified information to which he had access by virtue of his position as

1

a U.S. Congressman. Finally, the strong public interest favors a speedy trial here given the indictment's allegations of a compromised sitting U.S. Congressman. The motion for a continuance should thus be denied.

## II. Argument

### A. The Discovery Does Not Warrant a Trial Continuance

A grand jury returned the indictment in this case in April 2024, charging the defendants with conspiracy, bribery, honest services wire fraud, being a public official acting as an agent of a foreign principal, money laundering conspiracy, and money laundering. ECF No. 1. The indictment is 54 pages long and contains detailed allegations about the government's theory for the charges. Trial was initially set for July 2024 and has been continued twice at the defendants' unopposed request. ECF Nos. 47, 64. It has been scheduled for September 22, 2025, for nearly five months.

Since indictment, the government has made eight discovery productions under Federal Rule of Criminal Procedure 16, prioritizing the most relevant documents in the case. The first two productions in May and June 2024, of approximately 3.8 million pages, contained, among other things: (1) the bulk of the investigative files of the Federal Bureau of Investigation (FBI) and the Department of State Office of the Inspector General (DOS-OIG) for this case; (2) grand jury subpoena returns for this case; (3) the filtered returns for search warrants for the defendants' five email accounts; and (4) full unfiltered forensic extractions of Rep. Cuellar's iCloud account and cell phone. The next three productions in January and February 2025, of approximately 260,000 pages, contained additional FBI and DOS-OIG investigative files for this case, the filtered returns for search warrants for 13 email accounts, and tax records. These five productions, which were complete seven months before the current trial date, encompass most of the relevant evidence in this case that the defendants were not already aware of.

The defendants claim that the government recently produced approximately 12 TB of data. Mot. ¶ 2. They appear to have calculated that figure by adding the total *capacity* of the drives containing the government's recent productions. But the drives were not filled to capacity. The actual volume of the data in the government's recent productions was under 7 TB — still large, but significantly less than what the defendants claim.

Of those recent productions, most either have little to no relevance to the charges in this case or are the defendants' own documents. Over 4.5 TB of that data was pole camera footage. The footage was used in support of applications for search warrants to establish that the locations sought to be searched were used by certain individuals. Although the footage — which amounts to months of nonstop video — in file-size terms is large, it has no continuing relevance to the charges in this case and the government does not intend to introduce it into evidence at trial.

Also, a significant portion of the discovery produced by the government since February 2025 came from a separate, long-running investigation from which this case arose (the "earlier investigation"). In April 2025, the government produced data extracted from 37 electronic devices obtained in the earlier investigation. The government also expects to make another production shortly containing more documents from the earlier investigation, including additional FBI and DOS-OIG investigative files,[1] grand jury subpoena returns, and returns from search warrants for email accounts. Although the government has elected to produce documents from the earlier investigation because it spawned this case, the earlier investigation does not involve the defendants here and has minimal relevance to the charges in this case.

---

[1] Most of the FBI and DOS-OIG investigative files for the earlier investigation were included in the first five productions.

Most of the other documents produced since February 2025 were the defendants' own documents. First, the defendants asked the government in summer 2024 to return their electronic devices seized pursuant to search warrants. The government responded that it could not return the devices before trial unless the defendants stipulated to the authenticity of data extracted from the devices. The defendants asked the government to draft a proposed stipulation for their consideration, and the government sent a proposed stipulation in August 2024. The government did not receive a response to that email. Accordingly, in March 2025, the government produced the full unfiltered extractions of 17 devices belonging to the defendants in lieu of returning the original devices. Notably, the government was prepared to produce these device extractions months earlier and did not do so only because of the uncertainty — due to the defendants' failure to respond to the government's proposed stipulation — about whether the original devices or extracted copies would be produced.

Second, the government produced filtered returns from search warrants for 17 devices belonging to the defendants in April 2025. These returns were a subset of the full, unfiltered extractions of those devices that the government had previously produced. The government reproduced the relevant documents from those devices and accounts to aid the defendants' review. The government also produced filtered returns from search warrants for seven additional devices belonging to the defendants in April 2025. The defendants thus have over five months to review these materials, which consist entirely of their own documents, before trial.

In sum, the bulk of the relevant discovery was complete by February 2025, seven months before the trial date. Most of the volume of the discovery produced in the two months since then either has little relevance to this case or consists of the defendants' own documents. As is standard practice when an investigation remains ongoing and as the parties prepare for trial, the government

4

anticipates additional small productions on a rolling basis, consisting of additional information the government gathers. The government also plans to produce certain materials concerning its potential witnesses, including *Giglio* and Jencks materials, closer to trial.

The government has also endeavored to organize the discovery and to assist defense counsel's review of it. All the productions to date have been accompanied by letters with indexes detailing the contents of each production. Where possible, the discovery was produced in load-ready, text-searchable electronic format. And the government has repeatedly offered to answer any questions about the discovery.

The defendants have not identified any specific issues in the discovery that have hampered their review or their efforts to prepare for trial by September. They instead focus on the total volume of discovery in terms of file size. While that total volume is large, for the reasons above, the file sizes and page counts overstate the burden of reviewing the discovery.  Not only is a large volume of the discovery not directly relevant to the charges, but counsel can quickly search the discovery in electronic databases and identify those materials most relevant for trial. Similar recent cases with similarly large amounts of discovery have proceeded to trial even more quickly. *See* ECF Nos. 110 & 112, *United States v. Menendez*, No. 23-cr-490 (S.D.N.Y. Dec. 28, 2023) (government produced approximately 15 million pages of discovery and trial occurred less than a year after indictment). The volume of discovery in this case does not warrant delaying a trial date set nearly five months away — a trial date for which the government has been diligently preparing and expending resources.

> **B.     Rep. Cuellar's Counsel's Security Clearance Applications Do Not Justify a Trial Continuance**

Nor do the defendants' vague allusions to classified information constitute good cause to delay the trial at this stage. The government has taken steps to identify and address all potentially

discoverable classified information in this case. The Court is aware, from the government's classified ex parte CIPA § 4 motion (ECF No. 60), of the government's efforts to identify potentially discoverable classified information. That motion sought a protective order allowing the government to withhold certain classified information from the defense in discovery under CIPA § 4 and Rule 16. ECF No. 60. The Court granted the motion in full, determining that the motion was properly filed ex parte and granting a protective order allowing the government to withhold the specified classified information from the defense in discovery. ECF No. 65. Because all potentially discoverable classified information that the government is aware of is covered by this CIPA § 4 protective order, the government is not producing any classified discovery in this case for which defense counsel would need security clearances. Their security clearance applications thus do not constitute good cause to postpone trial.

Apart from any classified discovery, the defendants also contend that Rep. Cuellar's counsel need security clearances so they can talk with Rep. Cuellar about any potentially relevant classified information to which he had access by virtue of his position as a U.S. Congressman.[2] Mot. ¶¶ 3–5. The security clearance applications of two of Rep. Cuellar's counsel have now been approved. Once they receive the requisite briefing from the appointed Classified Information Security Officer and sign the agreement not to disclose classified information, their security clearances will be active. They can then discuss classified information with Rep. Cuellar, subject

---

[2]   The defendants claim that the government "has … acknowledged the likelihood … that Congressman Cuellar possesses classified information that may be relevant." Mot. ¶ 4. To the contrary, the government's consistent position — reflecting its review of the potentially discoverable classified information it identified — has been that "the government is not aware of any classified information that Mr. Cuellar had access to that could have any conceivable relevance to any charge or any possible defense in this case." ECF No. 50 at 3 & n.2.

6

to the conditions of the protective order concerning classified information (ECF No. 67). Given this status, there is no good cause to delay a trial some five months away.

### C. Regardless of the Trial Date, the Motions Schedule Should Not Be Modified

If, notwithstanding these arguments, the Court were to determine that a continuance of the trial date is warranted, the government respectfully requests that the current motions schedule — May 9 for motions, June 9 for responses, and June 27 for replies — remain in place, except for any motions to suppress based on newly produced discovery. Early resolution of motions like those alleging legal defects in the indictment or prosecution do not depend on the completion of discovery and will crystallize the issues for trial, allowing the parties to better prepare. The defendants' request to postpone the motions schedule should thus be denied.

### III. Conclusion

The motion should be denied.

Dated: April 25, 2025　　　　　　　　　　　　Respectfully submitted,

| | |
|---|---|
| EDWARD P. SULLIVAN<br>Acting Chief<br>Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice | JENNIFER KENNEDY GELLIE<br>Chief<br>Counterintelligence and Export Control Section<br>National Security Division<br>U.S. Department of Justice |
| By: */s/ Celia Choy*<br>Rosaleen O'Gara<br>Celia Choy<br>Aaron L. Jennen<br>Attorneys for the United States | By: */s/ Garrett Coyle*<br>Garrett Coyle<br>Attorney for the United States |

**CERTIFICATE OF SERVICE**

    I certify that I filed this document via the CM/ECF system on April 25, 2025, which caused the motion to be electronically served on all counsel of record.

                                            */s/ Garrett Coyle*
                                            Garrett Coyle