# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| ENRIQUE ROBERTO "HENRY" CUELLAR, and IMELDA RIOS CUELLAR, | : Criminal No. 4:24-cr-224 |
| | : |
| Defendants. | : |

## GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO HOLD TRIAL IN LAREDO, TEXAS

Defendants Enrique "Henry" Cuellar and Imelda Cuellar moved, pursuant to Federal Rule of Criminal Procedure 18, to transfer this case to the Laredo Division of this Court for trial. *See* ECF No. 72. The requested transfer would serve neither the "convenience of the defendant, any victim, and the witnesses" nor "the prompt administration of justice," Fed. R. Crim. P. 18, and would make jury selection more difficult due to the defendants' prominence in Laredo and the extensive pretrial publicity in the Laredo media. The defendants' motion should be denied.

I.  **Applicable Law**

Venue for a criminal case exists anywhere in the district where the crime was committed. *See* U.S. CONST. art. III, § 2, cl. 3; U.S. CONST. amend. VI; 18 U.S.C. § 3237. Thus, although trial must be held in the district where the crime was committed, "[t]here is no constitutional right to be tried in a particular division within a district." *United States v. McKinney*, 53 F.3d 664, 673 (5th Cir. 1995). Federal Rule of Criminal Procedure 18 provides that "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Under this Court's local rules, "the

1

government may prosecute a case in any Division in the District in which the offense was committed, in whole or in part." S.D. Tex. CrLR18(A)(1). The district judge may transfer a case to a different Division if it finds that such transfer "would be in the interests of justice, based on the convenience of the defendant and the witnesses and on the prompt administration of justice." S.D. Tex. CrLR18(D).

The district court has "broad discretion in determining whether [an intradistrict] transfer is warranted." *United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. Unit A June 1981). In exercising that discretion, it must "balance the statutory factors of the convenience of the defendant and witnesses with the prompt administration of justice." *In re Chesson*, 897 F.2d 156, 159 (5th Cir. 1990) (per curiam). When assessing the "convenience of the defendant," courts consider "(1) the distance from the defendant's home; (2) the location of the defendant's witnesses; and (3) the ability of the defendant's family and friends to attend trial." *United States v. Garza*, 593 F.3d 385, 390 (5th Cir. 2010) (internal citations omitted).

The second factor — the "prompt administration of justice" — is "in part a literal command that trials comply with the Speedy Trial Act." *United States v. Lipscomb*, 299 F.3d 303, 342 (5th Cir. 2002). Courts must "weigh the impact the trial location will have on the timely disposition of the instant case and other cases," including not only the "case at bar" but also "the state of the court's docket generally." *In re Chesson*, 897 F.2d at 159. Courts may consider additional factors such as "speedy trial, docket management, logistics, and pretrial publicity." *United States v. Alvarez*, 561 F. App'x 375, 381 (5th Cir. 2014). "An intradistrict transfer is not required absent a strong showing of prejudice." *United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990).

II. Argument

There is no dispute that venue is proper in the Southern District of Texas or that the

2

Houston Division is one "in which the offense was committed, in whole or in part," as required by the local rules. S.D. Tex. CrLR18(A)(1). Nor could there be. Although the acts in furtherance of the foreign bribery, unlawful foreign influence, and money laundering offenses charged in the Indictment occurred in various jurisdictions across the country and around the world, many occurred in Houston. For example, one of the scheme's key facilitators resided in Houston during the relevant period and operated two Houston-based nonprofit organizations. *See* Indictment, ECF No. 1, ¶ 14. Two Houston-based front companies for Foreign Oil Company-1 entered sham consulting contracts with Imelda Cuellar's shell companies to disguise the true origin and purpose of the bribe payments. *See id.* ¶¶ 17, 19, 26, 40. The purported purpose of one of those sham contracts was for Imelda Cuellar to "find suitable partners in the Houston area that are willing and able to supply oil and gas equipment to [Foreign Oil Company-1.]" *Id.* ¶ 34. The bribe payments then flowed through those Houston-based front companies to Imelda Cuellar's shell companies. *Id.* ¶¶ 27, 41. Finally, Rep. Cuellar communicated with his bribe payors about official acts that he was taking on their behalf while he was in Houston. *Id.* ¶ 113(f)–(g).

Despite these extensive ties to Houston, the defendants ask the Court to exercise its discretion to transfer this case to the Laredo Division. The Court should decline to do so.

> **A.     The Convenience of the Defendants and Witnesses Weighs Against Transfer**

The first Rule 18 factor the Court must consider is the "convenience of the defendant, any victim, and the witnesses." This factor weighs against transfer to Laredo.

The defendants' primary argument is that the existing trial venue would inconvenience them because they would incur travel and accommodation costs and because it would be more difficult for Rep. Cuellar to keep up with his official duties from Houston. As an initial matter, the Fifth Circuit has long recognized that the convenience of the defendant "alone is insufficient to reverse the district court's decision to transfer venue." *Alvarez*, 561 F. App'x at 381 (holding

that *sua sponte* transfer from McAllen to Houston was not error even though defendants and their counsel resided over 300 miles from site of trial). In any event, the defendants' choice to retain counsel in Houston belies their claim that the cost of trial in this District would be unduly burdensome. *See* ECF No. 72, at 6; ECF No. 72-2. Their requested transfer would presumably require their eight-member legal team and any support staff to decamp to Laredo for the duration of trial. The expense of relocating eight attorneys, plus support staff, from three different firms to Laredo would likely dwarf the defendants' own travel and accommodation costs if the trial were held in Houston. *See Garza*, 593 F.3d at 390 (5th Cir. 2010) (holding that *sua sponte* transfer from Del Rio to Waco was error because, *inter alia*, "the transfer required defense counsel . . . to hold a multiple-day trial far from their practices"); *United States v. Barrett*, No. 2:20-CR-16-KS-MTP, 2021 WL 1739241, at *4 (S.D. Miss. May 3, 2021) ("The Court should also consider the location of the defendant's attorney's practice.").

Defendants' second argument is that holding trial in Houston would make it more difficult for Rep. Cuellar to keep up with his official duties. *See* ECF No. 72, at 6; ECF No. 72-2, ¶ 7. Without doubt, standing trial on bribery and money-laundering charges will cause some disruption to Rep. Cuellar's work. He will need to attend court during the day and be available to his attorneys for preparation when trial is not in session. Such disruption is an inevitable consequence of the criminal process. Rep. Cuellar provides no reason why being physically present in Laredo during trial would meaningfully mitigate that disruption. To the extent that he conducts official business via telephone and electronic communications, he may do so equally well from Houston as from Laredo. As for in-person duties, the disruption stems primarily from the requirement to attend court during business hours. Rep. Cuellar has not explained what official duties may arise during trial that both require him to be in Laredo and can be accomplished outside of court hours. In sum,

the convenience of the defendants does not weigh in favor of transfer to Laredo.

By contrast, the convenience of the witnesses weighs heavily in favor of Houston. Because of the international nature of the bribery schemes, the government's likely witnesses are scattered around the United States, including in Houston, and in at least three foreign countries. Few are in Laredo. Of the three individuals who have pleaded guilty to participating in the scheme and are expected to testify, one resides in Houston, and none reside in Laredo. *See United States v. Akhoundova*, No. 4:24-cr-221, ECF No. 9, ¶ 25 (S.D. Tex. May 1, 2024); *United States v. Rendon*, No. 4:24-cr-89, ECF No. 17, ¶ 18 (S.D. Tex. Feb. 21, 2024); *United States v. Strother*, No 4:24-cr-113, ECF No. 13, ¶ 18 (S.D. Tex. Feb. 28, 2024). The government's other Houston-based witnesses include at least two individuals who helped create one of the Houston-based front companies that entered a sham contract with Imelda Cuellar's shell company. *See* ECF No. 1, ¶¶ 19, 33.

Other potential domestic witnesses include a businessperson residing in Maryland who served as the nominal head of one of Foreign Oil Company-1's front companies, *see* ECF No. 1, ¶ 20; executives at a California-based sister company of Foreign Bank-1 that signed a sham contract with Florencio "Lencho" Rendon's company, *see id.* ¶ 47; and individuals residing in the Washington, DC area with knowledge of the official acts that Rep. Cuellar took in exchange for the bribe payments, *see, e.g.*, *id.* ¶¶ 45, 83 (describing meetings, events, and communications occurring in Washington, DC). The government's potential foreign witnesses include one or more individuals residing in Azerbaijan who are affiliated with Foreign Oil Company-1, *see id.* ¶ 12; one or more individuals residing in Mexico who are affiliated with Foreign Bank-1, *see id.* ¶ 46; and one or more individuals residing in Spain who are affiliated with a Spanish money-changing business through which the bribe payments were laundered, *see id.* ¶ 75.

Houston would be a more convenient location for the many government witnesses who will be flying in from around the country and abroad for trial. Houston has two large international airports offering direct flights to dozens of cities around the world.[1] By contrast, Laredo has a single small airport offering flights to only four cities: Houston, Dallas, Las Vegas, and Monterrey, Mexico.[2] Holding trial in Laredo would force many of the government's witnesses to take flights with multiple connections, with the attendant delays and uncertainty of flying into a small regional airport.

Defendants assert in conclusory fashion that "many principal defense witnesses are in Laredo." ECF No. 72, at 7. But they fail to provide any specificity as to their potential witnesses' names, proffered testimony, or likelihood of testifying. Indeed, the defense has no burden to call any witnesses and may call none. Thus, all the information before the Court regarding witness convenience weighs in favor of Houston. *See United States v. Alberto Lopez*, No. CR H-15-564-S3, 2019 WL 6064935, at *5 (S.D. Tex. Nov. 15, 2019) (denying motion to transfer because, *inter alia*, "defendants have not identified any witnesses who would be inconvenienced by trial in Houston" and "travel to Houston will be logistically more convenient for out of town witnesses than travel to McAllen"); *Barrett*, No. 2:20-CR-16-KS-MTP, 2021 WL 1739241, at *5 (denying motion to transfer and noting that defendants "did not provide the Court with a list of witnesses and addresses for the Court to evaluate").

Defendants also assert that the "evidence" is "primarily located in Laredo," ECF 72, at 7,

---

[1] *See* FlightConnections, Flights from Houston (IAH), https://www.flightconnections.com/flights-from-houston-iah (visited Apr. 21, 2025); FlightConnections, Flights from Houston (HOU), https://www.flightconnections.com/flights-from-houston-hou (visited Apr. 21, 2025).

[2] *See* FlightConnections, Flights from Laredo (LRD), https://www.flightconnections.com/flights-to-laredo-lrd (visited Apr. 21, 2025).

and that transfer would "facilitate [Defendant Henry Cuellar's] access to the evidence in this case," ECF No. 72-2, ¶ 8. But the non-testimonial evidence in this case consists almost entirely of electronic data, which can be reviewed in any location. The electronic devices and other physical evidence seized during the investigation are in law-enforcement custody in Houston, Washington, DC, Huntsville, Alabama, and Northern Virginia. And while defendants argue that the Laredo office suite and other locations identified in the Indictment "may only be examined by the jury if the trial is held in Laredo," ECF 72, at 7, defendants have offered no basis to believe that the Court would permit such an examination. Even if the physical appearance of those locations was somehow relevant to the charges, it could be demonstrated via testimony and photographs. Thus, this is not a reason to transfer the case to Laredo for trial.

Finally, defendants argue that the trial should be held in Laredo because the victims in this case are "the residents of Texas's 28th Congressional District." *Id*. at 8. Although the victims of Rep. Cuellar's corrupt schemes doubtless include his constituents, as a member of the United States Congress, his crimes affected the policy and laws of the United States and his victims include the American public at large. Holding trial outside Rep. Cuellar's district would be both appropriate and consistent with recent precedent. *See, e.g.*, *United States v. Menendez*, No. 1:23-cr-490, ECF No. 137, at 26 (S.D.N.Y. Jan. 15, 2024) (New Jersey Senator's motion to transfer venue to the District of New Jersey because the case "concern[ed] the alleged violation of New Jerseyans' trust"); *id.*, ECF No. 308 (S.D.N.Y. Apr. 11, 2024) (denying motion to transfer).

**B.     The Prompt Administration of Justice Weighs Against Transfer**

The second Rule 18 factor is the "prompt administration of justice." This factor too weighs against transfer to Laredo.

This Court is familiar with the facts and history of the case, having presided not only over

this case since its inception, but also over the cases of the three co-conspirators who have pleaded guilty, *see United States v. Rendon*, No. 4:24-cr-89 (S.D. Tex. filed Feb. 21, 2024); *United States v. Strother*, No 4:24-cr-113 (S.D. Tex. filed Feb. 28, 2024); *United States v. Akhoundova*, No. 4:24-cr-221 (S.D. Tex. filed Apr. 29, 2024), and over a related litigation, *see In re Application of the Associated Press et al.*, No. 4:23-mc-1636 (S.D. Tex. filed Aug. 16, 2022). The Court has already issued consequential rulings such as issuing a protective order under the Classified Information Procedures Act following review of the government's classified discovery. *See* ECF No. 65. Transfer to Laredo may result in reassignment to a new judge who would have to learn the facts and issues anew. *See* S.D. Tex. CrLR 18(D)(1) (providing that a transferred case will be assigned "to a judge in the transferee Division . . . unless the transferor judge orders that he or she will continue to handle the case after transfer").

Moreover, transferring this case to Laredo so close to trial would likely delay this case and strain the docket of the transferee judge and Division. *See In re Chesson*, 897 F.2d at 159 (5th Cir. 1990) ("The court . . . must weigh the impact the trial location will have on the timely disposition of the instant case and other cases."). This is a complex and significant case. Defense counsel have indicated that they expect additional significant pretrial litigation. Trial is anticipated to take approximately five weeks. *See* ECF No. 43, at 30. This Court has already set aside time in its schedule to handle the anticipated pretrial litigation and lengthy trial. By contrast, a new judge in Laredo may not be able to rearrange his or her docket to accommodate a substantial new criminal matter on short notice. And the Laredo Division, with only three district judges and an exceptionally heavy case load, has limited ability to absorb the additional burden. Thus, the requested transfer would likely delay this case and impair the transferee judge's ability to manage their existing docket.

**C. The Defendants' Prominence in Laredo and the Significant Pretrial Publicity Weigh Against Transfer**

Finally, in addition to the textual factors of convenience and prompt administration of justice, the Court may consider any other relevant factors, including "pretrial publicity." *Alvarez*, 561 F. App'x at 381. This factor weighs heavily against transfer. The defendants' prominence in Laredo and the extensive pretrial publicity that this matter has received in the local media would make it more difficult to seat a jury who have not formed opinions of the defendants and the charges.

Rep. Cuellar and his family are ubiquitous in Laredo. Rep. Cuellar has represented Texas's 28th Congressional District since 2005. Before his election to Congress, he served as a Texas State Representative and as the Texas Secretary of State.[3] His brother Martin Cuellar has served as the Sheriff of Webb County since 2008,[4] and his sister Rosie Cuellar served as Webb County Tax Assessor, as a municipal judge, and as a candidate for the Texas State House.[5] Rep. Cuellar has been described as the "King of Laredo"[6] and his family as a "political dynasty."[7] Members of the Laredo jury pool are highly likely to be familiar with, and to have formed an opinion of, the

---

[3] Henry Cuellar for Congress, Biography, https://henrycuellar.com/biography/ (visited Apr. 23, 2025).

[4] David Gomez, Jr., *Martin Cuellar sworn in as Webb County Sheriff*, LMT Online (Jan. 1, 2025), https://www.lmtonline.com/local/article/martin-cuellar-webb-county-sheriff-20010290.php.

[5] Patrick Svitek, *Rosie Cuellar to run for open state House seat in district that includes Uvalde*, Texas Tribune (Sept. 14, 2023), https://www.texastribune.org/2023/09/14/henry-rosie-cuellar-texas-house-uvalde/.

[6] Casey Murray & Bryan Tau, *"The Patrón": How Henry Cuellar and his family control Webb County, Texas*, San Antonio Current (May 25, 2024), https://www.sacurrent.com/news/the-patron-how-henry-cuellar-and-his-family-control-webb-county-texas-34629321.

[7] JJ Velasquez, *How Henry Cuellar's political career survived its toughest challenge yet*, San Antonio Report (Mar. 7, 2022), https://sanantonioreport.org/opinion-henry-cuellar-political-career-toughest-challenge-yet/

9

Cuellars.

Moreover, this case has received extensive coverage in the local news. For over two years, the local newspaper and television station have closely followed every aspect of the investigation and case, including the search warrant executed at the Cuellar's home,[8] the indictment and charges,[9] details of the bribery schemes,[10] the guilty pleas of the three co-conspirators,[11] the House

---

[8] *See, e.g.*, Julia Forrest, *A year after FBI raids Henry Cuellar's home, no arrests and no answers*, LMT Online (Jan. 19, 2023), https://www.lmtonline.com/local/article/A-year-after-FBI-raids-Henry-Cuellar-s-home-no-17728558.php; *Congressman Cuellar comments on FBI raid anniversary*, KGNS – Laredo (Jan. 22, 2023), https://www.kgns.tv/2023/01/22/congressman-cuellar-comments-fbi-raid-anniversary/; Brenda Camacho, *FBI presence at Texas Rep's home linked to probe tied to Azerbaijan*, KGNS – Laredo (Jan. 20, 2022), https://www.kgns.tv/2022/01/21/fbi-presence-texas-rep-cuellars-home-linked-probe-tied-azerbaijan-source-says/; Louis San Miguel, *FBI activity reported at the home of Henry Cuellar*, LMT Online (Jan. 19, 2022), https://www.lmtonline.com/local/article/FBI-activity-reported-at-the-home-of-Henry-Cuellar-16789098.php.

[9] *See, e.g.*, Jason Mack, *Cuellar indictment: A deeper look at each of the 14 charges faced*, LMT Online (May 17, 2024), https://www.lmtonline.com/projects/2024/henry-cuellar-bribery-charges/; Salma Lozano, *A deep dive into Henry Cuellar's 54-page indictment*, KGNS – Laredo (May 6, 2024), https://www.kgns.tv/2024/05/06/deep-dive-into-henry-cuellars-54-page-indictment/; Salma Lozano, *Congressman Henry Cuellar denies charges; Webb County Sheriff Martin Cuellar stands by brother*, KGNS – Laredo (May 6, 2024), https://www.kgns.tv/2024/05/07/congressman-henry-cuellar-denies-charges-webb-county-sheriff-martin-cuellar-stands-by-brother/; KGNS Staff, *Texas Rep. Henry Cuellar and wife indicted on bribery and foreign influence charges*, KGNS – Laredo (May 3, 2024), https://www.kgns.tv/2024/05/03/texas-rep-henry-cuellar-wife-indicted-bribery-foreign-influence-charges/.

[10] *See, e.g.*, Cayla Harris, *Who is Imelda Cuellar, the spouse at the center of Henry Cuellar's bribery scandal?*, LMT Online (May 14, 2024), https://www.lmtonline.com/news/article/henry-cuellar-wife-imelda-19457908.php; Marc Duvoisin, *Henry Cuellar's wife thought aide was keeping bribe money for himself, court records say*, LMT Online (May 10, 2024), https://www.lmtonline.com/news/article/henry-cuellar-suspicious-strother-bribes-19451681.php.

[11] *See, e.g.*, Guillermo Contreras, *Houston woman becomes third person to plead guilty in Henry Cuellar bribery case*, LMT Online (May 13, 2024), https://www.lmtonline.com/news/article/cuellar-azerbaijan-plea-houston-woman-azerbaijan-19455889.php; *Third person pleads guilty in connection with investigation into Congressman Henry Cuellar*, KGNS – Laredo (May 13, 2024), https://www.kgns.tv/2024/05/13/third-person-pleads-guilty-connection-bribery-charges-against-congressman-henry-cuellar/; Guillermo Contreras, *Accused middlemen plead guilty in Henry Cuellar bribery case*, LMT Online (May 9, 2024), https://www.lmtonline.com/news/article/middlemen-guilty-pleas-henry-cuellar-bribery-

10

Ethics Committee's investigation,[12] the case's implications for Rep. Cuellar's electoral prospects,[13] and the proceedings before this Court.[14] Local press attention is likely to intensify as trial approaches, particularly if trial is to be held in Laredo.

Exacerbating these challenges, the Laredo Division draws from a relatively small jury pool. The Laredo Division serves Jim Hogg, La Salle, McMullen, Webb, and Zapata Counties, with a total population of approximately 300,000.[15] By contrast, the Houston Division encompasses Austin, Brazos, Colorado, Fayette, Fort Bend, Grimes, Harris, Madison, Montgomery, San Jacinto,

---

case-19449749.php; Alex Cano, *Two people in connection to Rep. Henry Cuellar case plead guilty to conspiracy to commit money laundering*, KGNS – Laredo (May 9, 2024), https://www.kgns.tv/2024/05/10/two-people-connection-rep-henry-cuellar-case-plead-guilty-conspiracy-commit-money-laundering/.

[12] *See, e.g.*, KGNS Staff, *House Ethics Panel opens investigation into Rep. Henry Cuellar*, KGNS – Laredo (May 30, 2024), https://www.kgns.tv/2024/05/30/house-ethics-panel-open-investigation-into-rep-henry-cuellar/.

[13] *See, e.g.*, Matthew Choi, *National Republicans target Henry Cuellar's South Texas seat after indictment*, LMT Online (June 3, 2024), https://www.lmtonline.com/local/article/cuellar-furman-republican-texas-support-target-19492943.php; Matthew Choi, *After U.S. Rep. Henry Cuellar's indictment, why aren't Republicans trying to flip his district?*, LMT Online (May 9, 2024), https://www.lmtonline.com/local/article/cuellar-gop-strategy-south-texas-elections-2024-19459863.php; Cayla Harris, *Henry Cuellar is facing bribery allegations in an election year. Could Republicans flip his seat?*, LMT Online (May 9, 2024), https://www.lmtonline.com/news/article/henry-cuellar-bribery-reelection-19448468.php.

[14] *See, e.g.*, Roger Uvalle, *Rep. Cuellar asks judge to move bribery trial from Houston to Laredo*, KGNS – Laredo (April 17, 2025), https://www.kgns.tv/2025/04/17/rep-cuellar-asks-judge-move-bribery-trial-houston-laredo/; John Wayne Ferguson, *U.S. Rep. Henry Cuellar, accused of taking over $600K in bribes, will go to trial March 2025*, LMT Online (May 18, 2024), https://www.lmtonline.com/news/article/henry-cuellar-trial-date-scheduled-march-19465126.php; Guillermo Contreras, *Feds: Henry Cuellar bribery prosecution might involve classified info*, LMT Online (May 11, 2024), *https://www.lmtonline.com/news/article/henry-cuellar-bribery-classified-information-19452742.php*; KGNS Staff, *Trial of Congressman Henry Cuellar postponed again*, KGNS – Laredo (Dec. 13, 2024), https://www.kgns.tv/2024/12/13/trial-congressman-henry-cuellar-postponed-again/.

[15] *See* Texas Demographic Center, 2023 Population Estimates, https://demographics.texas.gov/Estimates/2023/ (visited Apr. 23, 2025).

Walker, Waller, and Wharton Counties, with a total population of approximately 7.1 million.[16]  If this case were transferred to Laredo, the combination of the Cuellars' prominence in Laredo, the extensive pretrial publicity in the Laredo media, and the small size of the Laredo jury pool would make it difficult to empanel an unbiased jury.  *See United States v. Ackal*, 2016 WL 4922854, at *6 (W.D. La. Sept. 14, 2016) (denying motion to change venue because, *inter alia*, "relevant publicity has attracted a significant amount of community attention, particularly when taking into consideration the relative size of the communities from which juries are drawn").  This factor weighs heavily against transfer.

### III.  Conclusion

For the reasons stated herein, the defendants' motion to transfer the case to the Laredo Division for trial should be denied.

Dated: April 25, 2025

Respectfully submitted,

| | |
|---|---|
| EDWARD P. SULLIVAN<br>Acting Chief<br>Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice | JENNIFER KENNEDY GELLIE<br>Chief<br>Counterintelligence and Export Control Section<br>National Security Division<br>U.S. Department of Justice |
| By: */s/ Celia Choy*<br>Rosaleen O'Gara<br>Celia Choy<br>Aaron L. Jennen<br>Attorneys for the United States | By: */s/ Garrett Coyle*<br>Garrett Coyle<br>Attorney for the United States |

---

[16]  *See id.*

12

# CERTIFICATE OF SERVICE

      I certify that I filed this document via the CM/ECF system on April 25, 2025, which caused the document to be electronically served on all counsel of record.

                                      */s/ Celia Choy*
                                      Celia Choy