IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| V. | §    Case No. 4:24-cr-00224 |
| | § |
| ENRIQUE ROBERTO "HENRY" CUELLAR and IMELDA RIOS CUELLAR | § § § |

**DEFENDANTS' MOTION TO DISMISS
HONEST SERVICES, FARA, AND RELATED CONSPIRACY COUNTS**

TO THE HONORABLE LEE H. ROSENTHAL,
UNITED STATES DISTRICT JUDGE:

NOW COMES ENRIQUE ROBERTO "HENRY" CUELLAR and IMELDA RIOS CUELLAR, Defendants herein, through counsel. The Cuellars move the Court to dismiss Counts 3, 4, 7, and 8 of the Government's indictment related to Honest Services Wire Fraud, the Foreign Agents Registration Act, and Conspiracy on vagueness and multiplicity grounds.[1]

## I.  BACKGROUND

The Department of Justice has charged Congressman Cuellar and Mrs. Cuellar in a 54-page, 14-count indictment alleging bribery, conspiracy, honest services wire

---

[1] Pursuant to the Court's amended scheduling order, Defendants make this challenge to the face of the indictment but may make further motions on these counts under the other motion deadlines in his matter.

fraud, and Foreign Agent Registration Act violations, among other charges. Dkt. No. 1. The indictment claims the Congressman engaged in an illegal scheme to take money from foreign entities in exchange for official acts. Dkt. No. 1. Counts Three and Seven allege an Honest Services Wire Fraud Conspiracy under 18 U.S.C. § 1349. In relevant part, these counts allege the Defendants conspired to: :

> [D]efraud and deprive the United States and the citizens of Texas's 28th Congressional District, of their right to the honest services of HENRY CUELLAR, a Member of the United States House of Representatives, through bribery to influence HENRY CUELLAR's official acts and to induce him to do and to omit to do acts in violation of his official duty, and to knowingly and intentionally transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

Dkt. No. 1 ¶¶ 99, 116.

Counts Four and Eight allege violations of 18 U.S.C. § 219 concerning Public Official Acting as an Agent of a Foreign Principal. In relevant part, these counts allege:

> Beginning no later than February 2014 and continuing until at least September 2021, in the Southern District of Texas and elsewhere, the defendant, HENRY CUELLAR, being a public official, aided and abetted by the defendant, IMELDA CUELLAR, knowingly was and acted as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938, that is, HENRY CUELLAR agreed to and did act as an agent of the Government of Azerbaijan by agreeing to perform the acts detailed in Paragraph 45 of this Indictment, and other acts as opportunities arose.

Dkt. No. 1 ¶ 101.

Count Eight is identical to Count Four with the exception that it references Paragraph 83 instead of Paragraph 45. Dkt. No. 1 ¶ 119.

## II. LEGAL STANDARD

### A. <u>Vagueness</u>

The Fifth Amendment provides that no person shall be deprived of life or liberty without due process of law. The Supreme Court has held that "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Known as the void-for-vagueness doctrine, this protection "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The most important purpose of the doctrine is the requirement that the "legislature establish minimal guidelines to govern law enforcement." *Id.* When a legislature fails to provide minimal guidelines, the statute puts people at the mercy of the whims of policemen, prosecutors, and juries. *Id.* "The Constitution does not permit a legislature to "set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *City*

*of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (finding statute vague for failing to define the term "loiter").

    B.    <u>Multiplicity</u>

Multiplicity "is charging a single offense in more than one count in an indictment." *United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994). An indictment containing multiplicity violates the Double Jeopardy Clause of the Fifth Amendment to the Constitution because a person may be subjected to punishment for the same crime more than once. *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). "The test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not." *Nguyen*, 28 F.3d at 482. "A defendant may be convicted of separate counts for 'overlapping conspiracies,' but not 'where a smaller conspiracy is 'wholly contained' within a larger one.'" *United States v. Menendez*, 759 F. Supp. 3d 460, 533 (S.D.N.Y. 2024). Multiplicity runs parallel to the lesser-included offense analysis under *Schmuck v. U.S.* and Federal Rule of Criminal Procedure 31(c). "Under this test, one offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense." *Schmuck v. United States*, 489 U.S. 705, 716 (1989).

C.  Public Official Acting as an Agent of a Foreign Principal

Title 18, United States Code, § 219 was enacted in 1995 to criminalize crimes concerning a Public Official Acting as an Agent of a Foreign Principal. Section 219 provides in full:

> (a) Whoever, being a public official, is or acts as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938 or a lobbyist required to register under the Lobbying Disclosure Act of 1995 in connection with the representation of a foreign entity, as defined in section 3(6) of that Act shall be fined under this title or imprisoned for not more than two years, or both.

Section 219 has been effectively dormant since its passage. Only one case is featured in the notes and decisions of the code section on Westlaw: *United States v. Menendez*, 720 F. Supp. 3d 301 (S.D.N.Y. 2024); *United States v. Menendez*, 759 F. Supp. 3d 460, 533 (S.D.N.Y. 2024). The district court in *Menendez* ruled that prosecuting a congressman under Section 219 did not violate the separation of powers doctrine, but the court did not consider a vagueness challenge to the provision. *See id.* at 319

The Foreign Agents Registration Act of 1938 is found under 22 U.S.C. §§ 611, *et seq*. Section 611(c) defines "agent of a foreign principal" as:

> (1) any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person--
>
> > (i) engages within the United States in political activities for or in the interests of such foreign principal;

5

  (ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;

  (iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or

  (iv) within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States; and

  (2) any person who agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to contractual relationship, an agent of a foreign principal as defined in clause (1) of this subsection.

Section 611(o) defines "political activities" as:

> any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

  D. <u>Honest Services</u>

Honest services fraud falls under 18 U.S.C. § 1346, which provides: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." Conspiracy under 18 U.S.C. § 1349 states: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed

for the offense, the commission of which was the object of the attempt or conspiracy." Wire fraud falls under 18 U.S.C. § 1343.

"Honest-services fraud and this Court's vagueness jurisprudence are old friends." *Percoco v. United States*, 598 U.S. 319, 333 (2023) (Gorsuch, J. concurring). The Supreme Court has held that fraud statutes cover property rights but do not protect abstract interests like a right to honest government. *McNally v. United States*, 483 U.S. 350, 360 (1987). The *McNally* court further explained that the federal government should not be "setting standards of disclosure and good government." *Id.* Following *McNally*, Congress passed 18 U.S.C. § 1346, which defined the phrase "scheme or artifice to defraud" as including "a scheme or artifice to deprive another of the intangible right of honest services." The new law offered clarity of Congress' intent to include honest services within the wire fraud statute, but the law did not clarify what is an honest service, what is a fiduciary duty that creates an honest services relationship, and who can be held responsible for honest services fraud for breaches of those duties. The Supreme Court acknowledged these challenges in 2010 in the case of *Skilling v. United States*, 561 U.S. 358, 405 (2010). The *Skilling* majority held that § 1346 could be saved from vagueness by requiring it to include bribes and kickbacks, but that it could not cover other schemes. *Id.* at 407. The Court ruled Skilling could not have been convicted of honest-services fraud

because the Government had not alleged that he solicited or accepted bribe payments or kickbacks. *Id.* at 413.

A three-justice concurrence in *Skilling*, however, argued the majority engaged in a rescue enterprise "not of interpretation but invention" for the statute that did not even cure all the vagueness problem with the offense. *Id*. at 422 (Scalia, Thomas and Kennedy, J. concurring). "None of the 'honest services' cases, neither those pertaining to public officials nor those pertaining to private employees, defined the nature and content of the fiduciary duty central to the 'fraud' offense." *Id.* at 417. "There was not even universal agreement concerning the *source* of the fiduciary obligation." *Id.*

In 2023, the Supreme Court waded back into these waters in *Percoco*, where it held, "'[T]he intangible right of honest services' must be defined with the clarity typical of criminal statutes and should not be held to reach an ill-defined category of circumstances . . . ." *Percoco*, 598 U.S. at 328. *Percoco* began defining the bounds of a fiduciary relationship sufficient for a person to be held responsible under § 1346. According to the Supreme Court, "the intangible right of honest services" codified in Section 1346 plainly does not extend a duty to the public to all private persons . . . ." *Id.* at 330. The Supreme Court set aside a jury instruction about when the defendant owed a duty of honest services to the public. The Court held that the jury instructions, which allowed the jury to find a duty if "1) he 'dominated and controlled any

8

governmental business' and (2) 'people working in the government actually relied on him because of a special relationship he had with the government,'" swept too broadly and were vague. *Id.* Although the court rejected the argument that a private person outside public employment can never have a fiduciary duty to the public, the Court confirmed that a formal agreement was required to create such a duty. *Id.* at 329.

Once again, several justices commented on the glaring vagueness problems with the honest services statute as a whole. "Yet even 80 years after lower courts began experimenting with the honest-services-fraud theory, no one can say what sort of fiduciary relationship is enough to sustain a federal felony conviction and decades in federal prison." *Percoco*, 598 U.S. at 337 (Gorsuch, J. concurring). "Nothing in the new law attempted to resolve when the duty of honest services arises, what sources of law create that duty, or what amounts to a breach of it. Nor did the new law cross-reference any portion of the federal criminal code that might have lent clarity to the concept." *Id*. at 334. According to Justice Gorsuch, Congress "must do more than invoke an aspirational phrase and leave it to prosecutors and judges to make things up as they go along. *Id.*

### III.   ARGUMENT

####   A.   The FARA Statute is Unconstitutionally Vague

This prosecution appears to present a challenge of first impression: whether Section 219 is void for vagueness on its face. As the code has come in favor among some prosecutors (and then since fallen out of favor pursuant to Department of Justice guidance)[2], examination of this challenge by this Court is ripe.

On its face, Section 219 raises more questions than it answers when it prohibits a public official who "is or acts as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938 . . . ." What "is or acts as an agent of a foreign principal" is not defined in the statute on elsewhere in Chapter 11. *See* 18 U.S.C. § 202. The reference to the Foreign Agents Registration Act of 1938 only deepens the mystery by including a definition that approaches tautology. *See* 22 U.S.C. § 611(c)(1). A person is defined as an "agent of a foreign principal" under the code when they are an "agent," representative, employee, or "any person" who acts in "any other capacity" at the "order, request," or "direction" of a foreign principal or of "a person" "any of whose" activities are "directly or indirectly

---

[2] The Attorney General issued a memorandum on February 5, 2025 limiting the use of FARA by DOJ prosecutors: "Recourse to criminal charges under the Foreign Agents Registration Act (FARA) and 18 USC 951 shall be limited to instances of alleged conduct similar to more traditional espionage by foreign government actors."
Memorandum from the Att'y Gen. to All Dep't Emps., Gen. Pol'y Regarding Charging, Plea Negotiations, and Sentencing (Feb. 5, 2025) (available at
https://www.justice.gov/ag/media/1388541/dl?inline)

supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal." 22 U.S.C. § 611(c)(1), This definition is far too self-referential and broad to pass muster under a vagueness analysis. *See* § 611(c)(1).

"Any person" acting "in any other capacity" could be anyone doing anything anywhere. *See* 18 U.S.C. § 611(c)(1). "Order", "request," and "direction" are also so profoundly broad and undefined as to be standardless. The problems continue in subsections i-iv. *See* 22 U.S.C. § 611(c)(1)(i)-(iv). The act prohibits engaging in political activities, but it defines political activities so broadly as to encompass "any activity" that a person believes will "in any way" "influence "any agency" or "any section of the public" with reference to formulating domestic or foreign policies. *See* 18 U.S.C. § 611(o). This certainly sweeps broader than the typical definition of political activities under the Hatch Act in 5 CFR § 734.101. But how broad does it go and where does the line stop?

A definition of criminal activity that depends on whether a person "believes" their acts will "in any way influence" an unspecified target drops any pretense of a criminal code bound by understandable guidelines. *See* 18 U.S.C. § 611(o); *see also Johnson*, 576 U.S. at 595. The statute provides no notice of what conduct is being punished, much less minimal guidelines to govern law enforcement, prosecutors, and juries. *See Johnson*, 576 U.S. at 595. What does "any other capacity mean"? Does it encompass when a congressman receives a routine request from a constituent for

11

help expediting a visa or passport for a trip? If a congressman speaks to a foreign official about matters in the House and decides he agrees with that official's position, has he acted as an agent of a foreign principal? How would routine contact with a foreign official be excluded from these definitions? What is the difference between a request and an order? Are there any relationships that can fall outside the "any person" in "any other capacity" definition?

There are no standards within the statutory definitions that prevent law enforcement from wantonly enforcing the Public Official Acting as an Agent criminal code. Just like *Kolender*, the definitions to understand these essential terms are absent. *See* 461 U.S. at 358. There simply must be more clarity of "what is forbidden and what is permitted." *Id.* It seems clear that there is no way to draw a line on what lies within this definition without endeavoring beyond legal interpretation and wading into legal invention. "The Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.'" *Morales*, 527 U.S. at 60.

    B.    <u>Honest Services Wire Fraud is Unconstitutionally Vague</u>

The Supreme Court has repeatedly signaled that, "to this day, no one knows what "honest-services fraud" encompasses." *See Percoco*, 598 U.S. at 333 (Gorsuch, J. concurring). The glaring problem with "intangible" fraud prosecutions identified

in *McNally* was not fixed when Congress passed 18 U.S.C. § 1346. *McNally*, 483 U.S. at, 360. It is not clear where the fiduciary obligation for the crime arises from, what the nature or content of that duty includes, or how that duty can be breached. *See Skilling*, 561 U.S. at 417 (Scalia, J. concurring). Section 1346 should be set aside as unduly vague until Congress establishes an ascertainable standard of guilt that moves this law into a realm that an ordinary person can understand what is prohibited. *See Kolender*, 461 U.S. at 358.

Section 1346 is also vague as applied to this case. Even if this Court does not wish to journey into the thicket of honest services vagueness as a whole, the indictment of Mrs. Cuellar for honest services wire fraud raises the same serious problems about the nature of the fiduciary relationship that were identified in *Percoco*. *See Percoco*, 598 U.S. at 330. "[T]he intangible right of honest services" codified in Section 1346 plainly does not extend a duty to the public to all private persons… ." *Id.* Therefore, in *Percoco*, the Supreme Court set aside a jury instruction for being too vague and indicated that a private person outside public employment can only hold a fiduciary duty to the public when evidence exists of a formal "agreement[] that make[s] them actual agents of the government." 598 U.S. at 329. The indictment has not alleged that Mrs. Cuellar ever entered a principal-agent relationship with the government. She may not be charged with breaching a fiduciary duty under Section 1346 under *Percoco*.

C. <u>Charging Bribery and Honest Services Wire Fraud Together is Multiplicitous</u>

Even if Honest Services Wire Fraud is permissible in general here, Counts Three and Seven are impermissible as applied because of the way the Government has indicted the Defendants. Under *Skilling*, bribery or a kickback is a necessary element of an honest services fraud claim. *Skilling*, 561 U.S. at 405. "[W]hatever the school of thought concerning the scope and meaning of § 1346, it has always been 'as plain as a pikestaff that' bribes and kickbacks constitute honest-services fraud." *See id.* at 412 (quoting *Williams v. United States,* 341 U.S. 97, 101 (1951)). If a bribe by a public official "constitutes" honest-services fraud, then the crime of bribery itself constitutes a lesser included offense when an honest-services fraud through bribery charge is indicted, as it is here. *See id*; *Schmuck*, 489 U.S. at 719. Simply put, honest-services fraud through bribery must be committed with bribery, and so bribery is a lesser included offense. *See id.*[3]

A finding that the Government's bribery and honest-services fraud counts are multiplicitous makes common sense in light of the actual substance of the indictment here. Despite the Government's best efforts to layer on counts, there are only two conspiracies alleged in the indictment: one involving Azerbaijan and the other involving foreign banking in Mexico. *See* Dkt. No. 1 ¶¶ 86, 96, 98, 103, 114, 116.

---

[3] Not only is bribery wholly contained within honest-services fraud through bribery, both statutes take aim at the same issue of public corruption.

14

The indictment impermissibly seeks to punish the Defendants multiple times for the same conduct under each conspiracy. *See Nguyen*, 28 F.3d at 482. The conduct alleged as a predicate for alleged bribery in Count Three related to Azerbaijan is the same conduct alleged as a predicate for honest-services fraud in Count Four. Dkt. No. ¶¶ 86, 96, 98. This echo is also true in Counts Six and Seven related to the foreign bank allegations. Dkt. No. ¶¶ 103, 114, 116. Emphasizing these overlapping allegations, it is nearly impossible to imagine how the alleged receipt of a bribe by a public official could have been committed in these two instances without the public official also committing honest-services fraud. *See* Dkt. No. 1 ¶¶ 86, 96, 98, 103, 114, 116; *see also Chacko*, 169 F.3d at 145. The bribery counts should be struck because of multiplicity. Similarly, just as the *Menendez* court held, the FARA counts are multiplicitous of the bribery counts and should be struck if a bribery count remains. *Menendez*, 759 F. Supp. 3d at 533. To hold otherwise would infringe on the Defendants' Double Jeopardy rights under the Fifth Amendment by punishing the same conduct multiple times. *See Nguyen*, 28 F.3d at 482; *Chacko*, 169 F.3d at 145.

## CONCLUSION

For the aforementioned reasons, the Cuellars ask the Court to find: (1) the crime of a Public Official Acting as an Agent of a Foreign Principal is unconstitutionally vague, (2) Honest Services Wire Fraud is unconstitutionally vague as to each Defendant, and (3) charging Bribery and Honest Services Wire Fraud

together is multiplicitous. Counts 3, 4, 7, and 8 should be stricken from the indictment.

Respectfully submitted,

FLOOD & FLOOD

*/s/ Chris Flood*
Chris Flood
Email: chris@floodandflood.com
State Bar No. 07155700
Federal I.D. No. 9929

Charles Flood
Email: charles@floodandflood.com
State Bar No. 00798178
Federal I.D. No. 22508

*/s/* Stephen D. Dockery
State Bar No. 24120265
Email: stephen@floodandflood.com
914 Preston, Ste. 800
Houston, Texas 77002
713-223-8877
713-223-8877 fax


Eric Reed
The Reed Law Firm, PLLC
State Bar No. 00789574
Federal I.D. No. 17904
912 Prairie St., Suite 100
Houston, Texas 77002
713-600-1800
713-600-1840 fax

***ATTORNEYS FOR ENRIQUE ROBERTO "HENRY" CUELLAR***

DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP

*/s/ Derek S. Hollingsworth*
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
Email: dhollingsworth@dhmlaw.com
*ATTORNEY-IN-CHARGE*

Anthony D. Drumheller
State Bar No. 00793642
Federal I.D. No. 22734
Email: adrumheller@dhmlaw.com

Jeremy T. Monthy
State Bar No. 24073240
Federal I.D. No. 1115582
Email: jmonthy@dhmlaw.com

Lindsay M. Contreras
State Bar No. 24094164
Federal I.D. No. 3685193
Email: lcontreras@dhmlaw.com

712 Main Street, Suite 1705
Houston, Texas 77002
Telephone: (713) 751-2300
Facsimile: (713) 751-2310

***ATTORNEYS FOR IMELDA RIOS CUELLAR***

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                       */s/ Chris Flood*
                                       Chris Flood