UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 4:24-cr-224 |
| v. | § | |
| | § | |
| ENRIQUE ROBERTO "HENRY" | § | |
| CUELLAR and IMELDA RIOS | § | |
| CUELLAR, | § | |
| | § | |
| Defendants. | § | |

OPPOSITION TO MOTION TO DISMISS COUNTS 3, 4, 7, AND 8

# Table of Contents

Table of Authorities ................................................................................................ iii

I.    Introduction ................................................................................................... 1

II.   Background .................................................................................................... 2

      A.    Factual Background ............................................................................ 2

      B.    Statutory Background ........................................................................ 4

            1.    18 U.S.C. § 219 ........................................................................ 4

            2.    18 U.S.C. § 1346 ..................................................................... 6

III.  Argument ....................................................................................................... 7

      A.    Section 219 and the Honest Services Statute Are Constitutional .......................... 7

            1.    The defendants' facial challenges fail because § 219 and the honest
                  services statute undisputedly cover their alleged conduct ......................... 8

            2.    Section 219 is not unconstitutionally vague on its face ............................ 9

                  a.    Section 219 and FARA have consistently been upheld against
                        vagueness challenges ..................................................... 10

                  b.    The elements of § 219 are clearly defined ..................................... 11

                  c.    The defendants' attempt to raise questions about hypothetical
                        cases does not render § 219 unconstitutionally vague ................. 15

            3.    The honest services statute is not unconstitutionally vague on its face .... 17

      B.    The Honest Services Fraud Counts Against Imelda Cuellar
            State Valid Offenses ............................................................................. 18

      C.    The Multiplicity Challenges Should Be Rejected .................................................. 20

            1.    The pretrial multiplicity challenges are premature ................................... 21

            2.    The honest services fraud counts and § 219 counts are not
                  multiplicitous of the bribery counts ........................................................ 22

IV.   Conclusion ................................................................................................... 25

Statutory Appendix ................................................................................................. 1a

## Table of Authorities

**Cases**

*American Communications Ass'n v. Douds,*
    339 U.S. 382 (1950) ................................................................................................14

*Attorney General v. Irish Northern Aid Committee,*
    668 F.2d 159 (2d Cir. 1982) ...........................................................................12, 13, 16

*Ball v. United States,*
    470 U.S. 856 (1985) ................................................................................................21

*Boyce Motor Lines v. United States,*
    342 U.S. 337 (1952) ................................................................................................15

*Brown v. Ohio,*
    432 U.S. 161 (1977) ................................................................................................21

*Cleveland v. United States,*
    531 U.S. 12 (2000) ..................................................................................................7

*Home Depot, Inc. v. Guste,*
    773 F.2d 616 (5th Cir. 1985) .........................................................................7, 8, 11, 17

*Iannelli v. United States,*
    420 U.S. 770 (1975) ................................................................................................23

*Illinois v. Vitale,*
    447 U.S. 410 (1980) ................................................................................................23

*Johnson v. United States,*
    576 U.S. 591 (2015) ........................................................................................9, 13, 16

*Kolender v. Lawson,*
    461 U.S. 352 (1983) ................................................................................................8

*Maynard v. Cartwright,*
    486 U.S. 356 (1988) ................................................................................................19

*McDonnell v. United States,*
    579 U.S. 550 (2016) ................................................................................................12

*McNally v. United States,*
    483 U.S. 350 (1987) ............................................................................................7, 17

*Nash v. United States,*
    229 U.S. 373 (1913) ................................................................................................13

*Nautilus Insurance Co. v. International House of Pancakes, Inc.*,
  622 F. Supp. 2d 470 (S.D. Tex. 2009) .................................................................8, 11

*Ohio v. Johnson*,
  467 U.S. 493 (1984) ...........................................................................................20, 21

*Percoco v. United States*,
  598 U.S. 319 (2023) ..........................................................................18, 19, 20, 24

*Rose v. Locke*,
  423 U.S. 48 (1975) ....................................................................................................8

*Skilling v. United States*,
  561 U.S. 358 (2010) ....................................................................................... passim

*Smith v. Goguen*,
  415 U.S. 566 (1974) ...............................................................................................16

*United States v. Batchelder*,
  442 U.S. 114 (1979) ...............................................................................................21

*United States v. Bronstein*,
  849 F.3d 1101 (D.C. Cir. 2017) .....................................................................13, 15

*United States v. Clark*,
  582 F.3d 607 (5th Cir. 2009) ..................................................................................8

*United States v. Clark*,
  No. 24-20271, 2025 WL 801358 (5th Cir. Mar. 13, 2025) ...................................18

*United States v. Craig*,
  401 F. Supp. 3d 49 (D.D.C. 2019) .........................................................................10

*United States v. Dominguez*,
  No. 17-cr-651, 2018 WL 2057442 (S.D. Tex. May 3, 2018) .................................21

*United States v. Duran*,
  596 F.3d 1283 (11th Cir. 2010) .............................................................................12

*United States v. George*,
  676 F.3d 249 (1st Cir. 2012) ..................................................................................24

*United States v. Hasson*,
  26 F.4th 610 (4th Cir. 2022) ....................................................................................9

*United States v. Hung*,
  629 F.2d 908 (4th Cir. 1980) ..................................................................................12

*United States v. Kay*,
    359 F.3d 738 (5th Cir. 2004) ........................................................................19

*United States v. Langford*,
    No. 08-cr-245, 2009 WL 10671369 (N.D. Ala. July 2, 2009) ..................................23

*United States v. Lindauer*,
    No. 03-cr-807, 2004 WL 2813168 (S.D.N.Y. Dec. 6, 2004) ..................................12

*United States v. Martinez*,
    599 F. Supp. 2d 784 (W.D. Tex. 2009)........................................................21, 22

*United States v. May*,
    No. 21-cr-14, 2021 WL 3362951 (E.D. La. Aug. 3, 2021) ..................................21

*United States v. Menendez*,
    759 F. Supp. 3d 460 (S.D.N.Y. 2024) ....................................................13, 24, 25

*United States v. Menendez*,
    No. 23-cr-490, Order, ECF No. 308 (S.D.N.Y. Apr. 11, 2024)..............................10

*United States v. Menendez*,
    No. 23-cr-490, Transcript, ECF No. 344 (S.D.N.Y. Apr. 11, 2024)..........................10, 11, 21

*United States v. Menendez*,
    No. 23-cr-490, Transcript, ECF No. 583 (S.D.N.Y. July 12, 2024)..........................14, 24

*United States v. Michel*,
    No. 19-cr-148, 2022 WL 4182342 (D.D.C. Sept. 13, 2022)..................................10, 11, 14, 17

*United States v. National Dairy Products Corp.*,
    372 U.S. 29 (1963)..................................................................................16

*United States v. Nguyen*,
    28 F.3d 477 (5th Cir. 1994) ........................................................................22

*United States v. Pacheco*,
    489 F.2d 554 (5th Cir. 1974) ......................................................................22

*United States v. Peace Information Center*,
    97 F. Supp. 255 (D.D.C. 1951) ................................................................10, 15

*United States v. Salerno*,
    481 U.S. 739 (1987).................................................................................8

*United States v. Stokes*,
    726 F.3d 880 (7th Cir. 2013) ......................................................................11

*United States v. Swaim*,
  757 F.2d 1530 (5th Cir. 1985) .................................................................22

*United States v. Thomas*,
  877 F.3d 591 (5th Cir. 2017) ...................................................................8

*United States v. Westbrooks*,
  858 F.3d 317 (5th Cir. 2017) ...................................................................8

*United States v. Williams*,
  553 U.S. 285 (2008)...........................................................................14, 15

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982)..................................................................7, 8, 11, 17

**Statutes**

18 U.S.C. § 201(b) ....................................................................................3, 23

18 U.S.C. § 219 ...................................................................................... passim

18 U.S.C. § 371 .........................................................................................3, 14

18 U.S.C. § 951 ..............................................................................................12

18 U.S.C. § 1341 ..............................................................................................6

18 U.S.C. § 1343 .........................................................................................4, 6

18 U.S.C. § 1346 ................................................................................... passim

18 U.S.C. § 1349 .......................................................................................4, 23

22 U.S.C. § 611(a) ..........................................................................................11

22 U.S.C. § 611(b) ..........................................................................................16

22 U.S.C. § 611(c) ................................................................................. passim

22 U.S.C. § 611(*o*) .......................................................................................6, 14

22 U.S.C. § 618(a) ..........................................................................................10

Foreign Agents Registration Act of 1938,
  Pub. L. No. 75-583, 52 Stat. 631 ..............................................................4

An Act to Amend the Foreign Agents Registration Act of 1938, as amended,
  Pub. L. No. 89-486, 80 Stat. 244 .........................................................5, 6

**Other Authorities**

Pattern Criminal Jury Instructions 5th Cir. 2.09B...................................................................23

Pattern Criminal Jury Instructions 5th Cir. 2.15A ................................................................15

Pattern Criminal Jury Instructions 5th Cir. 2.57 ..................................................................23

108 Cong. Rec. pt. 10 (1962)..................................................................................................5

111 Cong. Rec. pt. 5 (1965) ...................................................................................................5

*Inquiry Into the Matter of Billy Carter and Libya:*
   *Hearings Before the Subcommittee to Investigate the Activities of*
   *Individuals Representing the Interests of Foreign Governments*
   *of the Senate Committee on the Judiciary*, 96th Cong. 701 (1980) .......................................13

Daniel M. Berman & Robert A. Heineman,
   *Lobbying by Foreign Governments on the Sugar Act Amendments of 1962*,
   28 L. & Contemporary Problems 416 (1963) .....................................................................4, 5

Order, Black's Law Dictionary (12th ed. 2024)......................................................................12

## I.    Introduction

The indictment in this case alleges that over a seven-year period, the defendants, Henry and Imelda Cuellar, accepted over half a million dollars in bribes from two foreign entities: an oil and gas company owned by the Government of Azerbaijan and a Mexican bank. To conceal these schemes, the defendants devised sham consulting contracts to funnel the bribe payments through front companies and middlemen into shell companies owned by Mrs. Cuellar, who performed little or no legitimate work under the contracts. Instead, in exchange for the payments, Rep. Cuellar, who represents Texas's 28th District in Congress, agreed to use his position to influence U.S. policy in favor of Azerbaijan and the Mexican bank.

The defendants have moved to dismiss four counts in the indictment. They assert facial constitutional vagueness challenges to the two statutes underlying those charges: 18 U.S.C. § 219, which makes it a crime for a public official to be or act as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938 (FARA), and 18 U.S.C. § 1346, which states that the federal fraud statutes criminalize schemes to deprive others of the intangible right of honest services.

The defendants do not dispute, however, that their alleged conduct falls within the clear core of these statutes. Their failure to bring an as-applied challenge forecloses their facial vagueness challenges because, as the Fifth Circuit has held, a person whose conduct is clearly covered by a statute cannot complain that the statute is vague as applied to the conduct of others. In any event, both statutes provide fair notice of the conduct they reach and do not encourage arbitrary enforcement. Courts have consistently rejected vagueness challenges to § 219 and FARA, citing the straightforward statutory elements and definitions. The defendants' attempt to question § 219's application to supposedly difficult hypotheticals not implicated in this case creates no vagueness problem. And the defendants' vagueness challenge to § 1346 is squarely foreclosed by

1

*Skilling v. United States*, where the Supreme Court held that, in the context charged here, "§ 1346 is not unconstitutionally vague." 561 U.S. 358, 412 (2010).

Beyond the facial vagueness challenges, Mrs. Cuellar also seeks dismissal of the honest services fraud conspiracy charges against her on the ground that, as a private citizen, she did not have a fiduciary duty to the public as required by § 1346. But while a fiduciary duty to the public is required to be liable as a *principal* under the statute, Mrs. Cuellar is charged under a well-settled *co-conspirator* liability theory: she is alleged to have conspired to deprive the public of the honest services of *Rep. Cuellar*, who had a fiduciary duty to his constituents to perform his congressional duties free from corrupt influence.

Finally, the defendants' pretrial multiplicity challenge is premature and should be denied without prejudice to renewal after trial if they are convicted on any purportedly multiplicitous counts. Even if the challenge were ripe now, the honest services fraud counts, § 219 counts, and bribery counts each have different elements and thus are not multiplicitous.

The motion to dismiss should be denied.

## II.    Background

### A.    Factual Background

A grand jury indicted the defendants for two bribery and foreign influence schemes. One scheme involved the Government of Azerbaijan and its wholly owned oil and gas company, Foreign Oil Company-1. Indictment ¶¶ 1–2, 12–45, ECF No. 1. The second scheme involved a bank in Mexico, Foreign Bank-1. Indictment ¶¶ 1, 3, 46–83.

The indictment alleges that, across both schemes, the defendants accepted over $598,000 in bribes from Foreign Oil Company-1 and Foreign Bank-1. Indictment ¶¶ 1, 23, 27, 30, 32, 41–42, 55, 74–80. The bribe payments were laundered, under the guise of sham consulting contracts, through a series of front companies and middlemen into shell companies owned by Mrs. Cuellar,

who performed little or no legitimate work. Indictment ¶¶ 1, 25–27, 29–35, 38–42, 45, 55, 57–58, 60–80, 83.

Instead, the indictment alleges that in exchange for these bribe payments, Rep. Cuellar, who represented Texas's 28th Congressional District in the U.S. House of Representatives, agreed to use his position to influence U.S. policy in favor of Azerbaijan and Foreign Bank-1. Indictment ¶¶ 1–3, 45, 83. In the Azerbaijan scheme, Rep. Cuellar agreed to take actions to benefit Azerbaijan on matters including legislation relating to U.S. security and economic development programs, legislation and policy concerning Azerbaijan's longstanding conflict with Armenia over control of a disputed region, immigration issues concerning an Azerbaijani citizen, and the promotion of Azerbaijan's reputation as an ally and strategic partner of the United States. Indictment ¶ 45.

In the Foreign Bank-1 scheme, Rep. Cuellar agreed to take actions to benefit Foreign Bank-1 on matters including legislative activity and regulatory and enforcement issues affecting Foreign Bank-1's ability to enter correspondent banking relationships, legislation to block regulations detrimental to the payday lending industry, and legislation concerning cross-border electronic transfers. Indictment ¶ 83.

The indictment charges 14 counts against both defendants. The counts relevant to this motion are two sets of parallel charges — one for the Azerbaijan scheme and one for the Foreign Bank-1 scheme:

- **Conspiracy to commit bribery and to violate 18 U.S.C. § 219:** Counts 1 and 5 charge the defendants with conspiring for Rep. Cuellar to accept bribes from Foreign Oil Company-1 and Foreign Bank-1, respectively, and to act as an agent of Azerbaijan and Foreign Bank-1, respectively, required to register under FARA, in violation of 18 U.S.C. § 371. Indictment ¶¶ 86–95, 103–13.

- **Bribery:** Counts 2 and 6 allege that Rep. Cuellar, aided and abetted by Mrs. Cuellar, accepted bribes from Foreign Oil Company-1 and Foreign Bank-1, respectively, in return for being influenced in the performance of official acts, in violation of 18 U.S.C. § 201(b). Indictment ¶¶ 96–97, 114–15.

3

- **Honest services wire fraud conspiracy:** Counts 3 and 7 charge the defendants with conspiring to defraud "the United States and the citizens of Texas's 28th Congressional District[] of their right to the honest services of HENRY CUELLAR" — who, "[a]s a United States Congressman," "owe[d] a fiduciary duty to the United States and to the residents of Texas's 28th Congressional District to provide honest services and to perform the duties and responsibilities of his office free from corrupt influence" — through the Azerbaijan and Foreign Bank-1 bribery schemes, respectively, in violation of 18 U.S.C. §§ 1343, 1346, and 1349. Indictment ¶¶ 4, 98–100, 116–18.

- **Public official acting as an agent of a foreign principal:** Counts 4 and 8 allege that Rep. Cuellar, aided and abetted by Mrs. Cuellar, was a public official who acted as an agent of Azerbaijan and Foreign Bank-1, respectively, required to register under FARA, in violation of 18 U.S.C. § 219. Indictment ¶¶ 101–02, 119–20.

The indictment also charges the defendants with substantive and conspiracy counts of money laundering. Indictment. ¶¶ 121–25.

### B.     Statutory Background

#### 1.   18 U.S.C. § 219

The Foreign Agents Registration Act of 1938 was originally enacted to address the problem of "persons employed by [foreign] agencies to disseminate propaganda in the United States." Pub. L. No. 75-583, 52 Stat. 631 (1939). Covered persons were required to register with the U.S. government. *Id.*, 52 Stat. 632.

The limits of the original law became apparent in the early 1960s, when foreign efforts to lobby Congress spiked during a legislative debate over U.S. sugar import quotas. *See* Daniel M. Berman & Robert A. Heineman, *Lobbying by Foreign Governments on the Sugar Act Amendments of 1962*, 28 L. & Contemporary Problems 416, 416–18 (1963). Following Fidel Castro's overthrow of the Cuban government, other countries jockeying to capture quotas previously assigned to Cuba sponsored lavish trips abroad for members of the House Agriculture Committee — which was scheduled to hold hearings on sugar legislation — and their families. *Id.* at 422–23. Ultimately,

Congress allocated new sugar import quotas to countries that had lobbied the Committee but that lacked the production capacity to fulfill the quotas they were granted. *Id.* at 421–22, 425.

This episode prompted Congress to study how foreign governments and their agents sought to influence U.S. policy outside diplomatic channels. 108 Cong. Rec. pt. 10 at 13,385 (1962). Senator Fulbright, who chaired the Foreign Relations Committee, observed that while FARA's "original targets … were the subversive agent and propagandist," foreign influence efforts had shifted to "professional lobbyists and public opinion manipulators whose object is not [to] subvert the Government but to influence its policies to the satisfaction of his client." 111 Cong. Rec. pt. 5 at 6,984 (1965) ("The trench coat has been replaced by the gray flannel suit.").

To address this problem, Congress amended FARA in 1966 in three ways. Pub. L. No. 89-486, 80 Stat. 244 (1966). First, Congress refined the types of agency relationships requiring registration under FARA. Congress defined "agent of a foreign principal" to mean "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal" and who engages in certain covered activities. § 1(2), 80 Stat. at 244 (codified at 22 U.S.C. § 611(c)(1)). In addition to these agency relationships, Congress also defined "agent of a foreign principal" to include "any person who agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to contractual relationship, an agent of a foreign principal" under the definition above. 22 U.S.C. § 611(c)(2).

Second, Congress updated the categories of activities for which foreign agents must register under FARA. Specifically, Congress defined "agent of foreign principal" as any person

with the requisite agency relationship with a foreign principal who, within the United States: (i) "engages … in political activities for or in the interests of such foreign principal"; (ii) "acts … as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal"; (iii) "solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal"; or (iv) "represents the interests of such foreign principal before any agency or official of the Government of the United States." § 1(2), 80 Stat. at 244 (codified at 22 U.S.C. § 611(c)(1)). Congress also defined the terms used in subparagraphs (i) and (ii), including "political activities," which, following a minor amendment, today means:

> any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

22 U.S.C. § 611(*o*).

Third, whereas FARA had made it a crime for foreign agents to willfully fail to register, Congress added 18 U.S.C. § 219, which categorically prohibits federal public officials from knowingly "[being] or act[ing] as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938," regardless of whether they register. § 8(b), 80 Stat. at 249 (codified at 18 U.S.C. § 219). Congress later amended the definition of "public official," which now appears in § 219(c) and which includes a "Member of Congress."

### 2.  18 U.S.C. § 1346

As originally enacted, the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343, criminalized "scheme[s] or artifice[s] to defraud," without further defining those terms. For the next four decades, the courts of appeals unanimously interpreted that statutory language to cover

not only schemes for obtaining money or property, but also schemes to deprive others of intangible rights, including the intangible right of honest services. *See McNally v. United States*, 483 U.S. 350, 358 (1987); *id.* at 364 (Stevens, J., dissenting). This intangible right of honest services encompassed the public's right to have its representatives and officials conduct government business free from bribery and kickbacks. *See id.* at 367 (Stevens, J., dissenting).

In *McNally*, the Supreme Court rejected that unanimous interpretation, concluding that that, if Congress wished to expand the federal fraud statutes beyond the deprivation of property rights, "it must speak more clearly than it has." *Id.* at 360.

The following year, Congress responded by enacting 18 U.S.C. § 1346. *See Cleveland v. United States*, 531 U.S. 12, 19–20 (2000) ("Congress amended the law specifically to cover one of the 'intangible rights' that lower courts had protected … prior to *McNally*: 'the intangible right of honest services.'"). That statute says that, for purposes of the mail and wire fraud statutes, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

## III.   Argument

### A.   Section 219 and the Honest Services Statute Are Constitutional

The defendants contend that the statutes they are charged with violating in Counts 4 and 8 (18 U.S.C. § 219) and Counts 3 and 7 (18 U.S.C. § 1346) are unconstitutionally vague on their face. Mot. at 10–13, ECF No. 86. Challenges to a statute under the Fifth Amendment's void-for-vagueness doctrine can be brought in two forms: facial or as applied. A facial challenge "means a claim that the law is 'invalid *in toto* — and therefore incapable of any valid application.'" *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982). That kind of challenge can succeed "*only* if the enactment is impermissibly vague in *all* of its applications." *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627 (5th Cir. 1985) (quoting *Hoffman Estates*, 455 U.S.

at 494–95); *see also Nautilus Ins. Co. v. Int'l House of Pancakes, Inc.*, 622 F. Supp. 2d 470, 476 (S.D. Tex. 2009) (Rosenthal, J.) (facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the [law] would be valid") (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987) (brackets in original)). It is not enough to show that a statute is "unclear in *some* of its applications," *Home Depot*, 773 F.2d at 627 (quoting *Hoffman Estates*, 455 U.S. at 495), because there is no "overbreadth" doctrine under the Fifth Amendment, *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).

A criminal statute is void for vagueness only if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). That principle "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975). Nor is a statute void for vagueness simply because "trained lawyers" must "consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty" what the statute forbids. *Id.* at 50. Under this standard, the defendants' facial vagueness challenges to both § 219 and the honest services statute fail.

### 1.   The defendants' facial challenges fail because § 219 and the honest services statute undisputedly cover their alleged conduct

Even if a criminal statute might be "vague as applied to some conduct, a person whose conduct is clearly proscribed by a statute … cannot complain that the law is vague as applied to the conduct of others." *United States v. Westbrooks*, 858 F.3d 317, 325 (5th Cir. 2017), *vacated on other grounds*, 584 U.S. 901 (2018); *see also United States v. Thomas*, 877 F.3d 591, 599 (5th

Cir. 2017); *United States v. Hasson*, 26 F.4th 610, 616–21 (4th Cir. 2022) (explaining why this rule survived the line of cases under *Johnson v. United States*, 576 U.S. 591 (2015)).

That principle forecloses the defendants' facial vagueness claims. Their vagueness challenges to § 219 and the honest services statute are solely facial; they do not contend that those statutes are vague as applied to their conduct. Mot. at 10–13; *see also* Section B, *infra* (explaining how Mrs. Cuellar's argument that the honest services fraud statute is vague amounts to a claim that the honest services counts fail to state an offense). After all, the indictment alleges that Rep. Cuellar, aided and abetted by Mrs. Cuellar, agreed to use his position in Congress to influence U.S. policy in favor of a foreign government and a foreign bank in exchange for hundreds of thousands of dollars. These schemes fall within the core of 18 U.S.C. § 219, which forbids public officials like Rep. Cuellar from acting as an agent of a foreign principal — including engaging in "political activities," the most obvious of which are activities meant to influence Congress itself, at the behest of a foreign principal. 22 U.S.C. § 611(c), (*o*). Similarly, a congressman who accepts a bribe in exchange for an official act and thereby deprives his constituents of their right to his honest services is the quintessential example of a defendant whose conduct is covered by the honest services fraud statute. *See Skilling v. United States*, 561 U.S. 358, 408 (2010). With no dispute that these statutes cover the conduct charged here, the Court need not consider their outer limits or whether they could be unconstitutionally vague in other cases. The facial challenges can be rejected on that basis alone.

## 2.     Section 219 is not unconstitutionally vague on its face

If the Court were to reach the defendants' broader facial challenges, it should reject them. Contrary to the defendants' assertion, § 219 provides adequate notice and ascertainable limits, as confirmed by courts' consistent rejection of vagueness challenges to both § 219 and FARA and by the straightforward statutory elements and definitions. Nor does any vagueness problem arise from

the defendants' attempt to question § 219's application to supposedly difficult hypotheticals not implicated in this case.

>a.      *Section 219 and FARA have consistently been upheld against vagueness challenges*

Section 219 provides fair notice and ascertainable limits on the conduct it covers, as the court concluded in the recent prosecution of New Jersey Senator Robert Menendez. *United States v. Menendez*, S.D.N.Y. No. 23-cr-490, Mem. in Support of Mot. to Dismiss at 55–59, ECF No. 143 (Jan. 16, 2024); Tr. 47:7–48:24, ECF No. 344 (Apr. 11, 2024); Order, ECF No. 308 (Apr. 11, 2024). The court found a vagueness challenge to § 219 "meritless" and concluded that "Section 219 is quite clear about what it proscribes: public officials are prohibited from engaging in activities that would require them to register under FARA as a foreign agent." Tr. 48:4–7, ECF No. 344.

Beyond § 219, courts have also uniformly upheld FARA against vagueness challenges, citing the statute's carefully circumscribed definitions. *See United States v. Michel*, No. 19-cr-148, 2022 WL 4182342, at *5–6 (D.D.C. Sept. 13, 2022) ("FARA criminalizes, in clear terms, failure to register in advance of engaging in the delineated political activities."); *United States v. Peace Info. Ctr.*, 97 F. Supp. 255, 263–64 (D.D.C. 1951) (FARA is "sufficiently precise"); *cf. United States v. Craig*, 401 F. Supp. 3d 49, 63–73 (D.D.C. 2019) (finding that FARA's "clear provisions" gave fair notice of legal duty to disclose which, when violated, formed basis of 18 U.S.C. § 1001 charge that was not unconstitutionally vague). The primary difference between FARA and § 219 is that FARA prohibits acting as a foreign agent *without registering*, *see* 22 U.S.C. § 618(a), whereas § 219, for specified individuals, prohibits acting as a foreign agent *at all*. In other words, while § 219 adds the element of being a public official (an element the defendants do not claim is vague), it otherwise prohibits a subset of the crime defined in 22 U.S.C. § 618(a) — a crime which

"is, and has been since its inception, straightforward and sufficiently precise." *Michel*, 2022 WL 4182342, at *5.

### b. The elements of § 219 are clearly defined

The defendants do not acknowledge or address these decisions upholding § 219 and FARA against vagueness challenges. Instead, they contend that the statutory text of two provisions of § 219 — one type of agency relationship covered by FARA and one category of activities requiring registration under FARA, which are incorporated by § 219's cross-reference to FARA — is not sufficiently clear.[1] Mot. at 10–12. Both provisions, however, provide adequate notice and ascertainable limits on what they cover, especially given the statute's intent element.

As a threshold matter, the fact that these provisions are defined by cross-reference to FARA, instead of in § 219 itself (*see* Mot. at 10), raises no vagueness problem. "[A] statute is not unconstitutionally vague simply because it references another statute." Tr. 48:1–4, ECF No. 344, *United States v. Menendez*, No. 23-cr-490 (S.D.N.Y. Apr. 11, 2024) (citing *United States v. Stokes*, 726 F.3d 880, 896 (7th Cir. 2013)); *see also Nautilus Ins. Co. v. Int'l House of Pancakes, Inc.*, 622 F. Supp. 2d 470, 476 (S.D. Tex. 2009) (Rosenthal, J.) (on vagueness challenge, courts look to "the

---

[1]    The defendants do not claim that § 219's other aspects are vague. Mot. at 10–12. They do not challenge the element of "being a public official," which is defined in § 219(c). They do not challenge § 219's Lobbying Disclosure Act prong, which prohibits a public official from acting as "a lobbyist required to register under the Lobbying Disclosure Act of 1995 in connection with the representation of a foreign entity." Within § 219's FARA prong, they do not challenge many of the definitions of FARA incorporated by cross-reference. They do not challenge FARA's definitions of "person" or "foreign principal." 22 U.S.C. § 611(a), (b). They do not challenge four types of agency relationships covered by FARA: agent, representative, employee, and servant. 22 U.S.C. § 611(c)(1). And they do not challenge three of the four categories of activities covered by FARA: perception management efforts, 22 U.S.C. § 611(c)(1)(ii), raising and disbursing funds, 22 U.S.C. § 611(c)(1)(iii), and lobbying U.S. officials, 22 U.S.C. § 611(c)(1)(iv). Because these parts of § 219 are either undisputedly constitutional or can be met by alternative means that are undisputedly constitutional, the statute is not "impermissibly vague in *all* of its applications" as required to prevail on a facial challenge. *Home Depot*, 773 F.2d at 627 (quoting *Hoffman Estates*, 455 U.S. at 494–95).

face of a statute *or ... other authority that has defined the terms*" (emphasis added)). FARA, in turn, clearly defines the core provisions of the statutory violation.

*Agency Relationship.* FARA — and by cross-reference, § 219 — applies to persons who have a specified set of agency relationships with a foreign principal: "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal." 22 U.S.C. § 611(c)(1). The defendants do not claim any vagueness in the first four of these relationships (agent, representative, employee, and servant), focusing only on the final clause. Mot. at 10–11.

Under ordinary principles of statutory interpretation, this clause covers relationships that — while not squarely within the four prior, more familiar ones — similarly exhibit a degree of authority by the foreign principal over a person. *See McDonnell v. United States*, 579 U.S. 550, 568–69 (2016) (under *noscitur a sociis* canon, "a word is known by the company it keeps" (citation omitted)); *Attorney General v. Irish N. Aid Cmte.*, 668 F.2d 159, 161 (2d Cir. 1982) (per curiam) (interpreting FARA's agency language to effectuate "the informative purposes of the Act"). The terms "direction or control" have commonsense meanings and have consistently been upheld in vagueness challenges to a similar statute.[2] The term "order" similarly denotes "command, direction, or instruction." Order, Black's Law Dictionary (12th ed. 2024). And while "request" extends beyond the common-law definition of agency, its neighboring terms make clear that a

---

[2]    Section 951 of Title 18 makes it a crime to "act … as an agent of a foreign government" — defined as one who "agrees to operate … subject to the *direction or control* of a foreign government" — without notifying the Attorney General. *See United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010) (§ 951 "plainly and concretely identifies the conduct which constitutes its violation, and the statute's language is clear and unambiguous," which "give[s] notice of what is prohibited and [is] readily understandable to a person of ordinary intelligence"); *accord United States v. Hung*, 629 F.2d 908, 920 (4th Cir. 1980); *United States v. Lindauer*, No. 03-cr-807, 2004 WL 2813168, at *4 (S.D.N.Y. Dec. 6, 2004).

request "is not to be understood in its most precatory sense" but instead "fall[s] somewhere between a command and a plea." *Irish N. Aid Cmte.*, 668 F.2d at 161. The ultimate question is whether it is "fair to draw the conclusion that an individual is not acting independently, is not simply stating his or her own views, but is acting as an agent or alter ego of the foreign principal."[3]

This kind of "law[] that call[s] for the application of a qualitative standard … to real-world conduct" poses no vagueness problem. *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson*, 576 U.S. at 604 (ellipsis in original)); *see also Nash v. United States*, 229 U.S. 373, 377 (1913) ("[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.").

Nor does a vagueness problem arise from the fact that FARA covers both direct and indirect agency relationships. Mot. at 10–11. The statute covers not only agents acting directly on behalf of a "foreign principal," but also agents acting on behalf of "a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal." 22 U.S.C. § 611(c)(1). This provision is a straightforward way to ensure that the statute is not easily subverted by inserting a middleman between the foreign principal and agent. As the *Menendez* court explained, "FARA allows for an intermediary to make the request." *United States v. Menendez*, 759 F. Supp. 3d 460, 501 (S.D.N.Y. 2024) (citing 22 U.S.C. § 611(c)(1)).

***Covered Activities.*** FARA — and by cross-reference, § 219 — applies to agents who engage in four specified categories of activities in the United States for the foreign principal. 22

---

[3]    *Inquiry Into the Matter of Billy Carter and Libya: Hearings Before the Subcomm. to Investigate the Activities of Individuals Representing the Interests of Foreign Governments of the S. Comm. on the Judiciary*, 96th Cong. 701 (1980) (statement of Philip B. Heymann, Assistant Att'y Gen. for the Criminal Division).

U.S.C. § 611(c)(1). The defendants do not claim any vagueness in the second, third, or fourth categories: participating in perception management efforts, 22 U.S.C. § 611(c)(1)(ii); raising and disbursing funds, 22 U.S.C. § 611(c)(1)(iii); and lobbying U.S. officials, 22 U.S.C. § 611(c)(1)(iv). They challenge only the first category: "engag[ing] … in political activities for or in the interests of" the foreign principal. 22 U.S.C. § 611(c)(1)(i).

FARA defines "political activities" to mean "any activity that the person engaging in believes will, or that the person intends to, in any way influence" the U.S. government or the American public on domestic or foreign policy. 22 U.S.C. § 611(*o*); *see also Michel*, 2022 WL 4182342, at *6 (FARA "clearly proscribe[s] political advocacy at the behest of a foreign official"). The references to the "belie[f]" and "inten[t]" of "*the* person engaging in" the activity, § 611(*o*) (emphasis added), indicates that the provision's applicability turns on whether the *defendant* had the requisite belief or intent. As the Supreme Court has explained, "[w]hether someone held a belief or had an intent is a true-or-false determination" that poses no constitutional vagueness problem. *United States v. Williams*, 553 U.S. 285, 306 (2008). While "it may be difficult in some cases to determine whether these clear requirements have been met," "courts and juries every day pass upon knowledge, belief and intent — the state of men's minds — having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." *Id.* (quoting *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 411 (1950)).

***Intent.*** Finally, any remaining fair notice concerns about these two provisions of § 219 are eliminated by the intent requirement that must be proved by the government and found by the jury. Section 219 requires a defendant to have "acted knowingly." Tr. 7124:8–14, ECF No. 583, *United States v. Menendez*, No. 23-cr-490 (S.D.N.Y. July 12, 2024). Likewise, conspiracy under 18 U.S.C. § 371 requires a defendant to have "kn[o]w[n] the unlawful purpose of the agreement and joined

in it willfully, that is, with the intent to further the unlawful purpose." Pattern Crim. Jury Instr. 5th Cir. 2.15A (2024). Thus, a defendant cannot be convicted of substantive or conspiracy violations of § 219 unless the jury finds beyond a reasonable doubt that he subjectively knew he was acting on behalf of the foreign principal and that he either subjectively believed his activities would or subjectively intended his activities to influence U.S. policy — eliminating any risk of mistaken or accidental violation. This "presence of culpable intent as a necessary element of the offense" resolves any vagueness concerns. *Boyce Motor Lines v. United States*, 342 U.S. 337, 342 (1952).

### c.    *The defendants' attempt to raise questions about hypothetical cases does not render § 219 unconstitutionally vague*

The defendants' argument that § 219 is vague rests primarily on questions about whether snippets of the statutory text, read in isolation, might apply to hypotheticals not implicated in this case. Mot. at 10–12. That argument conflicts with well-settled principles governing vagueness challenges. At the outset, on vagueness challenges, courts do not examine statutory text in a vacuum and instead consider "standard tools of statutory interpretation" like "statutory definitions, narrowing context, [and] settled legal meanings." *Bronstein*, 849 F.3d at 1106 (quoting *Williams*, 553 U.S. at 306). Under the ordinary principles of statutory interpretation discussed above, § 219 provides fair notice and ascertainable limits on what the statute covers.

More fundamentally, the defendants are wrong to suggest that difficult questions about a statute's outer bounds create a constitutional vagueness problem. As the Supreme Court has explained, "the mere fact that close cases can be envisioned" does not "render[] a statute vague" because "[c]lose cases can be imagined under virtually any statute." *Williams*, 553 U.S. at 305–06. "The problem" of close cases "is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Id.* at 306; *see also Peace Info. Ctr.*, 97 F. Supp. at 264 ("True, there may be borderline cases in which a person may have some doubt whether he

is within the terms of [FARA]. This circumstance is not sufficient, however, to vitiate the law. It occurs in numerous statutes."); *Johnson*, 576 U.S. at 601 (possibility of borderline cases does not make a statute vague because "even clear laws produce close cases"); *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963) ("[T]his Court [has] h[e]ld many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." (citing cases)); *Smith v. Goguen*, 415 U.S. 566, 577–78 (1974) (distinguishing between "statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain," which are constitutional, and statutes that "ha[ve] no core" of straightforward applications, which are not).

Even if they were relevant to the vagueness inquiry, the hypotheticals raised by the defendants do not present especially hard questions. Without more facts, none of their three hypotheticals would allow a reasonable jury to find a § 219 violation beyond a reasonable doubt. Mot. at 11–12. A congressman who receives a routine request about a passport from a constituent (*see* Mot. at 11–12) does not violate § 219 because a constituent is not a "*foreign* principal." *See* 22 U.S.C. § 611(b)(2) ("foreign principal" includes "a person outside of the United States, unless it is established that such person is an individual and a citizen of and domiciled within the United States"). A congressman who discusses congressional matters with a foreign official and decides he agrees with the official's views (*see* Mot. at 12) does not violate § 219 when he acts independently and not at the official's behest. *See Irish N. Aid Comm.*, 668 F.2d at 161 n.6 (discussing a similar hypothetical and explaining that "independent action that incidentally benefits a foreign government … does not fall within the purview of the Act"). And "routine contact with a foreign official" does not violate § 219 absent any covered activities on the foreign

16

official's behalf. In all events, even if § 219 were arguably vague as applied to any of the defendants' hypotheticals, that would not make the statute "impermissibly vague in *all* of its applications" as required to hold the statute unconstitutional on its face. *Home Depot*, 773 F.2d at 627 (quoting *Hoffman Estates*, 455 U.S. at 494–95). The motion to dismiss the § 219 counts on vagueness grounds should thus be denied.[4]

### 3.   The honest services statute is not unconstitutionally vague on its face

The defendants also assert a facial vagueness challenge to the honest services statute, 18 U.S.C. § 1346. Mot. at 12–13. That challenge is foreclosed by the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358 (2010).

In *Skilling*, the Supreme Court held that the honest services statute is not unconstitutionally vague. The Court explained that "the intangible right of honest services" in § 1346 is a term of art invoking and reinstating the doctrine that *McNally* had rejected. 561 U.S. at 404. "The definite article 'the' suggests that 'intangible right of honest services' had a specific meaning to Congress when it enacted the statute — Congress was recriminalizing … fraud schemes to deprive others of *that* 'intangible right of honest services,' which had been protected before *McNally*, not *all* intangible rights of honest services whatever they might be thought to be." *Id.* at 404–05 (citation omitted). The Court determined that, given the pre-*McNally* judicial decisions interpreting and applying the doctrine, there was "no doubt" the statute covered a "solid core" of "fraudulent

---

[4]      The defendants also cite a February 2025 internal Department of Justice guidance memorandum setting forth general charging policies, including concerning criminal FARA charges. Mot. at 10 & n.2. The memo states that it "is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States." *Memo. re General Policy Regarding Charging, Plea Negotiations, and Sentencing* at 2, https://www.justice.gov/ag/media/1388541/dl?inline. That memo does not require the dismissal of already-charged cases like this one. In all events, the "[G]overnment's charging decisions [generally] have no bearing on the vagueness analysis." *Michel*, 2022 WL 4182342, at *6 (citation omitted; brackets in original).

schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Id.* at 404, 407, 408. The Court thus held that, "[i]nterpreted to encompass only bribery and kickback schemes, § 1346 is not unconstitutionally vague." *Id.* at 412.

*Skilling* squarely forecloses the defendants' facial vagueness challenge here, as the Fifth Circuit has recognized. *See United States v. Clark*, No. 24-20271, 2025 WL 801358, at *2 (5th Cir. Mar. 13, 2025) ("Clark's lead argument is that … 18 U.S.C. § 1346 is unconstitutionally vague. But this argument is foreclosed by the Supreme Court's holding in *Skilling* …."). Yet notwithstanding *Skilling*, the defendants claim that "[t]he Supreme Court has repeatedly signaled" that the honest services statute is unconstitutionally vague. Mot. at 12. The only authority cited for this claim, however, is a two-Justice concurrence in *Percoco v. United States*, 598 U.S. 319 (2023), and the three-Justice concurrence in *Skilling* itself. Mot. at 12; *see also* Mot. at 6–9. Those concurring opinions are not the law. *See Clark*, 2025 WL 801358, at *2 (although "two justices have expressed doubt as to the constitutionality of honest services fraud[,] … the Court has not overruled *Skilling*"). The motion to dismiss the honest services fraud charges on facial vagueness grounds should thus be denied.

### B.    The Honest Services Fraud Counts Against Imelda Cuellar State Valid Offenses

Beyond the facial vagueness challenges, the motion also seeks dismissal of the honest services fraud charges against Mrs. Cuellar (but not Rep. Cuellar). Mot. at 13. Mrs. Cuellar argues that, as a private citizen, she had no fiduciary duty to the public, which she claims is required by the honest services statute following *Percoco v. United States*, 598 U.S. 319 (2023). Mot. at 13.

At the outset, although Mrs. Cuellar labels this argument an "as applied" "vague[ness]" challenge to the honest services statute, Mot. at 13, the substance of her argument is that the statute, as interpreted in *Percoco*, does not cover her conduct. In other words, her argument is not that the

statute is vague as applied to her, but that the honest services fraud counts against her fail to state an offense.[5] On "a motion to dismiss an indictment for failure to state an offense," the Court must "take the allegations of the indictment as true" and "determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (citation omitted).

Mrs. Cuellar's argument misconstrues both *Percoco* and the theory under which she is charged in Counts 3 and 7. *Percoco* addressed when a private citizen can be convicted of honest services fraud conspiracy "based on *his own* duty of honest services to the public." 598 U.S. at 324 (emphasis added). The defendant in *Percoco* was charged with such a conspiracy during a period when he was not a government employee. *Id.* at 324. The Supreme Court explained that not all private citizens have a duty to the public under the honest services statute.[6] *Id.* at 330.

Here, by contrast, Mrs. Cuellar is charged in Counts 3 and 7 under a different theory than *Percoco*. She is charged with conspiring to defraud the public not of its right to *her own* honest services, but of its "right to the honest services *of HENRY CUELLAR*." Indictment ¶¶ 99, 117. The

---

[5]     If Mrs. Cuellar's argument were construed as an as-applied vagueness challenge, it would fail. Constitutional vagueness concerns "rest on … lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). As *Skilling* explained, the honest services statute has "dominantly and consistently" been applied to the "core category" of "bribery and kickback schemes." 561 U.S. at 405. Given this consensus about the core of the statute, no reasonable person could claim not to know that the statute might cover Mrs. Cuellar's alleged conduct in the two bribery schemes detailed in the indictment. *See id.* at 413 ("A criminal defendant who participated in a bribery or kickback scheme … cannot tenably complain about prosecution under § 1346 on vagueness grounds.").

[6]     While not necessary to resolve this motion given the different theory charged in Counts 3 and 7, Mrs. Cuellar misconstrues *Percoco*'s holding. Mot. at 13. Contrary to her contention, *Percoco* did not say that "a private person outside public employment can *only* hold a fiduciary duty to the public when evidence exists of a formal 'agreement[] that make[s] them actual agents of the government.'" Mot. at 13 (emphasis added); *see also* Mot. at 9. While *Percoco* cited agency agreements as *one example* of when a private citizen has a fiduciary duty to the public under the honest services statute, the Court did not purport to decide whether such agreements are *necessary* to create a duty on the part of a private citizen. *See* 598 U.S. at 329–30.

indictment alleges — and the defendants do not and could not dispute — that, as a Member of Congress, Rep. Cuellar "owes a fiduciary duty to the United States and to the residents of Texas's 28th Congressional District to provide honest services and to perform the duties and responsibilities of his office free from corrupt influence." Indictment ¶ 4.

In short, *Percoco* addressed the scope of a *principal*'s liability under the honest services statute but said nothing about the scope of a *co-conspirator*'s liability — the theory with which Mrs. Cuellar is charged in Counts 3 and 7. As the Fifth Circuit explained in rejecting the same argument she makes here:

> AC maintains that … "the government failed to show that AC owed a fiduciary duty to the City of Weslaco that would make him liable for honest-services fraud [because] AC was at no point a public official for the City of Weslaco." … [T]his [argument] is … not meritorious. … The decision in *Percoco v. United States* is of no import because the theory of liability in that case was different. There, the lower courts held a private individual liable based on his own "duty to provide honest services to the public during the time when he was not serving as a public official." But here, the liability is not based on AC's duties. Instead, the liability is grounded in JC's and Tafolla's [i.e., city commissioners'] duties to the public.

*United States v. Quintanilla*, 114 F.4th 453, 467 & n.14 (5th Cir. 2024) (citations omitted). Counts 3 and 7 thus state valid offenses against Mrs. Cuellar and are not subject to dismissal.

### C. The Multiplicity Challenges Should Be Rejected

Finally, the defendants contend that the honest services fraud counts (Counts 3 and 7) and the § 219 counts (Counts 4 and 8) should be dismissed as multiplicitous of the bribery counts (Counts 2 and 6). Mot. at 14–15. The rule against multiplicity, derived from the Fifth Amendment's Double Jeopardy Clause, "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Because no constitutional violation occurs unless and until a multiplicitous "punishment[]" is imposed, the defendants' motion is premature and should be denied without prejudice to renewal after trial. In

20

any event, the honest services fraud counts, § 219 counts, and bribery counts each have different elements and thus are not multiplicitous.

### 1.    The pretrial multiplicity challenges are premature

"While the Double Jeopardy Clause may protect a defendant against cumulative *punishments* for convictions on the same offense, the Clause does not prohibit the [government] from *prosecuting* [him] for such multiple offenses in a single prosecution." *Johnson*, 467 U.S. at 500 (emphasis added). A defendant "has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution." *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *accord Ball v. United States*, 470 U.S. 856, 859 (1985) ("[i]t is clear that a [defendant] may be prosecuted simultaneously" for multiplicitous offenses).

Applying that principle, district courts in the Fifth Circuit have held that pretrial multiplicity challenges to individual counts in an indictment are generally premature. *E.g.*, *United States v. Dominguez*, No. 17-cr-651, 2018 WL 2057442, at *3–5 (S.D. Tex. May 3, 2018) ("the multiplicitous counts issue is not currently ripe" because "double jeopardy concerns implicated by multiplicitous counts do not arise unless a defendant is actually convicted of, rather than charged with, multiplicitous counts") (citation omitted); *United States v. Martinez*, 599 F. Supp. 2d 784, 793–94 (W.D. Tex. 2009) ("the possibility that the defendant will receive more than one sentence for a single offense" is "inchoate at the time of charging and does not become full-fledged until after sentencing on purportedly multiplicitous counts," and thus "an indictment charging multiplicitous counts does not require dismissal"); *United States v. May*, No. 21-cr-14, 2021 WL 3362951, at *3 (E.D. La. Aug. 3, 2021) ("unless and until Mr. May is actually convicted on multiplicitous counts and imminently faces multiple punishments for what was shown to be the same criminal episode, he is without a remedy"); *accord* Tr. 60:18–62:3, ECF No. 344, *United*

*States v. Menendez*, No. 23-cr-490 (S.D.N.Y. Apr. 11, 2024) (denying pretrial multiplicity challenge to § 219 charges as premature).

Denying the defendants' pretrial multiplicity challenge without prejudice would conserve judicial resources and avoid an advisory opinion because the challenge could become moot if the jury were to acquit on some or all of the allegedly multiplicitous counts. *See United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994) ("[t]he danger of a multiplicitous indictment — i.e., that the defendant will receive more than one sentence for a single offense — was eliminated by the jury in this case," which acquitted on the multiplicitous count); *United States v. Swaim*, 757 F.2d 1530, 1537 (5th Cir. 1985) (multiplicity challenge was "rendered moot" by acquittal on multiplicitous count). And if the defendants are convicted of allegedly multiplicitous counts, they could renew their challenge at that time, allowing the Court to determine whether the counts are in fact multiplicitous after hearing all the evidence at trial. At this stage, however, the challenge is premature and should be denied without prejudice.[7]

### 2. The honest services fraud counts and § 219 counts are not multiplicitous of the bribery counts

Even if it were ripe, the defendants' multiplicity challenge to the honest services fraud counts and § 219 counts would fail. "The test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not." *Nguyen*, 28 F.3d at 482. This test "focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual

---

[7]    Although some courts have identified an exception to this general rule against pretrial multiplicity challenges when multiplicitous counts would unduly prejudice a defendant in the jury's eyes, "the burden of demonstrating prejudice is a difficult one." *Martinez*, 599 F. Supp. 2d at 794 (quoting *United States v. Pacheco*, 489 F.2d 554, 560 (5th Cir. 1974)). The defendants here have not argued, much less shown, that they would be prejudiced in this manner.

evidence to be presented at trial." *Illinois v. Vitale*, 447 U.S. 410, 416 (1980); *accord Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975) ("[i]f each requires proof of a fact that the other does not, the … test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes"). Under this standard, the honest services wire fraud counts, the § 219 counts, and the bribery counts are separate offenses.

Counts 3 and 7 allege (for the Azerbaijan and Foreign Bank-1 Schemes, respectively) that the defendants conspired to commit honest services wire fraud in violation of 18 U.S.C. § 1349. Indictment ¶¶ 98–100, 116–18. Conviction under that statute requires, among other things, an agreement to devise a scheme to deprive the public of its intangible right to Rep. Cuellar's honest services, employ false material pretenses, and transmit a wire communication in furtherance of the scheme. Pattern Crim. Jury Instr. 5th Cir. 2.57 (2024).

None of those facts are required for conviction on Counts 2 and 6, which allege that Rep. Cuellar, aided and abetted by Mrs. Cuellar, accepted bribes in violation of 18 U.S.C. § 201(b). Indictment ¶¶ 96–97, 114–115. That statute requires the receipt of something of value, a promise to be influenced in the performance of an official act, and a quid pro quo connection between the two. Pattern Crim. Jury Instr. 5th Cir. 2.09B. Those facts, by contrast, are not required by the honest services wire fraud statute. *See United States v. Langford*, No. 08-cr-245, 2009 WL 10671369, at *5 (N.D. Ala. July 2, 2009) ("Separate charges of wire fraud and mail fraud are not multiplicitous as to each other nor for that matter to the bribery charges."). Because a conviction on the honest services wire fraud counts requires proof of additional facts not required for a conviction on the bribery counts, they are separate offenses and not multiplicitous.

The defendants contend that bribery is a lesser included offense of honest services fraud because *Skilling* stated that "bribes … constitute honest-services fraud." Mot. at 14 (quoting 561

23

U.S. at 405). But while *Skilling* restricted honest services fraud to "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived," 561 U.S. at 404, "*Skilling* did not invalidate the definition limned in 18 U.S.C. § 1346," *United States v. George*, 676 F.3d 249, 257 (1st Cir. 2012). In fact, notwithstanding its limiting construction of the honest services statute, *Skilling* recognized that the statute would continue to cover conduct beyond the bribery statute, indicating that the two statutes define separate offenses. *See* 531 U.S. at 413 n.45 ("Overlap with other federal statutes does not render § 1346 superfluous. The principal federal bribery statute, § 201, for example, generally applies only to federal public officials, so § 1346's application to state and local corruption and to private-sector fraud reaches misconduct that might otherwise go unpunished."); *see also Percoco*, 598 U.S. at 329–30 (rejecting argument that "a private citizen cannot be convicted of depriving the public of honest services").

The § 219 counts are likewise not multiplicitous of the bribery counts. Counts 4 and 8 allege that Rep. Cuellar, aided and abetted by Mrs. Cuellar, was a public official who acted as an agent of a foreign principal in violation of § 219. Indictment ¶¶ 101–02, 119–20. That statute requires an agreement that Rep. Cuellar act as an agent of a foreign principal, a fact not required by the bribery statute. Tr. 7124:8–14, ECF No. 583, *United States v. Menendez*, No. 23-cr-490 (S.D.N.Y. July 12, 2024). By contrast, § 219 does not require the receipt of something of value or a quid pro quo, unlike the bribery statute. The § 219 counts are thus separate offenses from the bribery counts.

The defendants contend that the court in *United States v. Menendez* found that § 219 counts were multiplicitous of bribery counts. Mot. at 15 (citing 759 F. Supp. 3d 460, 533 (S.D.N.Y. 2024)). But the offenses that the *Menendez* court found were multiplicitous were *conspiracy* counts —

24

conspiracy to bribe Senator Menendez and conspiracy to have Senator Menendez act as an agent of a foreign principal. 759 F. Supp. 3d at 532–34. As the court explained, multiplicity challenges to conspiracy counts are subject to a different test. *Id.* at 533 ("If the two offenses at issue are both conspiracies charged under the same statute, then the multiplicity inquiry turns on whether the two conspiracies are the same 'in fact,' meaning they involve the same agreement." (citation omitted)). Unlike in *Menendez*, the government here has charged the bribery conspiracies and the § 219 conspiracies in the same counts — Count 1 (for the Azerbaijan Scheme) and Count 5 (for the Foreign Bank-1 Scheme) — avoiding any multiplicity problem even under the reasoning in *Menendez*. Indictment ¶¶ 86–95, 103–13.

Because each offense contains at least one element not contained in the other offenses, the charges are not multiplicitous.

## IV.    Conclusion

The motion to dismiss should be denied.

Dated: June 9, 2025                                   Respectfully submitted,

EDWARD P. SULLIVAN                       JENNIFER KENNEDY GELLIE
Acting Chief                                           Chief
Public Integrity Section                          Counterintelligence and Export Control Section
Criminal Division                                   National Security Division
U.S. Department of Justice                      U.S. Department of Justice

By: */s/ Celia Choy*                                 By: */s/ Garrett Coyle*
Rosaleen O'Gara                                     Garrett Coyle
Celia Choy                                             Attorney for the United States
Aaron L. Jennen
Attorneys for the United States

25

**Statutory Appendix**

**18 U.S.C. § 219 – Officers and employees acting as agents of foreign principals**

(a) Whoever, being a public official, is or acts as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938 or a lobbyist required to register under the Lobbying Disclosure Act of 1995 in connection with the representation of a foreign entity, as defined in section 3(6) of that Act shall be fined under this title or imprisoned for not more than two years, or both.

…

(c) For the purpose of this section "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after he has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency, or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government.

**18 U.S.C. § 1343 – Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. …

**18 U.S.C. § 1346 – Definition of "scheme or artifice to defraud"**

For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

**18 U.S.C. § 1349 – Attempt and conspiracy**

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**22 U.S.C. § 611 – Definitions [Foreign Agents Registration Act of 1938]**

As used in and for the purposes of this subchapter—

(a) The term "person" includes an individual, partnership, association, corporation, organization, or any other combination of individuals;

(b) The term "foreign principal" includes—

(1) a government of a foreign country and a foreign political party;

(2) a person outside of the United States, unless it is established that such person is an individual and a citizen of and domiciled within the United States, or that such person is not an individual and is organized under or created by the laws of the United States or of any State or other place subject to the jurisdiction of the United States and has its principal place of business within the United States; and

(3) a partnership, association, corporation, organization, or other combination of persons organized under the laws of or having its principal place of business in a foreign country.

(c) Ex[c]e[p]t as provided in subsection (d) of this section, the term "agent of a foreign principal" means—

(1) any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—

(i) engages within the United States in political activities for or in the interests of such foreign principal;

(ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;

(iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or

(iv) within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States; and

(2) any person who agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to contractual relationship, an agent of a foreign principal as defined in clause (1) of this subsection.

…

(g) The term "public-relations counsel" includes any person who engages directly or indirectly in informing, advising, or in any way representing a principal in any

2a

public relations matter pertaining to political or public interests, policies, or relations of such principal;

(h) The term "publicity agent" includes any person who engages directly or indirectly in the publication or dissemination of oral, visual, graphic, written, or pictorial information or matter of any kind, including publication by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or otherwise;

(*i*) The term "information-service employee" includes any person who is engaged in furnishing, disseminating, or publishing accounts, descriptions, information, or data with respect to the political, industrial, employment, economic, social, cultural, or other benefits, advantages, facts, or conditions of any country other than the United States or of any government of a foreign country or of a foreign political party or of a partnership, association, corporation, organization, or other combination of individuals organized under the laws of, or having its principal place of business in, a foreign country;

…

(*o*) The term "political activities" means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party;

(p) The term "political consultant" means any person who engages in informing or advising any other person with reference to the domestic or foreign policies of the United States or the political or public interest, policies, or relations of a foreign country or of a foreign political party.

## 22 U.S.C. § 612 – Registration statement [Foreign Agents Registration Act of 1938]

(a) Filing; contents

… Except as hereinafter provided, every person who becomes an agent of a foreign principal shall, within ten days thereafter, file with the Attorney General, in duplicate, a registration statement, under oath on a form prescribed by the Attorney General. …

3a

**CERTIFICATE OF SERVICE**

I certify that I filed this document via the CM/ECF system on June 9, 2025, which caused the document to be electronically served on all counsel of record.

*/s/ Garrett Coyle*
Garrett Coyle