# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **No. 4:24-cr-224** |
| **v.** | § | |
| | § | |
| **ENRIQUE ROBERTO "HENRY"** | § | |
| **CUELLAR,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

# GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT ENRIQUE "HENRY" CUELLAR'S MOTION TO DISMISS INDICTMENT FOR SPEECH OR DEBATE CLAUSE VIOLATIONS

# TABLE OF CONTENTS

I.      Introduction ................................................................................................ 1

II.     Background ................................................................................................ 1

III.    Applicable Law .......................................................................................... 3

IV.     Discussion .................................................................................................. 7

        A.      The Indictment Should Not Be Dismissed Because None of the Counts Depend on
                Proof of Any Legislative Act ........................................................... 7

                1.      The Speech or Debate Clause Requires Dismissal of a Count Only If It
                        Depends on Proof of a Legislative Act ................................... 8

                2.      None of the Counts of the Indictment Depend on Proof of a Legislative Act
                        ............................................................................................... 12

        B.      The Indictment Does Not Allege Performance of Any Legislative Act ................. 17

                1.      The Indictment Alleges Only Non-Legislative Communications between
                        Rep. Cuellar and his Bribe Payors ......................................... 17

                2.      Rep. Cuellar's Communications with his Bribe Payors Are Not Themselves
                        Legislative Acts ...................................................................... 21

V.      Conclusion ............................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

*Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301 (10th Cir. 2004)....... 22, 23

*Doe v. McMillan*, 412 U.S. 306 (1973)............................................................ 4, 5, 6, 19

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975).................................... 3, 4, 6

*Forrester v. White*, 484 U.S. 219 (1988) ................................................................. 5

*Gravel v. United States*, 408 U.S. 606 (1972) ................................................. passim

*Helstoski v. Meanor*, 442 U.S. 500 (1979)............................................................ 11

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) .................................................... 6, 19

*In re Grand Jury Investigation*, 587 F.2d 589 (3d Cir. 1978) ...................................... 4

*In re Sealed Case*, 80 F.4th 355 (D.C. Cir. 2023) ............................................... 22, 23

*Kilbourn v. Thompson*, 103 U.S. 168 (1880) .......................................................... 4, 5

*Powell v. McCormack*, 395 U.S. 486 (1969) ............................................................ 5

*Skilling v. United States*, 561 U.S. 358 (2010).......................................................... 13

*Tenney v. Brandhove*, 341 U.S. 367 (1951)............................................................... 3

*United States v. Brewster*, 408 U.S. 501 (1972)............................................... passim

*United States v. Bustamante*, 45 F.3d 933 (5th Cir. 1995) ........................................ 13

*United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973)......................................... 10, 16

*United States v. Ganji*, 880 F.3d 760 (5th Cir. 2018).............................................. 14

*United States v. Green*, 47 F.4th 279 (5th Cir. 2022) ............................................... 15

*United States v. Hamilton*, 37 F.4th 246 (5th Cir. 2022).......................................... 14

*United States v. Helstoski*, 442 U.S. 477 (1979)................................................ passim

*United States v. Helstoski*, 576 F.2d 511 (3d Cir. 1978) ...................................... 10, 11

*United States v. Helstoski*, 635 F.2d 200 (3d Cir. 1980) ............................................ 11

*United States v. Jimenez-Esparza*, 5 F.3d 1495 (5th Cir. 1993) (unpublished) .......................... 15

*United States v. Johnson*, 383 U.S. 169 (1966) ...................................................... 5, 6, 8, 10

*United States v. McDade*, 28 F.3d 283 (3d Cir. 1994) ............................... 9, 16, 17, 20

*United States v. Menendez*, 759 F. Supp. 3d 460 (S.D.N.Y. 2024) ............................... 14

*United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016) ............................................. 23

*United States v. Murphy*, 642 F.2d 699 (2d Cir. 1980) ................................................. 9

*United States v. Myers*, 635 F.2d 932 (2d Cir. 1980) ................................................. 17

*United States v. Myers*, 692 F.2d 823 (2d Cir. 1982) ................................................. 24

*United States v. Nagin*, 810 F.3d 348 (5th Cir. 2016) ............................................... 13

*United States v. Renzi*, 651 F.3d 1012 (9th Cir. 2011) ......................................... 22, 23

*United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir.), *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995) ................................................................. 4

*United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992) ........................................ 11

*United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013) ............................................... 15

**Statutes**

18 U.S.C. § 201(b) ........................................................................................... passim

18 U.S.C. § 201(c) ................................................................................................... 12

18 U.S.C. § 219 ................................................................................................... 1, 14

18 U.S.C. § 371 ................................................................................................... 1, 14

18 U.S.C. § 1343 ..................................................................................................... 15

18 U.S.C. § 1346 ..................................................................................................... 15

18 U.S.C. § 1349 ................................................................................................... 1, 13

18 U.S.C. § 1956(a)(1)(B)(i) ................................................................................. 1, 15

18 U.S.C. § 1956(h) ............................................................................................. 1, 15

**Other Authorities**

Pattern Crim. Jury Instr. 5th Cir. 2.76A (2024) ....................................................... 15

U.S. Const. art. I, § 6, cl. 1 ......................................................................................... 3

## I. Introduction

Defendant Enrique "Henry" Cuellar moved to dismiss the Indictment based on alleged violations of the Speech or Debate Clause of the United States Constitution. *See* ECF No. 87 ("Mot."). That Clause immunizes Members of Congress from prosecution for "legislative acts" done in the course of their official duties. Rep. Cuellar's Motion should be denied for two reasons. First, none of the Counts of the Indictment require proof of legislative acts to make out a *prima facie* case. Second, none of the allegations that Rep. Cuellar challenges in his motion are legislative acts.

## II. Background

On April 30, 2024, Rep. Cuellar was indicted alongside his wife, Imelda Cuellar, on charges of conspiracy in violation of 18 U.S.C. § 371, bribery in violation of 18 U.S.C. § 201(b), honest-services fraud conspiracy in violation of 18 U.S.C. § 1349, being a public official acting as an agent of a foreign principal in violation of 18 U.S.C. § 219, money laundering conspiracy in violation of 18 U.S.C. § 1956(h), and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The Indictment alleges that Rep. Cuellar, the United States Congressman representing Texas's 28th Congressional District, orchestrated parallel bribery and unlawful foreign influence schemes involving two foreign entities: Foreign Oil Company-1, an oil company wholly owned and controlled by the Government of Azerbaijan, and Foreign Bank-1, a bank headquartered in Mexico City, Mexico. *See* Indictment, ECF No. 1 ¶ 1.

The Indictment alleges that Rep. Cuellar negotiated a series of sham contracts with Foreign Oil Company-1 and Foreign Bank-1, which purported to be for Mrs. Cuellar to perform strategic and business consulting services. Pursuant to those contracts, Rep. Cuellar and Mrs. Cuellar accepted at least $598,000 in bribes, which were funneled through a variety of middlemen and front companies to shell companies owned by Mrs. Cuellar. *Id.* ¶ 1. Mrs. Cuellar performed little

or no legitimate work under the sham contracts. *Id.* Instead, in exchange for the bribes, Rep. Cuellar promised to use his official position to benefit the Government of Azerbaijan and Foreign Bank-1. *Id.*

With respect to Azerbaijan, the Indictment alleges that Rep. Cuellar "promised to influence U.S. foreign policy in favor of Azerbaijan." *Id.* ¶ 2. Specifically, he "agreed . . . to influence a series of legislative measures relating to Azerbaijan's conflict with neighboring Armenia; to insert language favored by Azerbaijan into legislation and committee reports governing certain security and economic aid programs; to deliver a pro-Azerbaijan speech on the floor of the House of Representatives; and to consult with representatives of Azerbaijan regarding their efforts to lobby the United States government." *Id.* Paragraph 45 alleges a series of communications involving Rep. Cuellar, the Azerbaijani Ambassador to the United States, and Individual-1, a Turkish-American businessman who brokered the corrupt agreement between Rep. Cuellar and Foreign Oil Company-1. *Id.* ¶ 45. In the communications, Rep. Cuellar promised to perform a series of official acts, acts in violation of official duty, and acts as an agent of Azerbaijan, including promising to insert language into a bill and committee report, *id.* ¶ 45(a), (d), (g); promising to oppose legislation that Azerbaijan perceived as against its interests and to support legislation favorable to Azerbaijan, *id.* ¶ 45(b), (g), (j)–(m); promising to deliver a pro-Azerbaijan speech on the floor of the House of Representatives, *id.* ¶ 45(d); advising and pressuring a White House official regarding policy towards Azerbaijan, *id.* ¶ 45(f); advising and pressuring State Department officials to renew the U.S. passport of the Azerbaijani Ambassador's daughter, *id.* ¶ 45(i); and advising the Azerbaijani Ambassador about how to influence U.S. policy, *id.* ¶ 45(c).

With respect to Foreign Bank-1, the Indictment similarly alleges that Rep. Cuellar entered a corrupt agreement to accept bribes in exchange for his "promise[] to influence federal regulation

of the financial industry to benefit Foreign Bank-1 and its affiliates." *Id.* ¶ 3. The Indictment details how, in exchange for the payments, Rep. Cuellar "agreed to perform official acts and acts in violation of his official duties benefitting Foreign Bank-1 and to be and act as an agent of Foreign Bank-1." *Id.* ¶ 83. It alleges a series of communications between Rep. Cuellar and two executives at Foreign Bank-1 in which Rep. Cuellar promised to use his official position to serve the bank's interests. One of those executives, Executive-1, was Rep. Cuellar's primary point of contact at Foreign Bank-1 for the negotiation of the sham contract. *Id.* ¶¶ 57–58, 63–67. In those communications, Rep. Cuellar discussed his efforts to influence Executive Branch officials to support the bank's regulatory agenda, *id.* ¶ 83(a), (e); sought direction from his foreign principals about positions they want him to take on pending legislation, *id.* ¶ 83(d); and promised to add language to a committee report and to bills, and to support legislation favored by the bank, *id.* ¶ 83(b), (c), (f).

## III. Applicable Law

The Speech or Debate Clause of the United States Constitution provides that "for any Speech or Debate in either House," Senators and Representatives "shall not be questioned in any other Place." U.S. CONST. art. I, § 6, cl. 1. The Clause's purpose is to "insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). Its protections "were not written into the Constitution simply for the personal or private benefit of Members of Congress," but rather "to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972); *see also Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (noting that the Speech or Debate Clause protects legislators "not for their private indulgence but for the public good"). To that end, the Clause "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those

acts." *Brewster*, 408 U.S. at 525; *see also Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880) (holding that the Clause applies to "things generally done in a session of the House by one of its members in relation to the business before it"). A Member asserting the Speech or Debate Clause bears the burden to establish, by a preponderance of the evidence, that the Clause attaches to the conduct in question. *See In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978); *United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir.), *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995).

Where it applies, the Clause provides Members of Congress and their aides with three forms of protection. First, and most relevant here, it immunizes Members and their aides from civil and criminal liability arising from "legislative acts or the motivation for actual performance of legislative acts." *Brewster*, 408 U.S. at 509. Second, it prohibits the introduction of evidence of legislative acts against a Member in a civil lawsuit or criminal prosecution. *See United States v. Helstoski*, 442 U.S. 477, 489 (1979). And third, the Clause shields Members and their aides from being compelled to testify about their legislative acts. *See Gravel v. United States*, 408 U.S. 606, 616 (1972). These protections, when they attach, are "absolute." *Eastland*, 421 U.S. at 501. Members and their aides "are immune from liability for their actions within the legislative sphere, even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973) (internal citation and quotation marks omitted).

Precisely because the Clause's protections are so powerful, they are subject to "finite limits." *Id.* at 317. Recognizing the "abuses that could flow from too sweeping safeguards," the Supreme Court has repeatedly refused to apply the Clause "beyond what is necessary to preserve the integrity of the legislative process." *Brewster*, 408 U.S. at 517. It has "been careful not to

extend the scope of the protection further than its purposes require," *Forrester v. White*, 484 U.S. 219, 224 (1988), and thus has declined to extend its protections "to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings," *Gravel*, 408 U.S. at 620. For that reason, the Clause protects only "legislative acts," defined as those "generally done in Congress in relation to the business before it." *Brewster*, 408 U.S. at 512.

As the Supreme Court has emphasized, "[l]egislative acts are not all-encompassing." *Gravel*, 408 U.S. at 625. "The Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions," and does not apply to "activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Brewster*, 408 U.S. at 528. To hold otherwise would stretch the Clause "further than its purposes require," *Forrester*, 484 U.S. at 224, as "there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process." *Brewster*, 408 U.S. at 516. Ultimately, the test is whether a given act is "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625.

Applying these principles, the Supreme Court has held that the Clause shields "purely legislative activities," *Brewster*, 408 U.S. at 512, such as making speeches on the House or Senate floor, *see United States v. Johnson*, 383 U.S. 169, 184–85 (1966); introducing and voting on bills and resolutions, *see Kilbourn*, 103 U.S. at 203–04; holding committee hearings and preparing committee reports, *see Gravel*, 408 U.S. at 624; *McMillan*, 412 U.S. at 313; and conducting official

investigations, *see Eastland*, 421 U.S. at 504–05. Conversely, the Clause does not protect conduct that, even if performed by a Member in the course of his official duties, is not "essential to legislating." *Gravel*, 408 U.S. at 621. Such unprotected conduct includes performing constituent services, *Brewster*, 408 U.S. at 512; disseminating information outside Congress, *see McMillan*, 412 U.S. at 314–15; *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979); arranging for private republication of materials from the congressional record, *see Gravel*, 408 U.S. at 625–626; and attempting to influence executive agencies, *see Hutchinson*, 443 U.S. at 121 n.10; *Johnson,* 383 U.S. at 172.

Of particular relevance here, the Speech or Debate Clause does not bar a criminal prosecution that "does not draw into question the legislative acts of the defendant member of Congress or his motives for performing them." *Johnson*, 383 U.S. at 185. It "does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts." *Gravel*, 408 U.S. at 626. And it does not prohibit prosecution of a Member of Congress for bribery, as "[t]aking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act." *Brewster*, 408 U.S. at 526. Where a Member is alleged to have accepted a bribe in exchange for the promise of legislative action, "no inquiry into legislative acts or motivation for legislative acts is necessary for the Government to make out a prima facie case." *Id.* at 525. That is because the "illegal conduct is taking or agreeing to take money for a *promise* to act in a certain way," not "performance of the illicit compact." *Id.* at 526 (emphasis added). "Promises by a Member to perform an act in the future are not legislative acts." *Helstoski*, 442 U.S. at 489. Rather, the Clause's "protection extends only to an act that has already been performed." *Id.* at 490.

In drawing these distinctions, the Supreme Court has been mindful of the Speech or Debate Clause's purpose: to "preserve the independence and thereby the integrity of the legislative process." *Brewster*, 408 U.S. at 524. "[F]inancial abuses by way of bribes," it observed, "would gravely undermine legislative integrity and defeat the right of the public to honest representation." *Id.* at 524–25. Thus, an overbroad interpretation of the Speech or Debate Clause that would "[d]epriv[e] the Executive of the power to investigate and prosecute and the Judiciary of the power to punish bribery of Members of Congress is unlikely to enhance legislative independence" and should be rejected. *Id.* at 525. More fundamentally, the Framers did not intend the Clause to transform Members of Congress into "super-citizens, immune from criminal responsibility." *Id.* at 516. To the contrary, in our democratic form of government, "legislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons." *Gravel*, 408 U.S. at 615 (citing T. Jefferson, Manual of Parliamentary Practice, S.Doc. No. 92–1, p. 437 (1971)).

## IV.    Discussion

### A.    The Indictment Should Not Be Dismissed Because None of the Counts Depend on Proof of Any Legislative Act

Dismissal of a Count of the Indictment is required only if proof of a legislative act is necessary for the government to make out a *prima facie* violation of the charged offense. Here, Rep. Cuellar contends that certain allegations in the Indictment constitute legislative acts. Mot. 2, n.1. As explained below (*see* Section IV.B, *infra*), the challenged paragraphs do not allege that Rep. Cuellar performed any legislative acts — only that he promised or agreed to perform legislative acts. Such a promise or agreement is not itself a legislative act protected by the Speech or Debate Clause. But the Court need not reach that issue because Rep. Cuellar does not even

attempt to demonstrate that any Count of the Indictment would be legally insufficient if the challenged allegations were stricken.

Nor could he. The bribery, unlawful foreign influence, money laundering, and conspiracy charges in the Indictment do not require proof that Rep. Cuellar carried out his end of the corrupt bargain by performing a legislative act. Moreover, Rep. Cuellar claims that only a subset of the official acts, acts in violation of official duty, and agency activities alleged in Paragraphs 45 and 83 of the Indictment are protected legislative acts. He does not attempt to show that the government could not make out a *prima facie* case based on the unchallenged allegations alone. Thus, Rep. Cuellar fails to show that any Count of the Indictment depends on proof of a completed legislative act. That failure alone is a sufficient basis to deny the motion to dismiss.

1. *The Speech or Debate Clause Requires Dismissal of a Count Only If It Depends on Proof of a Legislative Act*

Under Supreme Court case law, the Speech or Debate Clause permits a prosecution of a Member of Congress so long as it does not "draw into question the legislative acts of the defendant member of Congress or his motives for performing them." *Johnson*, 383 U.S. at 185. In *Johnson*, the Court vacated a congressman's conspiracy conviction because the government introduced evidence at trial that he delivered a speech on the floor of the House of Representatives, a core legislative act. *See id.* at 184–85. The delivery of that speech was specifically alleged in the indictment. *Id.* Nonetheless, rather than dismiss the conspiracy count, the Court remanded for a new trial with "all references to this aspect of the conspiracy eliminated." *Id.* at 185. Thus, *Johnson* establishes that the inclusion of legislative-acts allegations does not require dismissal of a Count, provided the government can prove its case without the offending material.

The Court confirmed that conclusion in *Brewster*, which reversed the dismissal of a bribery indictment against a United States Senator. *See* 408 U.S. at 504, 529–30. In reinstating the

8

indictment, the Supreme Court looked not at the factual allegations in the indictment, but at the theory of liability and the elements of the offenses charged. "The question," it stated, "is whether it is necessary to inquire into how [the defendant] spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of this statute." *Id.* at 526. Because proof of legislative acts was not "necessary for the Government to make out a prima facie case," it held, the indictment did not violate the Speech or Debate Clause and the case should proceed to trial. *Id.* at 525.

The dissent argued that the indictment should be dismissed because it contemplated introduction of legislative-acts evidence. *Id.* at 554 (White, J., dissenting). The majority rejected that reasoning, holding that because the government could prove the charges without introducing such evidence — even though that would make its case more difficult — the case should proceed to trial. *Id.* at 527–28. Thus, under *Johnson* and *Brewster*, neither the inclusion of legislative-acts allegations in the indictment nor the possibility that the indictment contemplates introduction of such evidence at trial requires dismissal, provided that such evidence is not "necessary" to prove the charges.

The courts of appeals have consistently followed these principles. For example, in *United States v. McDade*, 28 F.3d 283 (3d Cir. 1994) (Alito, J.), the defendant claimed that two of the overt acts alleged in the indictment were protected legislative acts. *Id.* at 300. The Third Circuit declined to decide that question, explaining that, "[e]ven if we were to hold . . . that both of the overt acts in question are invalid, no charge in the indictment would have to be dismissed," as the indictment alleged numerous other overt acts that the defendant did not claim were protected by the Speech or Debate Clause. *Id.* Likewise, in *United States v. Murphy*, 642 F.2d 699 (2d Cir. 1980), the Second Circuit affirmed the denial of the defendant's motion to dismiss, holding that

even if certain acts alleged in the indictment were to turn out, "upon development of the facts at trial, to involve protected legislative action," the proper remedy would be "to have that particular allegation stricken," not to dismiss the indictment. *Id.* at 700. And in *United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973), the Fourth Circuit held that although certain allegations in the conspiracy counts of the indictment violated the Speech or Debate Clause, "it does not follow that [the conspiracy counts] should be dismissed because of the inclusion of this improper matter," as "the offending overt acts could have been stricken and the counts would still be legally sufficient." *Id.* at 223–24.

There is no merit to Rep. Cuellar's suggestion that the mere inclusion of Speech or Debate material in the Indictment requires dismissal. Mot. 9–10. He cites *Johnson* for the proposition that "[a] successful facial challenge ends the inquiry, a prosecution may not proceed when it alleges essential facts concerning legislative acts." Mot. 9. But, as discussed, although *Johnson* vacated the defendant's conviction based on the introduction of legislative-acts evidence at trial, it expressly authorized retrial on the count containing the offending material. *Johnson*, 383 U.S. at 185. Thus, *Johnson* does not support the quoted proposition.

Rep. Cuellar also cites *Helstoski* for the same proposition. Mot. 9. But that case, like *Johnson*, considered what evidence may be presented at trial, not whether reference to Speech or Debate material in the indictment requires dismissal. *Helstoski*, 442 U.S. at 486. The latter question was considered by the Third Circuit below but not addressed by the Supreme Court. *See United States v. Helstoski*, 576 F.2d 511 (3d Cir. 1978), *aff'd*, 442 U.S. 477 (1979), *and aff'd sub nom. Helstoski v. Meanor*, 442 U.S. 500 (1979). The defendant petitioned the Third Circuit for a writ of mandamus to require the district court to dismiss four counts in the indictment, arguing that "mention of specific legislative acts shows that the indictment charges him with the performance

of legislative acts." *Id.* at 517. Each of those counts alleged a core legislative act: that the defendant introduced a private bill in the House of Representatives on a specified date. *Id.* at 513. Nonetheless, applying *Brewster*, the Third Circuit declined to issue the writ because "the allegations of the indictment charge a crime even without reference to any acts protected from inquiry under the Speech or Debate Clause." *Helstoski*, 576 F.2d at 517. The Supreme Court affirmed on the ground that mandamus was not the proper mechanism to challenge the denial of a motion to dismiss the indictment. *See Helstoski v. Meanor*, 442 U.S. at 508.

The cases cited by Rep. Cuellar in which courts did, in fact, dismiss charges underscore that dismissal is appropriate only when the protected material is necessary to the government's *prima facie* case. For example, on remand in *Helstoski* (cited at Mot. 9–10), the Third Circuit affirmed the dismissal of one count of making false statements to the grand jury because proof of materiality, an essential element of the charged offense, "would require introduction of evidence of past legislative acts." *United States v. Helstoski*, 635 F.2d 200, 206 (3d Cir. 1980). Similarly, in *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992), cited at Mot. 10, "evidence of Swindall's legislative acts was an essential element of proof with respect to the affected counts." *Id.* at 1549. The government itself conceded that "it could not have proved Swindall's knowledge of criminality" without the protected legislative-acts evidence. *Id.* The government makes no such concession here.

In sum, the question on a motion to dismiss is not whether any of the allegations in the Indictment constitute protected legislative acts under the Speech or Debate Clause, but whether any of the Counts depend on proof of such acts based on the theories of liability and statutes charged.

2.  *None of the Counts of the Indictment Depend on Proof of a Legislative Act*

None of the Counts of the Indictment depend on proof of legislative acts. Counts Two and Six charge Rep. Cuellar with bribery in violation of 18 U.S.C. § 201(b). Those counts allege that Rep. Cuellar "demanded, sought, received, accepted, and agreed to receive and accept" large sums of money from Foreign Oil Company-1 and Foreign Bank-1 "in return for being influenced in the performance of official acts and for being induced to do and omit to do acts in violation of his official duty" relating to the matters detailed in Paragraphs 45 and 83 of the Indictment, respectively. *See* Indictment ¶¶ 97, 115. Paragraphs 45 and 83, in turn, allege a series of official acts that Rep. Cuellar "agreed" or "promised" to take in exchange for the bribes. *Id.* ¶¶ 45, 83; *see also id.* ¶¶ 2–3 (alleging that in exchange for the bribe payments, Rep. Cuellar "promised to influence U.S. foreign policy in favor of Azerbaijan" and "promised to influence federal regulation of the financial industry to benefit Foreign Bank-1 and its affiliates").

The charging language of Counts Two and Six is nearly identical to the language upheld in *Brewster*, which charged a violation of a prior version of 18 U.S.C. § 201(c). There, the indictment alleged that the defendant "'corruptly asked, solicited, sought, accepted, received and agreed to receive' money 'in return for being influenced . . . in respect to his action, vote, and decision on postage rate legislation which might at any time be pending before him in his official capacity.'" *Brewster*, 408 U.S. at 525. The Court explained that, under the federal bribery statute, "it is taking the bribe, not performance of the illicit compact, that is the criminal act." *Id.* at 526. To make out a violation of the statute, the government need not prove that the defendant "fulfilled the alleged illegal bargain." *Id.* Thus, no "inquiry into a legislative act or the motivation for a legislative act [was] necessary to a prosecution" on the bribery theory charged. *Id.* That holding applies to the near-identical bribery charges here.

Fifth Circuit precedent confirms that conclusion. The Fifth Circuit recognizes that "[t]o find bribery, the jury is required to find that a public official accepted a thing of value in return for being influenced in the performance of an official act." *United States v. Bustamante*, 45 F.3d 933, 938 (5th Cir. 1995). That exchange "need not involve the actual commission of an official act by the bribed official; it is sufficient that the official promises to be influenced by the bribe in his official actions, 'even if he has no intention of actually fulfilling his end of the bargain.'" *United States v. Nagin*, 810 F.3d 348, 352 n.3 (5th Cir. 2016) (quoting *United States v. Valle*, 538 F.3d 341, 347 (5th Cir. 2008)). No proof of any completed legislative act is required to prove the bribery offenses charged in Counts Two and Six. Therefore, those counts do not violate the Speech or Debate Clause and should not be dismissed.

The same is true of all other counts of the Indictment. Counts Three and Seven charge honest services wire fraud conspiracy in violation of 18 U.S.C. § 1349. Indictment ¶¶ 98–100, 116–18. The honest services fraud statute criminalizes schemes to defraud through bribery and kickbacks. *See Skilling v. United States*, 561 U.S. 358, 408–09 (2010). Bribery, for honest services fraud purposes, draws its content from federal statutes defining similar crimes, including 18 U.S.C. § 201(b). *Id.* at 412; *see also Nagin*, 810 F.3d at 351 ("We follow the Supreme Court's direction in *Skilling* and look to § 201(b) to give substance to the prohibition on honest-services fraud."). As discussed above, to prove the violations of § 201(b) charged in the Indictment, the government need not introduce evidence of any completed legislative act. Because the same is true of the honest services fraud conspiracies charged in Counts Three and Seven, those counts do not violate the Speech or Debate Clause.

Counts Four and Eight charge that Rep. Cuellar, being a public official, "agreed to and did" act as an agent of the Government of Azerbaijan and Foreign Bank-1 in violation of 18 U.S.C.

§ 219. Indictment ¶¶ 102, 120. That statute makes it a crime for a public official to "[be] or act[] as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938." 18 U.S.C. § 219(a). The Foreign Agents Registration Act ("FARA"), in turn, requires the registration of anyone who qualifies as an "agent of a foreign principal," which the statute defines as "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal" or "any person who agrees, consents, assumes or purports to act" as such, and who performs certain activities. 22 U.S.C. § 611(c)(1), (2). Those activities fall into four enumerated categories: political activities; public relations, publicity, and political consulting activities; raising and disbursing funds; and lobbying U.S. officials. *Id.* § 611(c)(1)(i)–(iv). Thus, § 219 reaches a range of activities that plainly are not legislative acts. And, while some activities covered by § 219 may also be legislative acts, § 219 applies not only to the actual commission of those acts but also to an agreement to commit them, which is not itself a legislative act. *See* 22 U.S.C. § 611(c)(2); *United States v. Menendez*, 759 F. Supp. 3d 460, 503 (S.D.N.Y. 2024). Because no proof of any completed legislative act is necessary to make out the violations of § 219 charged in Counts Four and Eight, those counts do not violate the Speech or Debate Clause.

Counts One and Five charge Rep. Cuellar with conspiring to violate the federal bribery statute, 18 U.S.C. § 201(b), and the prohibition on public officials acting as agents of foreign principals, 18 U.S.C. § 219, all in violation of 18 U.S.C. § 371. A conspiracy is an agreement to commit an unlawful act. *See United States v. Hamilton*, 37 F.4th 246, 256 (5th Cir. 2022). "[T]he crime of conspiracy condemns the agreement itself . . . . [T]he agreement itself is the criminal act." *United States v. Ganji*, 880 F.3d 760, 768 (5th Cir. 2018) (quoting *United States v. Alvarez*, 610 F.2d 1250, 1253–54 (5th Cir. 1980)). The government need not show that the conspiracy

achieved its unlawful object. *See United States v. Green*, 47 F.4th 279, 290 (5th Cir. 2022). Rather, "once the unlawful agreement is shown, proof of a single overt act in furtherance of that agreement by a single conspirator establishes the guilt of each member of the conspiracy." *United States v. Jimenez-Esparza*, 5 F.3d 1495, at *6 (5th Cir. 1993) (unpublished) (quoting *United States v. Veltre*, 591 F.2d 347, 350 (5th Cir. 1979)). Thus, the conspiracy counts do not require proof of completed legislative acts any more than do the underlying substantive offenses.

Finally, Count Nine charges money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Counts Ten through Fourteen charge money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Those counts charge that Rep. Cuellar conspired to and did conduct transactions involving the proceeds of a specified unlawful activity, knowing the transactions were designed to conceal the nature or source of the illegal proceeds. Indictment ¶¶ 122, 125. To prove money laundering, the government must show that the financial transactions involved the proceeds of a specified unlawful activity. *See United States v. Valdez*, 726 F.3d 684, 689 (5th Cir. 2013); Pattern Crim. Jury Instr. 5th Cir. 2.76A (2024). Here, the alleged specified unlawful activities are: bribery in violation of 18 U.S.C. § 201(b); honest services wire fraud in violation of 18 U.S.C. §§ 1343 & 1346; and being a public official acting as an agent of a foreign principal in violation of 18 U.S.C. § 219. Indictment ¶¶ 122, 125. As discussed, none of those offenses requires proof of any legislative act. Thus, no evidence of legislative acts is necessary to prove that Rep. Cuellar conspired to or did engage in transactions involving the proceeds of those offenses.

Rep. Cuellar contends that "this is not a case where the legislative acts involved are somehow not essential to the *prima facie* case against the Congressman so that the indictment can move forward with the offending paragraphs stricken." Mot. 14. In support of that contention, he points out that the purported legislative acts are alleged in Indictment and incorporated by

reference into the charging paragraphs. Mot. 3, 14–15. That is not the standard. Rather, to meet his burden, he must demonstrate that without the allegedly offending material, the Indictment would not be "legally sufficient." *Dowdy*, 479 F.2d at 224.

Rep. Cuellar makes no effort to make that showing. Nor could he. Paragraphs 45(a)–(m) and 83(a)–(f) allege a series of official acts, acts in violation of official duty, and FARA-registrable activities that Rep. Cuellar promised to undertake on behalf of the Government of Azerbaijan and Foreign Bank-1, respectively. Rep. Cuellar does not argue that all those acts are protected by the Speech or Debate Clause. *See* Mot. 2, n.1 (listing challenged acts). Specifically, he does not contend that the acts charged in Paragraphs 45(f) and (i), or in Paragraphs 83(a) or (e) are legislative acts. Paragraphs 45(f) and (i) allege that Rep. Cuellar advised and pressured Executive Branch officials to take official acts relating to Azerbaijan's conflict with neighboring Armenia and to the Azerbaijani Ambassador's daughter's passport application. Paragraphs 83(a) and (e) allege that Rep. Cuellar advised and pressured Executive Branch officials to take official acts relating to banking regulations of interest to Foreign Bank-1. Rep. Cuellar makes no attempt to demonstrate, for any Count, that the government could not make out a *prima facie* case based on those acts and the other allegations in the Indictment. Thus, even if Rep. Cuellar were correct that all the challenged acts are legislative acts protected by the Speech or Debate Clause, the Indictment still should not be dismissed. *See McDade*, 28 F.3d at 300 ("Both counts I and III, which charge conspiracies under 18 U.S.C. § 371, allege numerous other overt acts, and an indictment under 18 U.S.C. § 371 need only allege one overt act. Thus, irrespective of the validity of the two overt acts in question, it is apparent that the district court was not required to dismiss . . . either count I or count III." (internal citations omitted)).

**B.      The Indictment Does Not Allege Performance of Any Legislative Act**

Because the Indictment would be sufficient even if all the challenged allegations were stricken, the Court need not decide, at this stage, whether those allegations are in fact legislative acts.

In any event, the challenged allegations are not legislative acts.  There is no dispute that the Speech or Debate Clause prohibits the government from alleging in an Indictment that a Member of Congress performed a legislative act.  But "the Clause does not prohibit closely related but nevertheless distinct showings, such as that a member promised to perform a legislative act in the future or even that a member was thought to have performed a legislative act in the past and was paid in exchange for or because of it." *McDade*, 28 F.3d at 293.  The challenged paragraphs make only those latter, permissible, showings.

1.      *The Indictment Alleges Only Non-Legislative Communications between Rep. Cuellar and his Bribe Payors*

On its face, the Indictment does not allege that Rep. Cuellar actually performed any legislative acts, only that he "promised" or "agreed" to do so.  Indictment ¶¶ 2, 3, 45, 83.  The challenged paragraphs do not allege any acts taken in Congress or even communications with staffers or other Members of Congress.  Rather, they allege private communications between Rep. Cuellar and representatives of the foreign entities from whom he was accepting bribes.  In those communications, Rep. Cuellar seeks direction from his foreign principals about how to fulfill his end of the corrupt bargain, promises to take future official acts related to matters of interest to them, and reports back about his activities in furtherance of their interests.  These non-legislative communications are alleged "for the entirely permissible purpose of detailing the nature of the corrupt promise allegedly made." *United States v. Myers*, 635 F.2d 932, 937 (2d Cir. 1980);

17

*Helstoski*, 442 U.S. at 489 ("*Brewster* makes clear that the 'compact' may be shown without impinging on the legislative function.").

Paragraphs 45(a) through (m) allege communications between Rep. Cuellar, Azerbaijani-Diplomat-1, who was then serving as Azerbaijan's Ambassador to the United States, and Individual-1, a Turkish-American businessman who served as an "intermediary" to broker the corrupt agreement. These communications occurred during the same period in which Rep. Cuellar negotiated a series of sham contracts with Foreign Oil Company-1 and then accepted at least $360,000 flowing from Foreign Oil Company-1, through its affiliated front companies, to Imelda Cuellar's shell companies.

The majority of the challenged sub-paragraphs concern only future legislative acts, which receive no protection under the Clause. *See Helstoski*, 442 U.S. at 490 ("[I]t is clear from the language of the Clause that protection extends only to an act that has already been performed."). Paragraph 45(b) alleges that Rep. Cuellar promised Azerbaijani Diplomat-1 that he would "try [his] best" to "keep [] out" a pro-Armenia amendment that he believed would be offered the following day. Paragraph 45(c) alleges that Rep. Cuellar strategized with Azerbaijani Diplomat-1 about how to lobby the United States Government to make sure "Azerbaijan gets it's [*sic*] fair share" in relation to a bill that had not yet passed. Paragraph 45(d) alleges that Rep. Cuellar promised to advocate for language supplied by the Embassy of Azerbaijan to be included in a Committee Report. Paragraph 45(e) alleges that Rep. Cuellar promised to give a pro-Azerbaijan speech on the floor of the House of Representatives in the future. Paragraph 45(h) alleges that Rep. Cuellar promised to advise and pressure another Member of Congress to withdraw a proposed amendment. Paragraph 45(j) alleges that Rep. Cuellar promised to oppose a pro-Armenia resolution and consulted with Azerbaijani Diplomat-1 about how to lobby against its passage.

Paragraph 45(k) alleges that Rep. Cuellar promised Azerbaijani Diplomat-1 that he would add an amendment and a rider favorable to Azerbaijan. And Paragraph 45(l) alleges that Rep. Cuellar promised to add an amendment and work on appropriations relating to violence in the Nagorno-Karabakh region of Azerbaijan. In sum, these sub-paragraphs allege only "promise[s] to deliver a speech, to vote, or to solicit other votes at some future date" and "promise[s] to introduce a bill," none of which are legislative acts. *Helstoski*, 442 U.S. at 490.

Only three of the challenged sub-paragraphs of Paragraph 45 reference past legislative acts. Paragraph 45(a) alleges that, in the period in which he was negotiating the initial sham contract with Foreign Oil Company-1, *see* Indictment ¶¶ 23–24, Rep. Cuellar reported to Azerbaijani Diplomat-1 that he had placed pro-Azerbaijan language in a bill and then promised to set up a meeting with the Department of Defense to "focus" them on the region that included Azerbaijan. Paragraph 45(g) alleges that Rep. Cuellar reported back to Azerbaijani Diplomat-1 that he had "[s]ubmitted language today." And paragraph 45(m) alleges that Rep. Cuellar told Azerbaijani Diplomat-1 that he had withdrawn an amendment blocking a pro-Armenia amendment, to which Azerbaijani Diplomat-1 responded by requesting that Rep. Cuellar "make sure" the amendment "doesn't pass."

The fact that Rep. Cuellar referenced his past legislative acts in communications with Azerbaijani Diplomat-1 does not transform those non-legislative communications into legislative acts. Disseminating information outside Congress is not a protected legislative act, even if the original material is legislative in nature. The Supreme Court has recognized that "the transmittal of … information [about Members' activities] by individual Members in order to inform the public and other Members is not a part of the legislative function or the deliberations that make up the legislative process." *Hutchinson*, 443 U.S. at 133. For example, a Member may be held liable for

"publish[ing] a libel from the speaker's stand in his home district," even if "the libel was read from an official committee report." *McMillan*, 412 U.S. at 314; *cf. Gravel*, 408 U.S. at 625–26. That is because "republishing a libel . . . is not an essential part of the legislative process and is not part of that deliberative process 'by which members participate in committee and House proceedings.'" *McMillan*, 412 at 314–15 (quoting *Gravel*, 408 U.S. at 625).

By the same token, informing a bribe payor about legislative acts taken pursuant to a corrupt bargain is distinct from the legislative acts themselves. Communicating information in that manner and under those circumstances is in no way essential to the legislative process. The Speech or Debate Clause does not prohibit the government from alleging such communications as part of a showing that "a member was thought to have performed a legislative act in the past and was paid in exchange for or because of it." *McDade*, 28 F.3d at 293.

Similarly, Paragraphs 83(a) through (f) allege communications between Rep. Cuellar and two executives of Foreign Bank-1, in the period in which Rep. Cuellar negotiated a sham contract with Foreign Bank-1, arranged for a series of intermediaries to launder the funds, and then accepted over $200,000 in bribes. Again, nearly all the challenged sub-paragraphs concern future legislative acts unprotected by the Clause. Paragraph 83(b) alleges that Rep. Cuellar sent Executive-1 a draft committee report and then promised to submit Executive-1's proposed revisions to a congressional committee "tomorrow." Paragraph 83(c) alleges that Rep. Cuellar sent Executive-1 a "proposal" to "add language in two different bills." Executive-1 thanked him for the "valuable" proposal and indicated he would "get together with" Mexican Official-1, the intermediary brokering the sham contract. Paragraph 83(d) alleges that Rep. Cuellar's staffer asked Executive-1 for his "opinion" about whether Rep. Cuellar should sponsor a bill affecting one of Foreign Bank-1's U.S.-based affiliates, a veiled promise to act at Executive-1's direction. Finally, Paragraph 83(f) alleges that

Rep. Cuellar discussed a pending bill with Executive-2 and then promised future official action: "I will carry it in the house."

Only one of the challenged sub-paragraphs references any completed legislative act. Paragraph 83(c) alleges that Rep. Cuellar reported back to Executive-1, "Language added in committee." As discussed above, communicating with individuals outside Congress about legislative acts is not itself a legislative act and is not protected by the Clause.

In sum, the challenged paragraphs of the Indictment allege only unprotected communications between Rep. Cuellar and his bribe payors about their corrupt agreement to take official acts in exchange for bribes. Promising to take future legislative acts and providing information to individuals outside Congress about past legislative acts are not themselves legislative acts. *See Brewster*, 408 U.S. at 526 ("Taking a bribe is, obviously, no part of the legislative process or function."); *Gravel*, 408 U.S. at 626 ("[T]he Speech or Debate Clause . . . does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts.").

2.     *Rep. Cuellar's Communications with His Bribe Payors Are Not Themselves Legislative Acts*

Rep. Cuellar contends that the challenged paragraphs do not allege "plans to make a legislative act" but rather "a legislative act itself." Mot. 14. He argues that his private conversations with Azerbaijani Diplomat-1, Individual-1, Executive-1, and Executive-2 were part of his "deliberative and communicative processes" by which he considers legislative measures before the House of Representatives. *Id.* That argument has no merit.

The Supreme Court has not directly addressed to what extent a Member's communications with individuals outside Congress may be protected by the Speech or Debate Clause and the courts of appeals have taken varying approaches. The Ninth and Tenth Circuits have held such

communications to be categorically unprotected. In *United States v. Renzi*, 651 F.3d 1012 (9th Cir. 2011), the defendant, like Rep. Cuellar, attempted to recast his negotiations with his bribe payors as part of the legislative process, arguing that "the very act of 'negotiating' with private entities over future legislation is analogous to the discourse between legislators over the content of a bill and must be considered a protected 'legislative act' under a broad construction of the Clause." *Id.* at 1022. The Ninth Circuit rejected that argument, holding that "private negotiations between Members and private parties are not protected 'legislative acts.'" *Id.* at 1025.

Similarly, in *Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301 (10th Cir. 2004), the defendant claimed that "meetings with constituents or other members of the public — either by the Senator himself or by his aides — are legislative acts to the extent that information is gathered that could affect his votes of his efforts to craft proposed legislation." *Id.* at 1316. The Tenth Circuit likewise rejected that argument, concluding that "[t]he 'communicative processes' referred to in *Gravel* are only those within Congress itself." *Id.* at 1319.

Other circuits take a fact-specific approach. In *In re Sealed Case*, 80 F.4th 355 (D.C. Cir. 2023), the defendant argued that his communications with both Executive Branch officials and parties outside Congress were protected by the Speech or Debate Clause because they constituted "informal factfinding." *Id.* at 359. The D.C. Circuit rejected both the defendant's position that "informal factfinding" is categorically protected and the government's position that factfinding outside the confines of a congressionally authorized proceeding is categorically unprotected. *Id.* at 367. Instead, it held that a district court should conduct a fact-specific inquiry into whether the particular communication is "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the

Constitution places within the jurisdiction of either House." *Id.* at 359 (quoting *Gravel*, 408 U.S. at 625).

The Third Circuit also takes a fact-specific approach. Where the challenged act is "neither manifestly legislative nor clearly non-legislative," the Court "consider[s] the content, purpose, and motive of the act to assess its legislative or non-legislative character." *United States v. Menendez*, 831 F.3d 155, 166 (3d Cir. 2016). There, Senator Menendez contended that his contacts with Executive Branch officials, which the government alleged he undertook in exchange for bribes, were protected legislative oversight and fact-gathering. *Id.* at 169, 173. The Court noted that "the way Senator Menendez chooses to characterize his actions does not resolve the Speech-or-Debate-Clause question." *Id.* at 172. Instead, after examining the content, context, and motive of the communications, it concluded that Senator Menendez failed to show that his "predominant purpose" was to "engage in true legislative oversight or otherwise influence broad matters of policy," and thus the communications at issue were not legislative acts protected by the Clause. *Id.* at 173.

Rep. Cuellar's arguments fail under any standard. Under the Ninth and Tenth Circuit standard, a Member's private discussions with parties outside Congress are categorically unprotected by the Clause. *See Renzi*, 651 F.3d at 1025; *Bastien*, 390 F.3d at 1319. And under the Third and D.C. Circuits' fact-specific approach, Rep. Cuellar cannot demonstrate that the challenged communications were legitimate legislative activity. The communications are private discussions with representatives of foreign entities that were funneling large sums of money to Rep. Cuellar through a series of transactions layered through middleman entities and disguised under sham contracts. Their content reveals that they were not "deliberative" but transactional; in them, Rep. Cuellar promised to carry out his bribe payors' wishes or reported on his activities on

their behalf. Such private communications with foreign individuals outside Congress are not "an integral part of the deliberative and communicative processes" by which Members of Congress write our nation's laws. *Gravel*, 408 U.S. at 625; *cf. United States v. Myers*, 692 F.2d 823, 860 (2d Cir. 1982) (holding that the Speech or Debate Clause did not protect private communications between two Members of Congress on the floor of the House of Representatives consisting of "whispered solicitations to commit a crime").

If Rep. Cuellar's sweeping view of the Speech or Debate Clause were accepted, a corrupt Member of Congress could recharacterize his communications with his bribe payors as "deliberative" — and thereby avoid prosecution — in every case. The result would be that any discussion about the legislative acts that a Member promises to take in exchange for bribes could be recast as reflecting his motivation for taking legislative acts or informing his performance of his legislative duties. Under Rep. Cuellar's view, a Member could secure dismissal of an Indictment simply by claiming those discussions with his bribe payors were part of his "deliberative" process. The Supreme Court rejected that view in *Brewster*. This Court should reject it too.

## V.    Conclusion

Rep. Cuellar's Motion to Dismiss Indictment for Speech or Debate Clause Violations should be denied.[1]

---

[1]    Rep. Cuellar's motion also asks the Court to order the government to disclose the grand jury record of the indictment for review of Speech or Debate violations. The government does not oppose such disclosure and is in the process of disclosing relevant records of the grand jury proceedings to defense counsel. That request, therefore, should be denied as moot.

Dated: June 9, 2025                          Respectfully submitted,

EDWARD P. SULLIVAN                           JENNIFER KENNEDY GELLIE
Acting Chief                                 Chief
Public Integrity Section                     Counterintelligence and Export Control Section
Criminal Division                            National Security Division
U.S. Department of Justice                   U.S. Department of Justice

By: _/s/ Celia Choy_____                 By: _/s/ Garrett Coyle_____
Rosaleen O'Gara                              Garrett Coyle
Celia Choy                                   Attorney for the United States
Aaron L. Jennen
Attorneys for the United States