IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § | Case No. 4:24-cr-00224 |
| ENRIQUE ROBERTO "HENRY" CUELLAR and IMELDA RIOS CUELLAR | § § § § | REDACTED VERSION |

**CONGRESSMAN CUELLAR'S REPLY IN SUPPORT OF
MOTION TO DISMISS INDICTMENT FOR
SPEECH OR DEBATE CLAUSE VIOLATIONS**

TO THE HONORABLE LEE H. ROSENTHAL,
UNITED STATES DISTRICT JUDGE:

NOW COMES ENRIQUE ROBERTO "HENRY" CUELLAR, Defendant herein, through counsel, files this Reply in support of his Motion to Dismiss Indictment for Speech or Debate Clause Violations. Dkt. No. 87. The Government's Response and a review of the partial grand jury record, paints a concerning picture of the Government's actions in this case. The Government argues for rules which put the Constitution's Speech or Debate Clause protections at the whim of prosecutors and plays nonsensical games with the English language. Perhaps just as alarming, the incomplete grand jury record shows a reason to believe that the prosecutors in this matter *knew* the information in the identified paragraphs was protected and nevertheless included the paragraphs in the indictment.

1

# I. BACKGROUND

Congressman Cuellar filed his Motion to Dismiss Indictment for Speech or Debate Clause Violations on May 9, 2025. Dkt. No. 87. That motion moved to dismiss the government's indictment for 16 violations of Article 1 section 6 clause 1 of the United States Constitution, known as the "Speech or Debate Clause." Dkt. No. 87. The Clause absolutely protects Congressmen from inquiry into the deliberative process for legislative acts. Mr. Cuellar moved to dismiss the indictment because those 16 legislative act allegations were entirely impermissible under the Clause. Dkt. No. 87. The Congressman argued the constitutional violations infected the entire indictment because the offending paragraphs were incorporated by reference 12 different times throughout the charging document. Dkt. No. 87. Mr. Cuellar also moved the Court to order disclosure of the grand jury record so it could be reviewed for other Speech or Debate Clause offending information. Dkt. No. 87. Before filing a response, the Government agreed to produce the grand jury records, and the Court entered an order to that effect. Dkt. Nos. 91, 93. After only producing partial records of witness testimony, Mr. Cuellar moved for the Court to compel the Government to produce the remainder of the grand jury record. Dkt. No. 105.

The Government filed its response to the Motion to Dismiss Indictment for Speech or Debate Clause Violations on June 9, 2025. Dkt. No. 103. The

Government argued the paragraphs identified by the Defendant were not legislative acts and the counts in the indictment did not depend on proof of any legislative act. Dkt. No. 103.

## II. ARGUMENT

A. <u>Legislative Acts Do Not Lose Their Protection Based on the Nature of Allegations</u>

The Government's response effectively argues that when it alleges deliberations about a legislative act are corrupt, those deliberations lose their protection under the Speech or Debate Clause. That is incorrect. Any interpretation of the Speech or Debate Clause protection that leaves the decision of what a legislative act is to the discretion of the prosecution violates long established Supreme Court precedent and the Constitution's careful balance of Executive and Legislative powers.

The deliberation and performance of legislative acts are absolutely protected by the Speech or Debate Clause and a Congressman may never be held to answer by the Executive branch for those deliberations and performance. *U. S. v. Helstoski*, 442 U.S. 477, 491 (1979). That protection does not depend on whether an officer of the executive believes the deliberations and acts were subject to undisclosed influence or otherwise improper. *United States v. Johnson*, 383 U.S. 169, 171 (1966). There is no discretion or exception, the protection is so awesome that it stands even if the deliberations or acts are actually criminal. *Doe v. McMillan*, 412

U.S. 306, 313 (1973).  It has long been held that a bribe is not a legislative act. Congressmen may be charged with bribery without offending the Speech or Debate Clause.  That is because the promise to do legislative acts for money is not a legislative act.  But a congressman may not be charged with allegations about the legislative acts themselves.  *Johnson* makes the distinction clear.  Johnson was charged with accepting bribes from a bank to take favorable acts for the bank, including delivering a speech for the bank in the House of Representatives.  *United States v. Johnson*, 383 U.S. 169, 171 (1966).  The prosecutors in *Johnson* made the same argument that the prosecutors do in this case: that the Speech or Debate Clause was not violated because the gravamen of the indicted count was the conspiracy, not the allegedly corrupt speech.  The Supreme Court unequivocally ruled that that is incorrect, and "the claim of an unworthy purpose did not destroy the privilege" under the Clause. *Id.* at 181.  Specifically, the Supreme Court ruled it was a violation of the Clause because the "indictment itself focused with particularity upon motives underlying the making of the speech and upon its contents." *Id.* at 184.  Just as here, even when the Government claimed a corrupt influence was being exercised in the preparation of a speech for the House floor, the acts were immune under the Clause. *Id.*

Nothing less than ensuring the independence of the legislature and maintaining the delicate balance struck between the three co-equal branches of

government requires this result. *Helstoski*, 442 U.S. at 491. The issue has been spelled out again and again by the Supreme Court. Legislative acts are immune. The character of a legislative act does not change due to the nature of an allegation. The Government *may* bring a prosecution for the taking of a bribe for legislative acts. The Government *may not* inquire into legislative acts. *See id.* at 489.

>    B. <u>The Government's Creative Arguments Do Not Save Its Speech or Debate Violations</u>

The Government does violence to the English Language through its acrobatic use of the future tense and creative definition of the word "promise." It argues that every time Congressman Cuellar had a conversation about his plans to do a legislative act in the future tense it was a "promise" which is part of a bribery scheme. Dkt. No. 103 at 6, 21. That is nonsensical. The "promise" that is contemplated by *Helsotksi*, *Johnson* and *Brewster* is the "quo" in the *quid pro quo* of an alleged bribe. *See Helstoski*, 442 U.S. at 491. "The illegal conduct is taking or agreeing to take money for a promise to act in a certain way. There is no need for the Government to show that appellee fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise." *U. S. v. Brewster*, 408 U.S. 501, 526 (1972).

The Supreme Court did not hold that every time a legislator used the future tense, he was making a promise to do an act, nor did it hold that legislative acts are

5

only protected after they are performed. *See Id.* at 502. The Supreme Court drew a careful line that purposefully excluded the process of performing legislative acts. *Id.*

A promise is a binding commitment that is the "essence of a contract." PROMISE, Black's Law Dictionary (12th ed. 2024). The *Brewster* Court makes this clear in the first sentence of its opinion which describes "promise" as part of the bribery statute 18 U.S.C. 201. *Brewster*, 408 U.S. at 502.

This common usage of the word promise is made even clearer in the Supreme Court's cases that protect the deliberative process under the Speech or Debate Clause. The Clause protects not just the speeches and debates given in Congress but all integral parts "of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. U. S.*, 408 U.S. 606, 625 (1972). *Gravel's* protection of the deliberative process under the Speech or Debate Clause was a distillation of a rule that had already been established in *Johnson* six years earlier. *See Johnson*, 383 U.S. at 175. The *Johnson* Court ruled that the Government could not inquire into who had input into the draft of the speech that the Congressman planned to give. *Id.* It was impermissible to inquire into who wrote which sentences of the speech, the Congressman's personal knowledge about factual material supporting the speech

6

and the motives for giving the speech. *Id.* at 176. This meant statements about the drafting process, before the speech was given, were protected by the Speech or Debate Clause. *Id.* "The constitutional infirmity infecting this prosecution is not merely a matter of the introduction of inadmissible evidence. The attention given to the speech's substance and motivation was not an incidental part of the Government's case, which might have been avoided by omitting certain lines of questioning or excluding certain evidence." *Id.* The speech and the process behind the speech was absolutely protected by the clause. *Id.*

    The Government has tried to blur the lines between what is a promise and what is a legislative act. Despite these clever efforts, mislabeling Congressman Cuellar's deliberative process as communication that "seeks direction from his foreign principals about how to fulfill his end of the corrupt bargain" does *nothing* to evade the black letter law established by the Supreme Court nearly 60 years ago. Dkt. No. 103 at 21. The Supreme Court rejected that argument in *Johnson* and reiterated its holding in all of its following rulings on the issue. *See Johnson*, 383 U.S. at 175. The Government's argument would render *Johnson*, H*elstoski* and *Brewster* meaningless. *Helstoski*, 442 U.S. at 491. Under the Government's approach the Executive could scrutinize legislative acts with just a bare allegation that the deliberation was part of an ongoing conspiracy. *See* Dkt. No. 103. That is an incorrect application of the law. A prosecutor's claim about the propriety of a

deliberation on a legislative act does not change the protection of the Clause. *Helstoski*, 442 U.S. at 491. "The claim of an unworthy purpose did not destroy the privilege." *Johnson*, 383 U.S. at 181.

    C.    <u>The Government' Grossly Mischaracterizes Ninth and Tenth Circuit Opinions</u>

Contrary to the government's assertions, the Ninth and Tenth Circuit's have *not* held that discussions with private parties are "categorically unprotected" by the Clause. Dkt. No. 103 at 25-26. The two cases the Government cites for this proposition are exceptionally off-point.

*Renzi supports* the Defendant's position about protected legislative acts and highlights the distinction raised throughout the case law between legislative act deliberations and bribe negotiations. The evidence of Renzi's *negotiations for a bribe* were not protected because they were part of a promise and solicitation of a bribe. *United States v. Renzi*, 651 F.3d 1012, 1017 (9th Cir. 2011) "Renzi told Aries that if the property was purchased and included, he would ensure that the legislation received a 'free pass' through the NRC." *United States v. Renzi*, 651 F.3d 1012, 1017 (9th Cir. 2011). *Renzi* restated what has long been the law, a solicitation for a bribe is not the same thing as a discussion of a legislative act. *See id.* *Nowhere* in *Renzi* does it hold that every conversation with a private party is "categorically unprotected" by the Clause. *Id.* Nowhere in the challenged paragraphs of the indictment against Congressmen Cuellar are there bribe negotiations or discussions

8

of a *quid pro quo*, it is purely deliberations of legislative acts, exactly the type of acts that *Renzi* describes as being protected. See Dkt. No. 1 ¶¶ 45, 83; *id.*

The Government follows on the *Renzi* mischaracterization with a mischaracterization of a case even further off point. The Government claims the 10th Circuit rejected the position that meetings with members of the public can be protected legislative acts and "categorically" held that meetings with private parties are unprotected by the Speech or Debate Clause. Dkt No. 103 at 26-27. That is wrong. *Bastien* concerned whether a fired employee could bring an employment discrimination claim against her former Congressional office. *Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1303 (10th Cir. 2004). The 10th Circuit held her claim could proceed because the hiring and firing of a staff member was not a legislative act protected by the Speech or Debate Clause. *Id.* The Court held that Defendant's arguments that the staffer's *own* duties to gather information for the Senator did not put her firing within the protection of the Clause. *Id.* at 1305. *Bastien* did not hold that conversations with private parties cannot be protected by the Speech or Debate Clause much less "categorically unprotected." *See id.* This case has little to do with the motion before the Court and does not stand for the proposition it is cited for. *See id.*

### D. The Paragraphs Which Violate the Speech or Debate Clause are Integral to the Indictment

Despite the Government's contention, the question regarding making a *prima facie* case without a Speech or Debate Clause violation is whether the charged indictment permits a *prima facie* case without a violation, not whether the Government *could* have filed an indictment that allows a *prima facie* case in the abstract. For the proposition that the Government is allowed to avoid responsibility for its charging document by coyly drawing a *prima facie* case around the extensive unlawful paragraphs already incorporated into its substantive counts, the Government cites Third Circuit case *McDade*. *McDade* held that the Speech or Debate Clause did not require dismissal of any count just because it referred to a Congressman's status as a member of a congressional committee. *United States v. McDade*, 28 F.3d 283, 291 (3d Cir. 1994). *McDade* further held that two challenged overt acts were not protected by the clause and even if they were there were plenty of other overt acts to support a charged count. *Id*. *McDade* does not stand for the proposition that the Government can dump a laundry list of protective legislative acts into an indictment, incorporate those legislative acts in seven substantive counts, and still move forward to trial. *See id*. The authorities considering extensive reference to legislative acts in an indictment stand for the opposite proposition. "The Clause does not simply state, 'No proof of a legislative act shall be *offered*'; the prohibition of the Clause is far broader." *Helstoski*, 442 U.S. at 491. The bar is

absolute, because the Clause secures for every congressman an "'exemption from prosecution, for everything said or done by him, as a representative, in the exercise of the functions of that office." *Id.* "The essence of such a charge in this context is that the Congressman's conduct was improperly motivated, and as will appear that is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry." *Johnson*, 383 U.S. at 180. "The purposes served by invoking the speech or debate clause vary greatly from those that the Supreme Court has considered and rejected in other cases seeking to quash indictments." *United States v. Helstoski*, 635 F.2d 200, 204 (3d Cir. 1980) [hereinafter *Helsotski II*]. "In order to fully to secure th[e] purposes [of the Speech or Debate Clause], it seems that a court may find it necessary, at least under some circumstances, to look beyond the face of an indictment and to examine the evidence presented to the grand jury." *Renzi*, 651 F.3d at 1028 (quoting *United States v. Rostenkowski*, 59 F.3d 1291, 1298 (D.C. Cir. 1995), *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995). *Brewster* only allowed an indictment to proceed when it made passing reference to a vote performed as a part of a bribe. *See Brewster*, 408 U.S. at 503. *Brewster* did not retreat from *Johnson's* holding that the deliberative process for legislative acts are absolutely protected. *See id.* *Brewster* does not stand for the even more chilling proposition that the Government asks the Court to adopt in this

case: that prosecutors violate the Clause whenever they please and then disclaim responsibility for the violation as harmless or unnecessary.

Perhaps the Government *could* have presented to the grand jury an indictment that was not dependent on legislative act allegations, but it did not file that indictment. Instead, the Government presented an indictment to the grand jury that not only made extensive and detailed allegations about legislative acts, ¶ 45, 83, it incorporated those acts throughout its substantive counts (Counts 1, 2, 3, 4, 5, 6 and 8). Dkt. No. 1 ¶¶ 86, 93, 95, 96, 97, 98, 100, 101, 102, 111, 115 and 120. As charged, each of those counts are alleged to rely on proof of the allegations contained within the count itself, including the legislative act allegations. This is not a situation where an errant factual background paragraph or passing reference is being used as a shield to try and defeat substantive counts which make no mention of the improper material. *See McDade*, 28 F.3d at 291.

The Government put legislative act material in the indictment, Dkt. No. 1 ¶¶ 45(a)-(e), (g), (j)-(m), 83(b)-(d),(f), detailed deliberations protected by the Speech or Debate Clause. It made that information essential to its allegations, taking up ten pages in the indictment, pp. 14-18; 32-36, and wove it into seven substantive counts. Dkt. No. 1. It cannot now claim that the legislative act material is unnecessary, or unimportant. It chose to make those ten pages the "essence" of counts in the indictment. *See Johnson*, 383 U.S. at 180.

E.  The Partial Grand Jury Record Gives Rise to a Reason to Believe that a Knowing Violation of the Speech or Debate Clause Occurred

A review of the partial grand jury transcript gives rise to a reason to believe that the lead prosecutor of this case knew the communications in question were protected. Exhibit A (filed *under seal*).

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██

███████████████████████████████████████
███████████████████████████████████████
████████████████████████████ This creates a reason to believe that at one time the prosecutors in this matter believed these legislative act paragraphs were protected material and rather than seek judicial instruction or just tack a wide berth around the balance of powers between the Legislature and the Executive, these prosecutors chose to charge headlong into the protected terrain. If

that is indeed what happened, they did so armed only with meager arguments above which contradict long-established precedent.

### F. The Only Appropriate Remedy is Dismissal of the Indictment

Contrary to the Government's assertion, there is no risk of a defendant "avoid[ing] prosecution." Dkt. No. 103 at 28. Mr. Cuellar's motion just asks that the Government follow the law that balances the power between the Legislative and Executive Branch. The Government must respect the power of the Speech or Debate Clause even if it is frustrating or inconvenient. *See id.*

The Court in *Helstoski II* stated the issue precisely when it wrote:

> If it is to serve its purpose, the shield must be raised at the beginning. Observance of this rule will not foreclose indictments for illegal conduct beyond the scope of the speech or debate clause. All that is required is that in presenting material to the grand jury the prosecutor uphold the Constitution and refrain from introducing evidence of past legislative acts or the motivation for performing them. In that way the clause will meet its expectation of preserving the constitutional structure of separate, coequal, and independent branches of government.

*Helstoski II*, 635 F.2d at 205–06.

The challenged paragraphs are details of communications that solely contemplate the Congressman's work in the House of Representatives. They are about placing language in House bills, drafting amendments to bills and resolutions, funding measures in bills under consideration, seeking input on bills the Congressman was considering, the text of a speech he would give in the House, the

Congressman's deliberation on talking points for bills under consideration, his intent to carry a bill in the House, and his meetings with a legislator who would sponsor the bill in the Senate. Dkt. No. 1 ¶¶ 45(a)-(e), (g), (h),(j)-(m), 83(b)-(d),(f). These communications were not part of alleged bribe negotiations or promises, they are just details about acts taken by Congressman Cuellar in the House of Representatives. *See Brewster*, 408 U.S. at 503; *Renzi*, 651 F.3d at 1017. This Court should conclude that the challenged paragraphs are legislative acts protected by the Speech or Debate Clause.

    Once it is determined that these ten pages of the indictment are legislative acts, the only appropriate remedy is dismissal of all affected counts or dismissal of the entire indictment. Despite the *post hoc* excuses and rationalizations of the Government, there is no precedent for allowing an indictment infected by such extensive and possibly knowing violations of the Speech or Debate Clause to proceed to trial. The Clause's absolute protection lies in its own text: Congressmen "shall not be questioned in any other Place" regarding their acts in Congress. U.S. Const. art. I, § 6, cl. 1. The purpose and "awesome" protection of the Clause would be undermined if Congressman Cuellar is made to answer to an indictment that commits a wholesale violation of what the Clause prohibits. *See Helstoski*, 442 U.S. at 492; *In re Grand Jury Investigation of Ven-Fuel*, 441 F. Supp. 1299, 1305 (M.D. Fla. 1977). Allowing this case to proceed after the litany of violations in the

indictment would countenance a "beg forgiveness later" rather than "ask permission" approach to Constitutional violations. There must be consequences when the Executive disobeys the Constitution's rules balancing the powers between the branches of government. *See id.*; *Helstoski II*, 635 F.2d at 205–06. Dismissal of an indictment is required "where the indictment charges a defendant's legislative acts as criminal acts" as it is here. *See Johnson*, 383 U.S. at 176; *United States v. Eilberg*, 465 F. Supp. 1076, 1078 (E.D. Pa. 1979). In light of these gross Constitutional violations, and given the power and purpose of the Clause, the indictment or the offending counts must be dismissed.

### III.  CONCLUSION

For the aforementioned reasons, and those stated in Congressman Cuellar's moving papers, No. 87, Mr. Cuellar asks the Court to Grant his Motion to Dismiss Indictment For Speech or Debate Clause Violations.

Respectfully submitted,

FLOOD & FLOOD

*/s/ Chris Flood*
Chris Flood
Email: chris@floodandflood.com
State Bar No. 07155700
Federal I.D. No. 9929

Charles Flood
Email: charles@floodandflood.com
State Bar No. 00798178
Federal I.D. No. 22508

Stephen D. Dockery
State Bar No. 24120265
Email: stephen@floodandflood.com

914 Preston, Ste. 800
Houston, Texas 77002
713-223-8877
713-223-8877 fax

Eric Reed
THE REED LAW FIRM, PLLC
State Bar No. 00789574
Federal I.D. No. 17904
912 Prairie St., Suite 100
Houston, Texas 77002
713-600-1800
713-600-1840 fax

**ATTORNEYS FOR ENRIQUE ROBERTO "HENRY" CUELLAR**

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

>  */s/ Chris Flood*
>  Chris Flood