UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § § v. § § ENRIQUE ROBERTO "HENRY" § CUELLAR, § § Defendant. § § | No. 4:24-cr-224 |

**GOVERNMENT'S MOTION FOR INQUIRY INTO POTENTIAL CONFLICT OF INTEREST**

The government provides notice to the Court of a potential conflict of interest in the representation of the defendant, Enrique "Henry" Cuellar, by one of his attorneys of record, Eric Reed, and requests that the Court set a hearing to inquire into the potential conflict.

**I.   Background**

On April 30, 2024, Rep. Cuellar was indicted together with his wife, Imelda Cuellar, on charges of conspiracy, bribery, honest services wire fraud conspiracy, being a public official acting as an agent of a foreign principal, money laundering conspiracy, and money laundering in relation to two schemes to accept bribes from Foreign Oil Company-1, an oil and gas company wholly owned by the Government of Azerbaijan, and Foreign Bank-1, a Mexican bank, in exchange for official acts. On May 7, 2024, attorney Eric Reed noticed his appearance on behalf of Rep. Cuellar. ECF No. 27.

On May 8, 2024, the Court unsealed the guilty plea of Florencio "Lencho" Rendon. *See United States v. Rendon*, No. 4:24-cr-89, ECF No. 20 (S.D. Tex. May 8, 2024). In his Plea Agreement, Mr. Rendon admitted to laundering the bribe funds accepted by Rep. Cuellar from Foreign Bank-1, via his consulting company, a Texas entity referred to in the Indictment as Consulting Company-1. *See id.*, ECF No. 17, at 9–20. Mr. Rendon is expected to testify at Rep. Cuellar's trial that is set to begin on September 22, 2025.

1

On July 2, 2025, Mr. Rendon informed the government that he previously sought legal advice and services from Mr. Reed and Mr. Reed's former law firm on two occasions. First, in approximately 2006, Mr. Rendon retained Mr. Reed's then-firm and his law partner at the time to assist him in forming Consulting Company-1 as a Texas entity. For several years beginning in approximately May 2006, Mr. Rendon used Mr. Reed's firm's address as Consulting Company-1's business address in Houston and used its office space for business meetings. Mr. Rendon later used Consulting Company-1 to launder the bribes flowing to Rep. Cuellar from Foreign Bank-1.

Second, in January 2022, Mr. Rendon was served with a grand jury subpoena in relation to the investigation of Rep. Cuellar and was informed that the government had secured a search warrant for his phone. Mr. Rendon sought legal advice from Mr. Reed about how to respond to the law enforcement request. Mr. Rendon consulted with Mr. Reed for approximately an hour, during which Mr. Reed provided legal advice. Mr. Rendon recalled that his personal attorney also participated in that phone call. Ultimately, Mr. Rendon decided not to retain Mr. Reed further on this matter.

On July 7, 2025, after learning this information from Mr. Rendon, the government notified Mr. Reed of the potential conflict and sought his position. Mr. Reed responded that he believes no conflict exists.

## II.    Legal Standard and Discussion

"The 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by . . . conflicting interests." *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978) (quoting *Glasser v. United States*, 315 U.S. 60, 70 (1942)). Impairments of the right to conflict-free counsel threaten not only the defendant's right to effective representation, but also the trial court's interest in the fairness of its proceedings and the integrity of its judgments. As the Supreme Court explained in *Wheat v. United States*, federal courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." 486 U.S. 153, 160 (1988). In addition, trial courts have "an institutional interest in the rendition of just verdicts

in criminal cases," and in seeing that these verdicts "remain intact on appeal." *Id.* at 160–61. Accordingly, "trial courts, when alerted by an objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Id.* at 161.

With respect to duties to prospective clients, Texas Disciplinary Rule of Professional Conduct 1.18 provides:

> (a) A person who consults with a lawyer in good faith about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client. A person who communicates with a lawyer for the purpose of disqualifying the lawyer, or for some other purpose that does not include a good faith intention to seek representation by the lawyer, is not a "prospective client" within the meaning of this Rule.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as these Rules would permit or require with respect to a client, or if the information has become generally known or would not be significantly harmful to the former prospective client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>
>> (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>>
>> (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>>
>>> (i) the disqualified lawyer is timely screened from any participation in the matter and is not directly apportioned any part of the fee therefrom; and
>>>
>>> (ii) written notice is promptly given to the prospective client.

Tex. Disciplinary R. Prof'l Conduct 1.18, *available at* https://www.txcourts.gov/media/1459244/texas-disciplinary-rules-of-professional-conduct-pdf; *see generally In re MMA L. Firm, PLLC*, 660 B.R. 128, 134–37 (Bankr. S.D. Tex. 2024) (discussing Model Rule of Professional Conduct 1.18). Rule 1.9 sets forth an attorney's duty to former clients, including the following duties arising from a former firm's representation of a client:

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client: (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.05 and 1.09(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Tex. Disciplinary R. Prof'l Conduct 1.9.

Here, Mr. Rendon's status as an adverse witness whose anticipated testimony will implicate Rep. Cuellar in the charged bribery and money laundering scheme makes Mr. Rendon's interests "materially adverse" to Rep. Cuellar's. Mr. Rendon will be subject to cross-examination by Mr. Reed or his co-counsel. Mr. Reed may have learned confidential information relating to Consulting Company-1's activities or to Mr. Rendon's involvement in the charged bribery scheme through Mr. Rendon's retention of his former firm in 2006 or Mr. Rendon's consultation regarding the subpoena and search warrant in January 2022. Depending on the nature of that information, it may be "significantly harmful" to Mr. Rendon's interests in the instant matter.

If Mr. Reed received disqualifying information, his successive representation of Rep. Cuellar would create a conflict of interest. On the one hand, Mr. Reed owes a duty of vigorous representation to his current client, Rep. Cuellar, which includes the cross-examination of Mr.

4

Rendon, or assisting co-counsel in preparing for such cross-examination. On the other hand, he owes continuing duties of confidentiality and loyalty to Mr. Rendon. Thus, at a minimum, if a conflict exists, both Rep. Cuellar and Mr. Rendon would need to consent in writing to Mr. Reed's continued representation of Rep. Cuellar. Tex. Disciplinary R. Prof'l Conduct 1.9(b), 1.18(d)(1).

The government therefore requests that the Court conduct a hearing on this issue. Federal Rule of Criminal Procedure 44(c) outlines procedures for addressing potential conflicts associated with joint representation. That rule states in pertinent part:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c)(2). Although Rule 44(c) addresses multiple or joint representation of criminal co-defendants, courts have used its procedures to examine issues such as successive representation or other conflicts. *See*, *e.g.*, *United States v. Dressel*, 742 F.2d 1256, 1259 (10th Cir. 1984) (Rule 44(c) hearing appropriate to determine if attorney's prior representation of potential government witness creates conflict of interest); *United States v. Agosto*, 675 F.2d 965, 970 (8th Cir. 1982) (Rule 44(c) establishes a suitable framework for the district court to assess possible conflicts in situations beyond joint representation).

The government requests a hearing to: (1) determine the scope of Mr. Reed's conflict; (2) advise Rep. Cuellar and Mr. Rendon of their right to conflict-free counsel; (3) determine whether Rep. Cuellar and Mr. Rendon give informed consent to Mr. Reed's continued representation of Rep. Cuellar; and (4) determine the procedures Mr. Reed has and/or will continue to use to screen information learned from Mr. Rendon from co-counsel who will prepare and conduct the trial on behalf of Rep. Cuellar. Government counsel may be excused from the courtroom to the extent any such inquiry by the Court will concern matters covered by the attorney-client privilege.

Dated: July 11, 2025

EDWARD P. SULLIVAN
Acting Chief
Public Integrity Section
Criminal Division
U.S. Department of Justice

By: /s/ Celia Choy
Rosaleen O'Gara
Celia Choy
Aaron L. Jennen
Attorneys for the United States

Respectfully submitted,

JENNIFER KENNEDY GELLIE
Chief
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice

By: /s/ Garrett Coyle
Garrett Coyle
Attorney for the United States

## CERTIFICATE OF CONFERENCE

I certify that counsel for the government conferred via email with Eric Reed, counsel for defendant Henry Cuellar, who stated that he opposes this motion.

*/s/ Celia Choy*
Celia Choy

## CERTIFICATE OF SERVICE

I certify that I filed this motion via the CM/ECF system on July 11, 2025, which caused the motion to be electronically served on all counsel of record.

*/s/ Celia Choy*
Celia Choy