IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| **V.** § | Case No. 4:24-cr-00224 |
| § | |
| **ENRIQUE ROBERTO "HENRY"** § | |
| **CUELLAR and IMELDA RIOS** § | |
| **CUELLAR** | |

### DEFENDANTS' PARTIALLY UNOPPOSED
### MOTION FOR CONTINUANCE
### AND AMENDED SCHEDULING ORDER

TO THE HONORABLE LEE H. ROSENTHAL,
UNITED STATES DISTRICT JUDGE:

ENRIQUE ROBERTO "HENRY" CUELLAR and IMELDA RIOS CUELLAR, Defendants herein through counsel, file this Motion for Continuance and Amended Scheduling Order. The Government does not object to a continuance of a short duration.[1]

This case is scheduled for trial beginning September 22, 2025. The Government has been investigating and preparing for trial since at least 2019, but

---

[1] The Government's full conferral response states:

"The government objects to any continuance on the basis that discovery is too voluminous or is incomplete in any way. As we have stated, discovery is largely complete and the volume of material has been known to defense counsel and the court for some time. We do not think the status of discovery merits a continuance of the trial date in this matter. However, the government would not object to a short continuance of the trial, as well as the August 22 deadline for motions in limine and witness and exhibits lists, to resolve the significant legal issues that remain pending before the Court, the resolution of which could affect the scope of the trial. We would respectfully request a conference with the Court to select a new trial date. Please inform the court that the government will file a response to the motion to lay out its position on the trial date more fully."

(a) the Government refused to disclose any investigation materials before the indictment, (b) the indictment was not charged until April 30, 2024, (c) over half of the Government's production of more than 9.45 million pages of tiff images was produced *over one year after* the indictment, and (d) the Government's production of data, which includes approximately *14 Terabytes* of raw data in addition to the millions of pages listed above, is still not complete, despite the Government's representation three months ago that "additional" productions would be forthcoming "on a rolling basis."  By combining two unfair discovery tactics—namely, burying "needles" of pertinent information in a massive "haystack" and trial by ambush—the Government has prevented the defense from adequately preparing for the current trial setting.  To make matters worse, the Government's case is a moving target.  On July 18, 2025, the Government filed a motion to dismiss two counts and to strike allegations in 22 paragraphs in the indictment, purportedly due to a departmental directive over five months earlier.[2]  A continuance is appropriate to defend a civil servant and his spouse against grave charges amid this chaos.

On April 16, 2025, Defendants requested a continuance of the current trial date and pre-trial deadlines based, in part, on the burden of reviewing a massive, rolling production of documents and data from the Government.  On May 2, 2025,

---

[2] Gov't's Mot. to Dismiss Counts and Strike Allegations Re. 18 U.S.C. § 219, filed July 28, 2025 [D.E. 122].

the Court granted the motion with respect to some pre-trial motion deadlines, but it did not adjust the trial date. The Court's ruling relied in part on the Government's representations in briefing and at a hearing on May 2, 2025, that (a) the "bulk of relevant discovery" had been complete as of February 2025, (b) the "vast majority" of documents produced were "in text-searchable format," (c) a production of over 4.7 million pages dropped on Defendants the day before the hearing was readily "searchable," (d) the May 1, 2025 production did not contain information that was "especially relevant to the charges in this case," and (e) further anticipated productions would be "small."[3]

These representations did not match reality. Despite downplaying the significance of late-breaking productions, the Government advised Defendants that, *e.g.*, the May 1, 2025, production included "[r]ecords from the Federal Bureau of Investigation case file for this matter" and "[r]elevant documents" previously produced in a raw, unsearchable format. Approximately *84 percent* of the data produced by the Government to date—including a portable hard drive produced the week *after* Defendants' April 16, 2025, motion for continuance—consists of unsearchable native data files, audio or video files without searchable text, or data locked behind cumbersome third-party extraction tools used by the DOJ. For

---

[3] Tr. of Proceedings dated May 2, 2025 ("May 2 Tr.") at 6–7, 9; Gov't's Opp. to Defs.' Mot. for Continuance and Am. Scheduling Order, dated Apr. 25, 2025 [D.E. 73], at 4, 5.

example, the towering pile of the Government's nine productions contains images of "[r]elevant materials extracted" from 147 seized devices accessed through clumsy staging platforms or no platform at all. Moreover, now less than five weeks before motions *in limine* are due and nine weeks before trial, the additional "rolling" documents and data promised well before May 2, 2025, have yet to materialize.

In short, Defendants find themselves in an even worse position now than on April 16, 2025. Defendants (a) do not have enough remaining time and resources to responsibly review the stupendous amount of data produced to date, (b) have yet to receive unspecified additional document and data productions, (c) now face the Government's latest tactic to reduce the ranks of defense counsel reviewing such data through an eleventh-hour and meritless conflicts of interest assertion,[4] and (d) must simultaneously litigate a fundamental shift in the Government's case under the putative authority of Rule 48 and produce information and documents by August 8, 2025 in compliance with the Court's Order on the Government's advice-of-counsel protest. Defendants therefore request a continuance of the September 22, 2025, trial date.

## **DISCOVERY BACKGROUND**

The volume of discovery produced by the Government in this case is prodigious. There have been nine productions to date:

---

[4]     Gov't's Mot. for Inquiry into Potential Conflict of Interest, filed July 11, 2025 [D.E. 120].

| # | Date | Media Type | Data Format | Size (GB) | Image No. | Searchable? |
|---|---|---|---|---|---|---|
| 1 | 5/28/24 | 1TB hard drive | Database ready images and unsearchable native files | 888 GB | 2,716,899 | Partial |
|  |  | 4TB hard drive | Raw iCloud data from unspecified "accounts" and raw data from 1 device | 2,892.4 GB | N/A | No |
|  |  | 4TB hard drive | Raw iCloud data from unspecified "accounts" and raw data from 1 device | 529.5 GB | N/A | No |
| 2 | 6/26/24 | 500GB hard drive | Database ready images and unsearchable native files | 291 GB | 935,755 | Partial |
| 3 | 1/30/25 | 512GB flash drive | Database ready images and unsearchable native files | 128 GB | 122,716 | Partial |
| 4 | 2/26/25 | 32GB flash drive | Database ready images and unsearchable native files | 8.47 GB | 18,797 | Partial |
| 5 | 2/26/25 | 128GB flash drive | Database ready images and unsearchable native files | 106.7 GB | 120,756 | Partial |
| 6 | 3/25/25 | 2TB hard drive | Native data hosted by Cellebrite, Axiom, and HTML (17 devices) | 1,320 GB | N/A | Limited |
|  |  | 3TB hard drive | Video (not accessible) | Est. 3,000 | N/A | No |
|  |  | 3TB hard drive | Video (not accessible) | Est. 3,000 | N/A | No |
|  |  | 3TB hard drive | Video (not accessible) | Est. 3,000 | N/A | No |
| 7 | 4/9/25 | 1TB hard drive | Database ready images and unsearchable native files (8 devices) | 255 GB | 757,540 | Partial |
|  |  |  | Native data hosted by Axiom and other platforms (15 devices) | 210 GB | N/A | Limited |
|  |  | Compact disk | Unknown (1 device) | Unknown | N/A | No |
|  |  | Compact disk | Unknown (1 account) | Unknown | N/A | No |
|  |  | Compact disk | Unknown (2 accounts) | Unknown | N/A | No |
|  |  | Compact disk | Native data hosted by HTML platform (3 devices) | .01 GB | N/A | No |
| 8 | 4/16/25 | 236GB flash drive | Unsearchable native files and native files hosted by various platforms (64 devices) | 237 GB | N/A | No; Limited |
|  |  | 46.6GB flash drive | Unsearchable native files (14 devices) | 75 GB | N/A | No |
| 9 | 5/1/25 | 1TB hard drive | Database ready images and unsearchable native files | 700 GB | 2,707,996 | Partial |
|  |  | 512GB flash drive | Database ready images and unsearchable native files | 394.8 GB | 2,075,312 | Partial |
|  |  | 256GB flash drive | Unsearchable native files (14 devices) | 15.1 GB | N/A | No |
| Totals to date: |  | 21 media pieces | At least 7 data accounts and 147 devices | 17.051 TB | 9,450,771 images |  |

Most of the Government's production is not readily searchable. "Partial" in the table above refers to over 9.4 million tiff images. These images comprise 2.77

5

TB of the total approximate 17 TB produced to date—or 16 percent.[5] These images are technically capable of being searched using load files provided by the Government through e-discovery tools and services that are almost prohibitively costly, particularly for individual defendants employed in public service. But even the Government's load-ready productions have searchability limitations. For example, the prosecution's first two productions included almost 90,000 "executable" data files, images, audio files, and video files, which cannot be searched by text.

"Limited" in the table above refers to data that cannot be reviewed or searched globally. Because of the way the Government has decided to produce that data, the methods of performing simple word searches vary widely or do not function at all:

- Cellebrite: Device images produced with a Cellebrite load file can be reviewed one-at-a-time, and very limited searches can be performed on an application-by-application basis.

- Axiom: Device images produced with an Axiom load file can be reviewed one-at-a-time, and very limited searches can be performed on an application-by-application basis.

- DOJ HTML link: Device images produced as a web-based link can presumably be reviewed one-at-a-time through a DOJ-hosted platform.

- Miscellaneous: Device images produced as load files from proprietary

---

[5] Defendants cannot access three internal hard drives produced on March 25, 2025, with hardware reasonably available to Defendants or law firms. The calculations in this Motion include these drives as 3 TB each based on the assumption that the Government would not have used such a large drive to produce substantially smaller volume of data. Defendants cannot access three CD-ROM disks produced on April 9, 2025, and the Government did not share the size of the disks at the time they were produced. The calculations in this Motion do not include these disks at all.

platforms like Xactimate cannot be reviewed without a license or viewer the Government did not provide in the productions.

Data with these restrictions comprise 1.8 TB of the total approximate 17 TB produced to date—or 10 percent.

The contents of the remaining 12.5 TB produced to date cannot be searched at all, and at least an estimated 9 TB of that population is not even accessible. As confirmation that such raw data productions are unwieldy, on May 1, 2025, the Government produced 395 GB of "[r]elevant documents extracted from" Defendants' accounts, even though the Government "previously produced the full accounts" in May 2024 in a raw, unsearchable format. In summary:



According to the Government, the "bulk of the relevant discovery" was complete in the first five productions, or "by February 2025." [D.E. 73] at 4. But the comparative volumes of discovery before and after February 2025 undercut the Government's representation of "bulk:"

7



The Government's own descriptions of the contents of productions after February 2025 also belie any representation of irrelevance. On April 9, 2025, the Government produced at least 465 GB of "relevant materials" extracted from 30 electronic devices seized "in connection with this matter." On April 16, 2025, the Government produced approximately 312 GB of materials extracted from 78 electronic devices seized "in connection with this matter." And on May 1, 2025, the Government produced approximately 15 GB of "relevant data" extracted from 14 electronic devices seized by the FBI.

Discovery is ongoing. On April 25, 2025, the Government represented that it "anticipate[d] additional *small* productions on a rolling basis." [D.E. 73] at 5. Less than one week later, the Government produced 4,783,308 pages of new materials and Cellebrite-locked data from 14 devices seized from a "relevant" witness. So much for "small." In a letter accompanying the data dump, the Government advised that it "will continue to produce discovery on a rolling basis." The Government also

represented to the Court that it "also plans to produce certain materials concerning its potential witnesses, including *Giglio* and Jencks materials, closer to trial." [D.E. 73] at 5. Eleven weeks later, the Government has produced no additional discovery.

## ARGUMENT

In determining whether to grant a continuance, a court should consider "the totality of circumstances," including factors such as the amount of time available for preparation, the defendant's role in shortening the time needed, the complexity of the case, the availability of discovery from the prosecution, and the likelihood of prejudice from the denial. *See United States v. Davis*, 61 F.3d 291, 298 (5th Cir. 1995). There should be no serious dispute that the first three of these factors favor a continuance. The Government has had years longer to prepare than Defendants, the bases for a continuance are the prosecution's actions rather than Defendants', and the case set forth in the Government's 54-page indictment is complex. The last two factors, which are linked here, also favor a continuance. Because an unknown amount of discovery from the prosecution remains unavailable and even the "available" discovery from the prosecution is voluminous and burdensome to analyze, the likelihood of prejudice if this case proceeds to trial on September 22, 2025 is high. This likely prejudice is the result of four discovery tactics and the additional eleventh-hour litigation burdens imposed by the Government.

<u>Discovery Padding.</u> First, the prosecution has dumped a massive volume of

discovery on the defense as a needle-in-the-haystack tactic, rather than as an indication that the Government's charges are strong. By the Government's own account, "the bulk of the *relevant discovery* was complete by February 2025." [D.E. 73] at 4 (emphasis added). Yet the prosecution piled on another 5,540,848 tiff images and an estimated 12 TB of data extracted from 99 electronic devices (and counting) after that date. At the May 2, 2025, hearing, the prosecution admitted that "we don't think" large amounts data produced the previous day "are especially relevant to the charges in this case." May 2 Tr. at 9. Accordingly, one of two scenarios is true: either the Government is being cagey with its characterization of the relevance of the production "to the charges," requiring defense counsel to painstakingly review all data for exculpatory evidence; or the Government has needlessly taxed Defendants' time and resources with data that has no realistic link to the trial.

The Fifth Circuit has noted that *Brady* concerns may arise when the Government "'pad[s]' an open file with pointless or superfluous information to frustrate a defendant's review of the file" or "create[s] a voluminous file that is unduly onerous to access." *U.S. v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), vacated in part on other grounds, 561 U.S. 358 (2010). The Government has been flirting with the line drawn in *Skilling* here. Most of the Government's file is not "searchable;" the Government has provided indices for some, but not all,

10

productions; and, unlike the prosecution in *Skilling*, the prosecution has not produced a set of "hot documents." Accordingly, even if the Government's discovery conduct has not risen to the level of bad faith (which Defendants' do not concede at this time), it still warrants more preparation time.

<u>Withholding Discovery.</u>　Second, the Government is delaying discovery productions until this complex case is on the eve of trial. On April 26, 2025, the Government represented that "additional" productions would be forthcoming "on a rolling basis." [D.E. 73] at 5. According to the prosecution, such productions would include "certain" materials "concerning its potential witnesses." *Id.* On May 1, 2025, the Government likewise advised the defense that it "will continue to produce discovery on a rolling basis." The only hint from the Government on when potentially critical discovery may arrive: "closer to trial." [D.E. 73] at 5. Regardless of the Government's intent, these delays serve to sandbag Defendants and prejudice defense counsel. A continuance is an appropriate remedy for discovery delays like those here. *Cf. U.S. v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999) (affirming exclusion of late evidence, but noting the prosecution's argument that a continuance would have been preferable result).

<u>Review Burden.</u>　Third, contrary to the Government's representations to the Court on May 2, 2025, 84 percent of the Government's production to date is not globally searchable, and six of the media in the Government's production is not even

11

accessible without hardware Defendants do not possess. Even the remaining 16 percent of the production, which consists of over 9.4 million tiff images and load files capable of processing with an expensive e-discovery platform, contains tens of thousands of compressed files, audio files, video files, and other "electronic data" that must be reviewed individually rather than searched *en masse*. Additional trial preparation time is appropriate when, as here, the defense faces "challenges" in "access to the processed data in a searchable format." *See U.S. v. Faulkner*, Case No. 3:09-CR-249-D(02), 2011 WL 3962513, at *3 (N.D. Tex. Sept. 8, 2011) (declining to grant a *sixth* trial continuance after "challenges to defendants' access to the processed data in a searchable format" had been resolved and overcome by, *inter alia*, the prosecution's provision of marked exhibits "well in advance of trial").

      A continuance is even more appropriate if the Court finds that the Government has deliberately produced data in a challenging format. The discovery record here raises such concerns. For example, on April 9, 2025, the Government produced data extracted from 23 electronic devices seized by OIG—8 of which were produced in database ready images with load files, and 15 of which were produced as unsearchable forensic data accessible only through Axiom or an equivalently inconvenient platform. Apparently, the prosecution has the means of producing device data in an at least partially searchable format, but it has largely chosen not to do so.

Collateral Attack to Defense Review Team. Fourth, on July 11, 2025, the Government filed a "Motion for Inquiry into Potential Conflict of Interest" targeting the continued involvement of a senior member of Congressman Cuellar's defense team, Eric Reed, and requesting that the Court hold a hearing to, *inter alia*, "advise [defendant] Rep. Cuellar and [prosecution witness] Mr. Rendon of their right to conflict-free counsel." [D.E. 120] at 5. As discussed on May 2, 2025, Mr. Reed is one of only two defense attorneys who has received security clearance on this CIPA-constrained matter. *See* May 2 Tr. at 13. The timing of the Government's dilatory motion is problematic, and other flaws in the motion will be addressed in due course. At best, however, the motion is a temporary, but material, distraction from discovery review.

Additional Unanticipated Litigation Burdens. The Government's discovery conduct is not the only late-breaking imposition on Defendants' trial preparation efforts. On June 30, 2025, the Court granted the Government's motion to require Defendants to disclose whether they intend assert the advice-of-counsel defense, and potentially to produce discovery *to the Government*, well before pre-trial motions and matters are due. And on July 17, 2025, the Government notified the Court and counsel of its intention to abandon counts related to the Foreign Agents Registration Act. On July 18, 2025, the Government then moved to address this significant change by dismissing two counts of the indictment and striking allegations in 22

paragraphs (making up 17 percent of the indictment) under Federal Rule of Criminal Procedure 48. Complying with the Court's June 30 Order requires defense resources, and the defense anticipates the Government's utilization of Rule 48 will be litigated. Both matters, which are solely the result of the Government's actions, are "circumstances" favoring a continuance.

## CONCLUSION

WHEREFORE, defendants Enrique Roberto "Henry" Cuellar and Imelda Rios Cuellar respectfully request that the Court grant this motion and issue an amended scheduling order continuing the trial date in this case from September 22, 2025, to March 30, 2025, or other date convenient to the Court, provided the Government timely produces remaining discovery to Defendants.

Respectfully submitted,

*/s/ Chris Flood*
Chris Flood
Email: chris@floodandflood.com
State Bar No. 07155700
Federal I.D. No. 9929

Charles Flood
Email: charles@floodandflood.com
State Bar No. 00798178
Federal I.D. No. 22508

Stephen D. Dockery
State Bar No. 24120265
Email: stephen@floodandflood.com

FLOOD & FLOOD

914 Preston, Ste. 800
Houston, Texas 77002
713-223-8877
713-223-8877 fax

*/s/ Eric Reed*
Eric Reed
The Reed Law Firm, PLLC
State Bar No. 00789574
Federal I.D. No. 17904
912 Prairie St., Suite 100
Houston, Texas 77002
713-600-1800
713-600-1840 fax

***ATTORNEYS FOR DEFENDANT, ENRIQUE ROBERTO "HENRY" CUELLAR***

DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP

*/s/ Derek S. Hollingsworth*
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
Email: dhollingsworth@dhmlaw.com

Anthony D. Drumheller
State Bar No. 00793642
Federal I.D. No. 22734
Email: adrumheller@dhmlaw.com

Jeremy T. Monthy
State Bar No. 24073240
Federal I.D. No. 1115582
Email: jmonthy@dhmlaw.com

712 Main Street, Suite 1705

15

>Houston, Texas 77002
>Telephone: (713) 751-2300
>Facsimile: (713) 751-2310
>Email: dhollingsworth@dhmlaw.com
>
>***ATTORNEYS FOR DEFENDANT,
>IMELDA RIOS CUELLAR***

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 21, 2025, I conferred with counsel for the Government regarding Defendants' Motion for Continuance and Amended Scheduling Order. DOJ Trial Attorney Rosaleen O'Gara stated that the Government is not opposed to a continuance due to the existence of remaining "significant legal issues." It requests a conference with the Court to select a new trial date. The Government is opposed to a continuance based on discovery issues. The Government advised counsel that it will file a response.

>  /s/ Eric Reed
> Eric Reed

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

>  /s/ Chris Flood
> Chris Flood