UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | : |
| v. | : |
| ENRIQUE ROBERTO "HENRY" CUELLAR, and IMELDA RIOS CUELLAR, | : Criminal No. 4:24-cr-224 |
| Defendants. | : |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR CONTINUANCE AND AMENDED SCHEDULING ORDER AND CROSS-MOTION TO HOLD DEADLINES IN ABEYANCE**

Defendants Enrique Roberto "Henry" Cuellar and Imelda Rios Cuellar moved for a continuance of the trial date and an amended scheduling order. The government agrees that a continuance of the trial date is warranted to allow for resolution of several significant legal issues raised in pending motions, which will affect the scope of trial and Defendants' ability to prepare for trial. However, the government disagrees with the stated bases for Defendants' motion, which consist of a series of inaccurate, misleading, and exaggerated claims about the government's production of discovery as well as issues that do not warrant a continuance, such as a previously imposed Court deadline. The government also respectfully requests that the pending pretrial deadlines in this matter be held in abeyance until resolution of the motions currently pending and the setting of a new trial date.

**I.      The Discovery Does Not Justify the Requested Continuance**

Defendants' primary ground for the requested continuance is the volume, format, and timing of the government's discovery productions. Although the government has been producing

1

discovery for over a year, and despite its repeated offers to answer questions regarding discovery, Defendants did not raise any issues regarding accessibility or reviewability of the productions with the government before filing their motion. Moreover, the issues they now raise relate to discovery produced before the May 2, 2025 hearing on their prior continuance motion, at which the status of discovery was discussed in depth. Now, for the first time, they make a series of claims about the contents, format, and reviewability of the government's discovery productions. Those claims are inaccurate and misleading. Consistent with its constitutional and statutory obligations and Justice Department policy, the government has made broad and timely disclosures of relevant information, in standard formats that are readily reviewable by the defense.

    A.    **Discovery Contents and Timing**

As described in a prior filing, the government prioritized production of materials most relevant to the case. *See* ECF No. 73 at 2. The first two productions in May and June 2024, contained, among other things: (1) the bulk of the investigative files of the Federal Bureau of Investigation (FBI) and the Department of State Office of the Inspector General (DOS-OIG) for this case; (2) grand jury subpoena returns for this case; (3) relevant records from Defendants' five email accounts identified through keyword searches; and (4) full forensic images of Rep. Cuellar's iCloud account and cellular telephone (produced to Rep. Cuellar) and full forensic images of Mrs. Cuellar's iCloud account and cellular telephone (produced to Mrs. Cuellar). The next three productions in January and February 2025 contained additional FBI and DOS-OIG investigative files for this case, relevant records from 13 email accounts, and the Cuellars' tax records. These materials comprised the majority of the materials that the government determined to be most relevant to this case.

Recognizing that its discovery obligations extend beyond its assessment of what is most

relevant, the government made a series of additional disclosures between March and May 2025. In those productions, the government turned over additional materials relevant to Defendants, other subjects in the case, and potential witnesses, including additional relevant emails and relevant materials extracted from electronic devices seized during the investigation. Those productions were discussed in detail at the May 2025 hearing on Defendants' previous motion to continue. Since the May 2025 hearing, the government has made two additional productions, consisting of less than 100 potentially privileged documents seized from Rep. Cuellar's campaign office, one additional device extraction, and additional materials from a previously produced device that were identified as relevant upon further review.

Defendants' accusation that the government "padded" the discovery is baseless. Consistent with its discovery obligations and the Justice Department's disclosure policies, the government produced FBI and DOS-OIG's case files from this investigation, as well as the complete grand jury subpoena returns. In an abundance of caution, it also produced both agencies' case files and grand jury returns from a related investigation that generated the instant investigation, as the two investigations involved overlapping subjects, witnesses, and members of the prosecution team. Because both those investigations were complex, lasted years, and involved two investigative agencies, the case files and grand jury returns were voluminous. As discussed below, however, they were produced in load-ready format, which is easily searchable and manipulable.

As for electronic data seized during the two investigations, such as email accounts and electronic devices, the government identified and segregated relevant materials responsive to the warrants for each account or device by running keyword searches. The government produced only the materials that hit upon those keywords. The government also produced complete forensic images of the Cuellars' own devices and iCloud accounts to them in raw format. As discussed

below, this was done in response to Defendants' request for return of their devices. In addition to the raw forensic images, for each of the devices and accounts produced in raw format, the government also produced the searchable forensic reports containing only the materials that hit on the relevancy keywords. For each production, the government provided a cover letter describing the contents of the production and, for the load-ready files, an index of documents included in the production.

### B.     Discovery Format

Defendants make a variety of inaccurate and misleading claims about the format of the discovery, including the assertion that 84 percent of the data is not searchable. This is incorrect. The government's productions consist of three types of materials: load-ready files, forensic reports, and raw data. The load-ready files and forensic reports were produced in standard formats that are searchable using widely available commercial platforms or forensic software that the government provided to Defendants. As discussed, where the government produced raw data, it generally accompanied that data with searchable subsets of the materials identified as relevant using keyword searches.

#### 1.     *Load-ready files*

Where possible, the government produced discovery in load-ready format, which is generally the preferred format for voluminous electronic data. The load-ready materials consist of FBI and DOS-OIG's case files, the grand jury subpoena returns, relevant records from seized email accounts, and relevant records from Defendants' iCloud accounts. Load-ready files can be loaded into a review platform without further processing, after which they can be easily searched and manipulated. Use of review platforms is a standard feature of modern litigation, particularly for complex white-collar matters. At the May 2025 hearing on Defendants' prior continuance motion,

counsel for Mrs. Cuellar indicated that Mrs. Cuellar, at least, had retained a vendor at the outset of the case and loaded the government's productions into a platform for review, which he acknowledged is "typically what happens" in cases such as this. *See* 5/2/25 Tr. at 37:5–22.

Defendants complain that the government's productions contain 9.4 million TIFF images[1] and characterize those files as only "partially" searchable. ECF No. 123 at 5. That is misleading. Load-ready files consist of three types of files for each document: a Bates-stamped TIFF image of each page, a native file, and a separate .txt file containing the extracted text. The production also includes metadata concerning each document and its relationships to other documents, such as metadata associating emails with their attachments. When the files are loaded into a review platform, they are fully searchable, and the user can easily toggle between the native file, the extracted text, and the TIFF image of any given document.

Defendants also cite "native" files contained within load-ready productions as discovery that is not readily searchable. ECF No. 123 at 6. Again, this claim is misleading. Every load-ready production contains some native files that cannot be converted to TIFF images. For example, spreadsheets and PowerPoint presentations that are attached to emails can only be produced in native format. Even when produced in native format, however, spreadsheets and PowerPoints are accompanied by an extracted text file and are searchable. The case files also included various audio and video files. Although those files are not searchable because of the nature of the medium, for many files the government provided other materials that would aid Defendants' review. For example, where the government produced audio recordings of interviews conducted during the investigation, it also produced a report indicating the interviewee, date, and location of the

---

[1] This figure is inaccurate. To date, the government has produced approximately 8.7 million TIFF images.

interview. Where available, it also produced the agent's written summary of the recording's contents.

Defendants include executable files in their tally of "unsearchable" files. *Id.* While it is technically true that those files are not searchable, that misses the point. The executable files contain the metadata, described above, that permit the underlying data to be organized, searched, and manipulated when loaded into a review platform.

### 2. *Forensic reports*

The government produced forensic reports containing materials from electronic devices that were responsive to keyword searches. Contrary to Defendants' representations, those forensic reports are searchable. It is true that the government used forensic software such as Axiom, Cellebrite, and FTK to extract the data from many of those devices. In every instance where such software was necessary to review those devices, though, the government provided that software to defense counsel on the same drives containing the forensic reports. Defendants also assert that device images produced in HTML format can only be reviewed through a DOJ-hosted platform. ECF No. 123 at 5–6. That is incorrect. Device extractions produced as HTML reports can be reviewed and searched using an ordinary web browser.

The type of forensic software used to extract a given device is dictated by the type of device and the type of data it contains. Certain types of devices and data cannot be converted into load-ready files using tools available to the government. It thus would not have been possible to provide all the device reports in a "globally searchable" format. Each device is individually searchable using the software provided. The software that the government provided to defense counsel is the same software that the government itself uses to review and search for information within the extractions.

*3.   Raw data*

Defendants complain that much of the discovery, in terms of volume, consists of raw data that would require further processing to be reviewed. Their concerns are misplaced. The government produced most of the raw data in response to Defendants' own request. In June 2024, Defendants requested that the government return the electronic devices in its possession that belong to them. In August 2024, the government agreed to return those devices if Defendants would stipulate to the authenticity of forensic images of those devices created by the government. At Defendants' request, the government sent defense counsel a proposed stipulation. The government received no response to that email.

Accordingly, in lieu of returning the original devices, the government produced full forensic images of those devices in March 2025. Defendants are correct that the forensic images require further processing by a vendor before they can be reviewed. However, the government also produced forensic reports containing relevant documents extracted from the devices — in searchable format, with accompanying review software — in April 2025. Similarly, for the sake of completeness, the government produced raw images of Defendants' iCloud accounts (to which Defendants presumably still have access independent of the government's productions) but also produced relevant documents extracted from those accounts in searchable format.[2]

---

[2]   Defendants assert that the government produced 147 device extractions. ECF No. 123 at 4. It is unclear how they derive that number, as even the numbers in their own chart do not add up to 147. *Id*. at 5. To date, the government has produced 19 raw images of devices and accounts, and data from 83 evidence items. In most instances, one evidence item contains a single device or account. Six of the evidence items contain more than one device found in the same location, such as multiple USB drives or loose disks.

### 4. *Pole camera footage*

Defendants further contend that the government produced 9TB of data that is "not even accessible." ECF No. 123 at 7. This assertion appears to refer to the pole camera footage. As the government explained in a prior filing, *see* ECF No. 73 at 3, the government disclosed approximately 4.5 TB of pole camera video footage used in support of search warrant applications to establish that the locations sought to be searched were used by certain individuals. This footage was contained on three separate 3TB hard drives, leading Defendants to assert that they contain 9TB of data, approximately twice the true amount. *See* ECF No. 123, at 5 n.6. While this footage — like any video or audio — is not text-searchable, it has no continuing relevance to the charges in this case and the government does not intend to introduce it into evidence at trial. The government nonetheless produced it because it was used to establish probable cause for certain search warrants and therefore was potentially relevant to suppression issues.

Defendants claim that they "cannot access three internal hard drives" containing the pole camera footage "with hardware reasonably available to Defendants or law firms." ECF No. 123 at 6 n.5. The drives can be accessed using either an HDD docking bay or via a USB to SATA adapter, both of which are readily available for purchase online and in large retail stores for less than $50. The drives contain software to access the video footage on the drive. Defendants also assert that they "cannot access three CD-ROM disks." *Id.*. The discs are Blu-Ray, which are not readable in most CD-R readers but can be accessed via a Blu-Ray reader, which can be purchased for around $100 or less.

If Defendants had trouble accessing any of the data or using the software provided with the device extractions, the government was available to meet and confer about those issues. The government's discovery letters repeatedly offered to answer any questions about the productions.

8

But Defendants never raised any of these issues with the government before they filed this motion, in direct contravention of this Court's order that they "identif[y] specific problems and confer[] with the government about them without success" before seeking Court intervention. ECF No. 118 at 1. The government remains available to assist defense counsel in using that software and any other access issues.

## II.  Resolution of Other Pending Motions Does Justify a Continuance and Resetting of the Pretrial Deadlines.

Although the government disagrees with Defendants' portrayal of the state of discovery and their other stated justifications for continuing trial, it does recognize that there are other grounds that constitute good cause to continue the trial. Specifically, there are significant legal issues currently pending before the Court, the resolution of which will affect the scope of trial and Defendants' ability to prepare for trial.[3]

On July 11, 2025, the government filed a Motion for Inquiry into Potential Conflict of Interest (ECF No. 120), alerting the Court to information it had recently learned regarding a prior relationship between one of Rep. Cuellar's counsel and a likely government witness at trial.[4] The motion asks the Court to "promptly inquire about the propriety" of Mr. Reed's representation of Rep. Cuellar, Fed. R. Crim. P. 44(c)(2), to determine the scope of any conflict, whether the

---

[3]  The government does not agree that the Court's order requiring Defendants to provide pretrial notice of their intent to assert an advice-of-counsel defense justifies the requested continuance. ECF No. 123 at 13-14. The Court's order has no bearing on the trial date. Defendants would need to decide whether to assert the defense and produce discovery concerning the defense regardless of whether the deadline to do so is before this trial date (as the Court ordered, *see* ECF No. 117), before some future trial date, or even at trial (as Defendants requested, *see* ECF No. 95 at 7). The order thus does not constitute good cause to continue trial.

[4]  Rather than any attempt to "target[] the continued involvement of a senior member" of the defense team, the government raised the issue with the Court out of its ethical obligation to ensure not only that the Court explore whether those facts implicate Defendant's right to conflict-free counsel, but also that the proceedings are fair and any judgment that may issue is sound.

9

representation can continue and, if so, the proper procedures to ensure that any conflict is resolved and any confidential information that may have been learned is screened from co-counsel. Such an inquiry requires a hearing and may require the Court to make inquiries of Rep. Cuellar, Mr. Rendon, and any other persons with relevant information about the potential conflict. If the Court were to find a conflict that is unwaivable or that either client refuses to waive, this could alter Rep. Cuellar's defense team and thereby affect his preparation for trial.[5]

Additionally, Defendants have raised significant constitutional issues in their motions under Fed. R. Crim. P. 12(b)(3)(A) and (B) that could impact the scope of the trial and the government's presentation of evidence. For example, Rep. Cuellar has moved to dismiss the indictment based on the Speech or Debate Clause. ECF No. 87. Defendants have also moved to dismiss the remaining counts of the Indictment in response to the government's Rule 48 motion. ECF No. 125. And Defendants have filed a motion for classified discovery. ECF No. 121. The Court's ruling on Defendants' requests for dismissal of counts or allegations in the indictment or discovery orders will impact the government's preparation for and presentation at trial. Although the government does not believe that these defense motions are meritorious, the uncertainty over these issues makes it difficult for the government to make final determinations about witnesses, exhibits, and motions in limine on the current schedule and to prepare for trial on the date currently set.

The Court has set an August 14 hearing on all the motions now pending before it. Because

---

[5] Defendants argue that "Mr. Reed is one of only two defense attorneys who has received security clearance[.]" ECF No. 123 at 13. This is not accurate, as Rep. Cuellar is also represented in this case by Mr. Seth Ducharme and Ms. Nicole Boeckmann, both of whom have security clearances.

these issues will not be resolved before that hearing date, the government agrees that a continuance of the trial date is appropriate. The government also requests that the remaining pretrial deadlines — including the August 22 deadline for motions in limine and the government's exhibits, exhibit list, and witness list, the September 5 deadline for Defendants' exhibits, exhibit list, and witness list, and the September 15 final pretrial conference — be held in abeyance pending resolution of these legal issues and resetting of the trial date.

### III. Conclusion

For the reasons stated above, the government respectfully requests a hearing on the motion to continue to set a new trial date, and that the Court order that the remaining pretrial deadlines be held in abeyance until resolution of the pending motions and setting of a new trial date.

Respectfully submitted,

| | |
|---|---|
| EDWARD P. SULLIVAN | SUE J. BAI |
| Acting Chief | Principal Deputy Assistant Attorney General |
| Public Integrity Section | National Security Division |
| Criminal Division | U.S. Department of Justice |
| U.S. Department of Justice | |
| | |
| By: */s/ Rosaleen O'Gara* | By: */s/ Garrett Coyle* |
| Rosaleen O'Gara | Garrett Coyle |
| Celia Choy | Attorney for the United States |
| Aaron Jennen | |
| Attorneys for the United States | |

## CERTIFICATE OF SERVICE

      I certify that I filed this motion via the CM/ECF system on August 1, 2025, which caused the motion to be electronically served on all counsel of record.

                                              */s/ Rosaleen O'Gara*
                                              Rosaleen O'Gara